## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Jalal Askander Antranick,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Case No. 1:08-cv-00595** |
| ) | |
| **Research Triangle Institute, International and** ) | |
| **Unity Resources Group, L.L.C.,** ) | **Honorable Paul L. Friedman** |
| ) | |
| **Defendants.** ) | |

## DEFENDANT RTI'S MOTION (1) TO DISMISS PLAINTIFF'S COMPLAINT, (2) TO STRIKE PLAINTIFF'S REQUESTS FOR DECLARATORY AND INJUNCTIVE RELIEF, AND (3) TO TRANSFER THE REMAINING CLAIMS

Defendant Research Triangle Institute ("RTI"), by counsel, hereby moves this Court (1) pursuant to Federal Rule of Civil Procedure 12, to dismiss Plaintiff's Complaint in its entirety, with prejudice; (2) to strike Plaintiff's requests for declaratory and injunctive relief; and (3) to transfer any surviving claims.

As detailed in the accompanying Statement of Points and Authorities, RTI's Motion to Dismiss Plaintiff's Complaint should be granted because: (1) Plaintiff has failed to adhere to this Court's procedural requisites prior to bringing an action on behalf of an estate; and (2) Plaintiff has not alleged facts sufficient to impute the acts of Unity's employees to RTI.

Plaintiff's First Cause of Action under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, should be dismissed for the additional reasons that: (1) ATS subject matter jurisdiction is lacking because the ATS generally does not apply to alleged violations of the law of nations by

*private actors*; and (2) Plaintiff has failed to allege facts that, even if accepted as true, would be sufficient to state a claim of "war crimes."

Plaintiff's Second Cause of Action under the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350, should also be dismissed for the independent and sufficient reasons that: (1) the TVPA does not apply to corporations, (2) RTI was not acting under color of law of a foreign nation, and (3) the alleged incident does not as a matter of law constitute an extra-judicial or "deliberated" killing within the meaning of the TVPA.

Plaintiff's Seventh Cause of Action (negligent infliction of emotional distress) should likewise be dismissed because Plaintiff has failed to allege the requisite factual allegations under the laws of the states relied upon by Plaintiff.

If any of Plaintiff's claims survive the Motion to Dismiss, Defendant requests that Plaintiff's requests for declaratory and injunctive relief be stricken because neither is available as a matter of law.

Finally, to the extent this Court does not dismiss Plaintiff's Complaint in its entirety, RTI moves to transfer any remaining claims to the Untied States District Court for the Eastern District of North Carolina. RTI's motion to transfer should be granted because: (1) strong ties bind the instant dispute to North Carolina, while no meaningful ties connect the dispute to this judicial district; and (2) this case is in its initial stages, so there is no potential for delay if any remaining claims were transferred to North Carolina.

WHEREFORE, for these reasons and for the reasons set forth in RTI's accompanying Statement of Points and Authorities, RTI respectfully requests that its Motion to Dismiss Plaintiff's Complaint in its entirety, with prejudice, be granted. In the alternative, to the extent this Court does not dismiss the Complaint in its entirety, RTI respectfully requests that this Court strike Plaintiff's requests for declaratory and injunctive relief, and transfer any remaining claims to the United Sates District Court for the Eastern District of North Carolina.

Respectfully submitted,


  /s/ Eric W. Bloom
Eric W. Bloom (Bar No. 417819)
Karen Sugden Manley (Bar No. 495029)
Nicole Y. Silver (Bar No. 472630)
Sarah E. Saucedo*
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
Phone: (202) 282-5743
Fax: (202) 282-5100

Mark A. Ash*
Clifton L. Brinson (Bar No. 465178)
SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, LLP
2500 Wachovia Capitol Center (27601)
P.O. Box 2611
Raleigh, NC 27601-2611
Phone: (919) 821-1220
Fax: (919) 821-6800

*Counsel for Defendant RTI*


* Motion for *Pro Hac Vice* pending

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Jalal Askander Ántranick, | ) |
| Plaintiff, | ) |
| v. | ) Civil Case No. 1:08-cv-00595 |
| Research Triangle Institute, International and Unity Resources Group, L.L.C., | ) |
| Defendants. | ) Honorable Paul L. Friedman |

## DEFENDANT RTI'S STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION (1) TO DISMISS PLAINTIFF'S COMPLAINT, (2) TO STRIKE PLAINTIFF'S REQUESTS FOR DECLARATORY AND INJUNCTIVE RELIEF, AND (3) TO TRANSFER THE REMAINING CLAIMS

Mark A. Ash*
Clifton L. Brinson (Bar No. 465178)
SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, LLP
2500 Wachovia Capitol Center (27601)
P.O. Box 2611
Raleigh, NC 27601-2611
Phone: (919) 821-1220
Fax: (919) 821-6800

Eric W. Bloom (Bar No. 417819)
Karen Sugden Manley (Bar No. 495029)
Nicole Y. Silver (Bar No. 472630)
Sarah E. Saucedo*
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
Phone: (202) 282-5743
Fax: (202) 282-5100

*Counsel for Defendant RTI*

July 10, 2008

*Motion for Pro Hac Vice pending

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ..................................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

ARGUMENT ............................................................................................................ 5

I.    THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY
      BECAUSE CLAIMS ON BEHALF OF AN ESTATE MUST BE — BUT
      WERE NOT HERE — BROUGHT BY AN AUTHORIZED
      REPRESENTATIVE. ..................................................................................... 6

II.   PLAINTIFF CANNOT SHOW THAT RTI SHOULD BE HELD LIABLE
      FOR UNITY'S ACTIONS. ............................................................................ 8

III.  PLAINTIFF'S FIRST CAUSE OF ACTION MUST BE DISMISSED. .......... 15

      A.    Plaintiff's Alien Tort Statute Claim Fails As A Matter Of Law
            Because The Law Of Nations Reaches Only States And State
            Actors. ............................................................................................... 16

            1.    This Circuit Has Held That The Law Of Nations Reaches
                  Only States and State Actors ..................................................... 16

            2.    The Supreme Court Has Cautioned Judicial Restraint In
                  Recognizing New Claims Under The ATS And Suggested
                  That Only States May Be Liable For Violating The Law Of
                  Nations. .................................................................................... 18

            3.    This Court Has Heeded The Supreme Court's Admonition
                  By Refusing To Expand Liability To Private Actors Like
                  RTI. ........................................................................................... 20

            4.    There Is No Middle Ground Between State and Private
                  Action For Purposes Of The ATS, And This Court Should
                  Reject Plaintiff's Vague And Conclusory "Color Of Law"
                  Allegations. ............................................................................... 21

      B.    Plaintiff's First Cause Of Action Must Be Dismissed Because
            Plaintiff Fails, As A Matter Of Law, To Allege Facts Sufficient To
            State A "War Crime." ......................................................................... 24

IV.   PLAINTIFF'S TORTURE VICTIM PROTECTION ACT CLAIM MUST
      BE DISMISSED AS A MATTER OF LAW.................................................... 28

i

|  | A. | Plaintiff's TVPA Claim Fails As A Matter Of Law Because The Statute Does Not Apply to Corporations. | 29 |

|  | B. | Plaintiff's Second Cause of Action Fails as a Matter of Law Because Plaintiff Has Not Alleged — And Cannot Allege — That RTI Acted Under Actual or Apparent Authority or Under Color of Law of a Foreign Nation. | 31 |

|  | C. | Plaintiff's TVPA Claim Fails For The Additional Reason That The Alleged Incident Does Not, As A Matter of Law, Constitute An "Extra-Judicial" or "Deliberated Killing" Within The Meaning Of The Act. | 34 |

| V. | | COUNT VII SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO ALLEGE FACTS SUFFICIENT TO MAKE A CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS. | 36 |

| VI. | | THIS COURT SHOULD STRIKE PLAINTIFF'S REQUESTS FOR DECLARATORY AND INJUNCTIVE RELIEF BECAUSE NEITHER FORM OF RELIEF IS AVAILABLE AS A MATTER OF LAW. | 40 |

| VII. | | ANY SURVIVING CLAIMS SHOULD BE TRANSFERRED TO THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA. | 42 |

| CONCLUSION | | | 45 |

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Abu Ali v. Gonzales,*
387 F. Supp. 2d 16 (D.D.C. 2005) ..................................................................................5

*\*Aldana v. Del Monte Fresh Produce, N.A., Inc.,*
416 F.3d 1242 (11th Cir. 2005), *cert. denied,* 127 S.Ct. 596 (2006)................................23, 33

*Allstate Ins. Co. v. Philip Leasing Co.,*
214 F. Supp. 273 (D.S.D. 1963) ....................................................................................41

*Am. Fed. of Teachers, AFL-CIO v. Bullock,*
539 F. Supp. 2d 161 (D.D.C. 2008) ...............................................................................10

*Arias v. Dyncorp,*
517 F. Supp. 2d 221 (D.D.C. 2007) ...............................................................................22

*Arndt v. UBS AG,*
342 F. Supp. 2d 132 (E.D.N.Y. 2004) ............................................................................29

*Atlantic Cleaners & Dyers v. United States,*
286 U.S. 427 (1932)......................................................................................................31

*Baker v. Carr,*
369 U.S. 186 (1962)......................................................................................................42

*\*Beanal v. Freeport-McMoRan, Inc.,*
969 F. Supp. 362 (E.D. La. 1997),
*aff'd on other grounds,* 197 F.3d 161 (5th Cir. 1999) .......................................................29, 30

*Belhas v. Ya'Alon,*
515 F.3d 1279 (D.C. Cir. 2008) .....................................................................................32

*\*Bell Atl., Corp. v. Twombly,*
127 S. Ct. 1955 (2007)........................................................................................6, 14, 24, 34

*Boulter v. Jordan,*
733 F. Supp. 85 (D. Colo. 1990).....................................................................................14

*BPA Int'l, Inc. v. Kingdom of Sweden,*
281 F. Supp. 2d 73 (D.D.C. 2003) ...................................................................................5

*Brady v. Livingood,*
360 F. Supp. 2d 94 (D.D.C. 2004) ..................................................................................15

*Chavez v. Carranza*,
  413 F. Supp. 2d 891 (W.D. Tenn. 2005)...............................................33, 35

*Clinton v. City of New York*,
  524 U.S. 417 (1998).................................................................... 30

*Collett v. Socialist Peoples' Libyan Arab Jamahiriya*,
  362 F. Supp. 2d 230 (D.D.C. 2005) .................................................29, 30

*Comm. of U.S. Citizens Living in Nicaragua v. Reagan*,
  859 F.2d 929 (D.C. Cir. 1988)........................................................25

*Desert Palace, Inc. v. Costa*,
  539 U.S. 90 (2003)...................................................................31

*Dimuccio v. D'Ambra*,
  779 F. Supp. 1318 (M.D. Fla. 1991) ..................................................41

*Doe I v. Exxon Mobil Corp.*,
  393 F. Supp. 2d 20 (D.D.C. 2005) ............................................. *passim*

*Doe v. Islamic Salvation Front*,
  257 F. Supp. 2d. 115 (D.D.C. 2003) ..................................................28

*Doe v. Rafael Saravia*,
  348 F. Supp. 2d 1112 (E.D. Cal. 2004)............................................. 35

*Estate of Bayani v. Islamic Republic of Iran*,
  530 F. Supp. 2d 40 (D.D.C. 2007)..................................................34, 36

*Estate of Klieman v. Palestinian Auth.*,
  424 F. Supp. 2d 153 (D.D.C. 2006) ...................................................26

*Estate of Phillips v. District of Columbia*,
  257 F. Supp. 2d 69 (D.D.C. 2003),
  *rev'd on other grounds*, 455 F.3d 397 (D.C. Cir. 2006) ..............................15

*Estate of Rodriquez v. Drummond Co., Inc.*,
  256 F. Supp. 2d 1250 (N.D. Ala. 2003)............................................. 30

*Fennell v. Monongahela Power Co.*,
  350 F.2d 867 (4th Cir. 1965) ..........................................................6

*Filartiga v. Pena-Irala*,
  630 F.2d 876 (2d Cir. 1980)........................................................17, 22

*Flores v. Southern Peru Copper Corp.*,
  414 F.3d 233 (2d Cir. 2003)........................................................25, 26

*Foltz v. U.S. News & World Report, Inc.,*
    627 F. Supp. 1143 (D.D.C. 1986) ..........................................................................10

*\*Fraioli v. Lemcke,*
    328 F. Supp. 2d 250 (D.R.I. 2004)........................................................................12

*\*Gemological Inst. of Am., Inc. v. Thi-Dai Phan,*
    145 F. Supp. 2d 68 (D.D.C. 2001) .............................................................42, 43, 44

*Graves v. United States,*
    961 F. Supp. 314 (D.D.C. 1997) ............................................................................15

*Haitian Refugee Ctr. v. Gracey,*
    809 F.2d 794 (D.C. Cir. 1987) ...............................................................................25

*Halberstam v. Welch,*
    705 F.2d 472 (D.C. Cir. 1983) .....................................................................9, 10, 11

*\*Harbury v. Hayden,*
    444 F. Supp. 2d 19 (D.D.C. 2006),
    *aff'd,* 522 F.3d 413 (D.C. Cir. 2008) ...................................................................32

*Haynes v. Sentry Corp.,*
    No. 5:00CV43-BR(2), 2000 WL 33682678 (E.D.N.C. Apr. 4, 2000).............................38, 39

*Holmes v. Young,*
    885 P.2d 305 (Colo. Ct. App. 1994) ......................................................................10

*\*Ibrahim v. Titan Corp.,*
    391 F. Supp. 2d 10 (D.D.C. 2005) .................................................................. *passim*

*\*In re Agent Orange Product Liab. Litig.,*
    373 F. Supp. 2d 7 (E.D.N.Y. 2005), *aff'd sub nom., Vietnam Ass'n for Victims of
    Agent Orange v. Dow Chemical Co.,* 517 F.3d 104 (2d Cir. 2008)..................................29, 31

*In re Combustion Equipment Assoc., Inc.,*
    838 F.2d 35 (2d Cir. 1988)...................................................................................41

*In re Iraq and Afghanistan Detainees Litig.,*
    479 F. Supp. 2d 85 (D.D.C. 2007)..........................................................................25

*\*In re Sinaltrainal Litig.,*
    474 F. Supp. 2d 1273 (S.D. Fla. 2006) .........................................................27, 28, 30

*In re Terrorist Attacks on September 11, 2001,*
    392 F. Supp. 2d 539 (S.D.N.Y. 2005).....................................................................29

*Investors Research Corp. v. SEC*,
    628 F.2d 168 (D.C. Cir. 1980) ........................................................................................10

*Kadic v. Karadzic*,
    70 F.3d 232 (2d Cir. 1995).....................................................................................22, 32

*Khulumani v. Barclay Nat'l Bank Ltd.*,
    504 F.3d 254 (2d Cir. 2007),
    *aff'd sub nom.*, *American Isuzu Motors, Inc. v. Ntsebeza*, 128 S.Ct. 2424 (2008) .................32

*Lafontant v. Aristide*,
    844 F. Supp. 128 (E.D.N.Y. 1994) .................................................................................35

*Langford v. Merickel*,
    199 F. Supp. 424 (D. Minn. 1961) ...................................................................................8

*Libby v. L.J. Corp.*,
    247 F.2d 78 (D.C. Cir. 1957) ........................................................................................13

*Martens v. U.S.*,
    No. 05-1805, 2007 WL 2007580 (D.D.C. July 6, 2007) ...................................................5

*McCreary v. Heath*,
    No. Civ. A. 04-0623 (PLF), 2005 WL 3276257 (D.D.C. Sept. 26, 2005)...........................15

*McManus v. District of Columbia*,
    530 F. Supp. 2d 46 (D.D.C. 2007) .................................................................................14

*Medellin v. Texas*,
    128 S. Ct. 1346 (2008) .................................................................................................25

*Moose Lodge No. 107 v. Irvis*,
    407 U.S. 163 (1972) .....................................................................................................23

*Mujica v. Occidental Petroleum Corp.*,
    381 F. Supp. 2d 1164 (C.D. Cal. 2005) ...............................................................29, 31, 33

*Mwani v. Bin Ladin*,
    No. Civ. A99-125CKK, 2006 WL 3422208 (D.D.C. Sept. 28, 2006)............................16, 20

*Nattah v. Bush*,
    541 F. Supp. 2d 223 (D.D.C. 2008) ..............................................................................25

*Nemariam v. Fed. Democratic Republic of Ethiopia*,
    400 F. Supp. 2d 76 (D.D.C. 2005),
    *aff'd on other grounds*, 491 F.3d 470 (D.C. Cir. 2007)......................................................5

*Oveissi v. Islamic Republic of Iran,
    498 F. Supp. 2d 268 (D.D.C. 2007) ..............................................................34, 35

Pardasani v. Rack Room Shoes, Inc.,
    912 F. Supp. 187 (M.D.N.C. 1996) ...................................................................38

Pitney Bowes, Inc. v. U.S. Postal Serv.,
    27 F. Supp. 2d 15 (D.D.C. 1998) .......................................................................5

Presbyterian Church of Sudan v. Talisman Energy Inc.,
    244 F. Supp. 2d 289 (S.D.N.Y. 2003) ...............................................................22

*Pugh v. Socialist People's Libyan Arab Jamahiriya,
    No. 02-02026 HHK, 2006 WL 2384915 (D.D.C. May 11, 2006) ........................36

Reiffin v. Microsoft Corp.,
    104 F. Supp. 2d 51 (D.D.C. 2000) ....................................................................43

Roz Trading Ltd v. Zeromax Group, Inc.,
    517 F. Supp. 2d 377 (D.D.C. 2007) ....................................................................6

*Saleh v. Titan Corp.,
    436 F. Supp. 2d 55 (D.D.C. 2006) ............................................................. passim

*Sanchez-Espinoza v. Reagan,
    770 F.2d 202 (D.C. Cir. 1985) ................................................................. passim

Scheuer v. Rhodes,
    416 U.S. 232 (1974) ............................................................................................5

*Schneider v. Kissinger,
    310 F. Supp. 2d 251 (D.D.C. 2004), aff'd, 412 F.3d 190 (D.C. Cir. 2005) ............32

Sinaltrainal v. Coca-Cola Co.,
    256 F. Supp. 2d 1345 (S.D. Fla. 2003) ..........................................................29, 30

*Sisso v. Islamic Republic of Iran,
    448 F. Supp. 2d 76 (D.D.C. 2006) .....................................................................35

*Sosa v. Alvarez-Machain,
    542 U.S. 692 (2004) ................................................................................ passim

*Spahr v. United States,
    501 F. Supp. 2d 92 (D.D.C. 2007) ...........................................................6, 24, 34

Sparrow v. United Air Lines, Inc.,
    216 F.3d 1111 (D.C. Cir. 2000) ..........................................................................5

*Stoner v. Nat'l Metropolitan Bank,*
    77 F. Supp. 699 (D.D.C. 1948) ...................................................................................7

*Tachiona v. Mugabe,*
    169 F. Supp. 2d 259 (S.D.N.Y. 2001), *aff'd in part, rev'd in part on other grounds,*
    *Tachiona v. U.S.*, 386 F.3d 205 (2d Cir. 2004), *cert. denied*, 547 U.S. 1143 (2006) .............33

*\*Tel-Oren v. Libyan Arab Republic,*
    726 F.2d 774 (D.C. Cir. 1984) ....................................................................... *passim*

*Tilcon Capaldi, Inc. v. Feldman,*
    249 F.3d 54 (1st Cir. 2001) ......................................................................................12

*Tompkins v. Comm'r,*
    97 F.2d 396 (4th Cir. 1938) ....................................................................................13

*\*Trout Unlimited v. United States Dep't of Agric.,*
    944 F. Supp. 13 (D.D.C. 1996) .................................................................42, 43, 44, 45

*Trudeau v. Fed. Trade Comm'n,*
    456 F.3d 178 (D.C. Cir. 2006) ...................................................................................5

*Ungar v. Islamic Rep. of Iran,*
    211 F. Supp. 2d 91 (D.D.C. 2002) ...........................................................................11

*United States v. Ron Pair Enterprises, Inc.,*
    489 U.S. 235 (1989)................................................................................................29

*Walsh v. Ford Motor Co.,*
    588 F. Supp. 1513 (D.D.C. 1984),
    *vacated on other grounds*, 807 F.2d 1000 (D.C. Cir. 1986) ......................................21

*Warth v. Seldin,*
    422 U.S. 490 (1975).................................................................................................42

*West Virginia Highlands Conservancy v. Johnson,*
    540 F. Supp. 2d 125 (D.D.C. 2008) ...........................................................................5

*Wright v. United States,*
    963 F. Supp. 7 (D.D.C. 1997) .................................................................................37

## STATE CASES

*Blow v. Shaughnessy,*
364 S.E.2d 444 (N.C. Ct. App. 1988) ...............................................................10

*Boyce v. Boyce,*
541 A.2d 614 (D.C. 1988) .................................................................................7

*Bullard v. Curry-Cloonan,*
367 A.2d 127 (D.C. 1976) .................................................................................7

*Compass Ins. Co. v. City of Littleton,*
984 P.2d 606 (Colo. 1999) ...............................................................................13

*District of Columbia v. Howell,*
607 A.2d 501 (D.C. 1992) .................................................................................9

*Emily's Cookie Mix, Inc. v. Cora Ltd. P'ship,*
621 S.E.2d 340, 2005 WL 3046449 (N.C. Ct. App. Nov. 15, 2005).................14

*Fox v. Wilson,*
354 S.E.2d 737 (N.C. Ct. App. 1987) ...............................................................14

*Gardner v. Gardner,*
435 S.E.2d 324 (N.C. 1993)...............................................................................40

*Griva v. Davison,*
637 A.2d 830 (D.C. 1994) .................................................................................13

*Hale v. Morris,*
725 P.2d 26 (Colo. Ct. App. 1986) ...................................................................38

*Hickman v. McKoin,*
446 S.E.2d 80 (N.C. 1994).................................................................................39

*Hinson v. Jarvis,*
660 S.E.2d 604 (N.C. Ct. App. 2008) ...............................................................10

*\*In re Estate of Monge,*
841 A.2d 769 (D.C. 2004) ..............................................................................6, 7

*\*Johnson v. Ruak Obstetrics & Gynecology Assoc.,*
395 S.E.2d 85 (N.C. 1990).............................................................................38, 39

*Jones v. Howard Univ. Inc.,*
589 A.2d 419 (D.C. 1991) .................................................................................37

*Kimelman v. City of Colorado Springs,*
775 P.2d 51 (Colo. Ct. App. 1988) ...................................................................38

*Levy v. Currier,*
    587 A.2d 205 (D.C. 1991) ..............................................................9

*Lilley v. Blue Ridge Elec. Membership Corp.,*
    515 S.E.2d 483 (N.C. Ct. App. 1999) ...........................................9

*Little v. Omega Meats I, Inc.,*
    615 S.E.2d 45 (N.C. Ct. App.), *aff'd,* 622 S.E.2d 494 (N.C. 2005)............9

*Millican v. Clayton,*
    701 P.2d 107 (Colo. Ct. App. 1985) ...........................................38

*Nelson v. Elway,*
    908 P.2d 102 (Colo. 1995) ...........................................................13

*Norman v. Nash Johnson & Sons Farms, Inc.,*
    537 S.E.2d 248 (N.C. Ct. App. 2000) .........................................13

*Rhoney v. Fele,*
    518 S.E.2d 536 (N.C. Ct. App. 1999) .........................................13

*Rifenburg Constr., Inc. v. Brier Creek Assoc. Ltd. P'ship,*
    586 S.E.2d 812 (N.C. Ct. App. 2003), *aff'd,* 593 S.E.2d 585 (N.C. 2004)............13

*\*S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC,*
    659 S.E.2d 442 (N.C. Ct. App. 2008) .....................................14, 15

*Scharrel v. Wal-Mart Stores, Inc.,*
    949 P.2d 89 (Colo. Ct. App. 1997) .............................................38

*Shope v. Boyer,*
    150 S.E.2d 771 (N.C. 1966)..........................................................14

*Slaughter v. Slaughter,*
    379 S.E.2d 98 (N.C. App. 1989) ..................................................13

*\*Sorrells v. M.Y.B Hospitality Ventures of Ashville,*
    435 S.E.2d 320 (N.C. 1993)...............................................38, 39, 40

*Towns v. Anderson,*
    579 P.2d 1163 (Colo. 1978)..........................................................38

*Williams v. Baker,*
    572 A.2d 1062 (D.C. 1990) ..........................................................37

**FEDERAL STATUTES**

WAR CRIMES ACT,
   18 U.S.C. § 2441(c)(3)....................................................................................25, 26

ANTITERRORISM ACT OF 1991,
   18 U.S.C. § 2331(4)(C)..........................................................................................26

*ALIEN TORT STATUTE,
   28 U.S.C. § 1350................................................................................4, 15, 16

*TORTURE VICTIM PROTECTION ACT,

   28 U.S.C. § 1350 note...........................................................................................4

   28 U.S.C. §1350 note § 2(a) ....................................................................30, 31, 32

   28 U.S.C. § 1350 note § 2(a)(2)...............................................................28, 29, 34

   28 U.S.C. § 1350 note § 2(b) ........................................................................31, 33

   28 U.S.C. § 1350 note § 3(a) ..............................................................................34

28 U.S.C. § 1391(a)(3)....................................................................................42

28 U.S.C. § 1404(a) ........................................................................................42

*DECLARATORY JUDGMENT ACT,
   28 U.S.C. § 2201................................................................................................40

**STATE STATUTES**

*D.C. CODE § 20-341(a) (2001)..............................................................................6

*D.C. CODE § 20-341(b) (2001)..............................................................................7

D.C. CODE § 20-342 (2001) ...................................................................................7

**RULES**

FED. R. CIV. P. 11 ...........................................................................................9, 21

FED. R. CIV. P. 12(b) .......................................................................................1, 5

*FED. R. CIV. P. 17 ..............................................................................................6

FED. R. CIV. P. 44.1 ...........................................................................................37

**OTHER AUTHORITIES**

41 AM. JUR. 2d *Independent Contractors* § 27 (2008) ................................................................9

26 C.J.S. *Declaratory Judgments* § 15 (2008)..........................................................................41

Convention Relative to the Protection of Civilian Persons in Time of War, Aug. 12, 1949,
     6 U.S.T. 3516, 75 U.N.T.S. 287 (Feb. 2, 1956).......................................................................25

H. R. Rep. No. 367 (1991) ...........................................................................................................32

\*GUENAEL METTRAUX, INTERNATIONAL CRIMES AND THE *AD* GEUNAEL MATTRAUX,
     INTERNATIONAL CRIMES AND THE *HOC* TRIBUNALS (2005) ...............................................26, 27

SEAN D. MURPHY, PRINCIPLES OF INTERNATIONAL LAW 421 (2006) ...........................................27

RESTATEMENT (SECOND) OF TORTS § 409 (1965)..........................................................................9

RESTATEMENT (SECOND) OF TORTS § 876 (1979).........................................................................10

RESTATEMENT (THIRD) OF TORTS: *Apportionment Liab.* § 10 (2000) ...........................................12

RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 907 (1986)........25

Wolfgang Schomburg & Ines Peterson, *Genuine Consent to Sexual Violence Under
     International Criminal Law*, 101 AM. J. INT'L L. 121 (2007) ..................................................27

Pursuant to Federal Rule of Civil Procedure 12(b), Defendant Research Triangle Institute ("RTI") respectfully submits this Statement of Points and Authorities in Support of its Motion (i) To Dismiss Plaintiff's Complaint, (ii) To Strike Plaintiff's Requests For Declaratory and Injunctive Relief, and (iii) To Transfer the Remaining Claims, if any, to the United States District Court for the Eastern District of North Carolina.

## INTRODUCTION

Plaintiff's claims in this case arise out of the same operative facts that underlie the claims alleged in *Manook v. RTI* (docketed Civ. Case No. 1:08-cv-00096). RTI has previously moved to dismiss the *Manook* matter. Having had the benefit of the pleadings in *Manook*, Plaintiff here seeks to improve his position by adding certain counts and allegations and offering theories not before presented. No matter how the facts are alleged, and regardless of the theories offered, the Complaint here is similarly flawed and should be dismissed.

As shown below, Plaintiff has tried to force-fit his more exotic claims (war crimes, torture) into the fact pattern actually alleged. That Plaintiff has over-alleged and over-charged is made clear by the fact that Plaintiff's more specific allegations repeatedly contradict his formulaic allegations that try to track verbatim the necessary elements of a cause of action. Because a plaintiff's specific allegations control over general allegations, Plaintiff repeatedly comes up short in his attempt to state a cognizable claim.[1]

RTI is not a security force. In fact, its personnel in Iraq are not even licensed or permitted to carry firearms, and they surely do not engage in any security operations of any kind. Rather,

---

[1] Plaintiff himself seems to recognize the weakness of the Complaint insofar as the Complaint includes a great many paragraphs that have nothing to do with the Plaintiff, the Defendants, or the alleged incident. Instead, Plaintiff fills nearly four pages of the Complaint with allegations of abuse by security forces in Iraq, Compl. ¶¶ 35-43, and specifically invokes allegations of abuse allegedly perpetrated by Blackwater USA. *Id.* ¶¶ 36, 60. But Plaintiff must try this case against the Defendants named in *this* action based on *their* conduct, not on the conduct of any other person or organization.

RTI, which was founded in 1958 by the joint action of Duke University and The Consolidated University of North Carolina, consists largely of internationally-known researchers in multiple disciplines. For the last five years, under a contract with the United States Agency for International Development ("USAID"), RTI has actively worked to improve the management and administration of local, municipal, and provincial governments in Iraq, providing technical assistance and training to local government-elected officials and supporting the establishment of a legal framework for a democratic, representative, and participatory form of decentralized government. *See* http://www.rti.org/page.cfm?nav=377&objectid=91AD4ED9-F623-4C93-8CCF98BA9F7C82F5.

Plaintiff's freelancing allegations of "terrorism," "profiteering," and callousness will, in time, be called to account. No plaintiff has the prerogative to make allegations not grounded in fact or law. But no matter how creative the theories, Plaintiff cannot hold RTI — which is not in the security business, was not on the scene of the alleged incident, and surely was not directing the acts of Unity — liable for the death of Ms. Antranick.

## STATEMENT OF FACTS

RTI — an American not-for-profit entity that is incorporated in North Carolina with its principal place of business in North Carolina — is under contract with the USAID to design, establish, and support local and provincial governments in Iraq. Compl. ¶¶ 16-17, 33. Defendant Unity "is a subcontractor which provides security services to RTI, which are necessary for RTI to fulfill its obligations under the USAID contract." *Id.* ¶ 21.

Plaintiff alleges that on October 9, 2007, the deceased, Genevia Jalal Antranick, was traveling as "a passenger in a car traveling through the Karada neighborhood of Baghdad," and that as the car was crossing a "busy intersection," Ms. Antranick was fatally "shot through the head and neck by employees of Defendant Unity Resources Group, L.L.C." *Id.* ¶ 1. According

to Plaintiff, Unity personnel sped off "like gangsters" after the shooting rather than trying to "rescue or assist the people they had just shot." *Id.* ¶ 7. Plaintiff alleges that none of the people in the car, including the driver and the other passengers, could "possibly have harmed" the Unity employees. *Id.* ¶ 6. Plaintiff instead avers that the women were at "a distance of 75 or 100 yards" and "unarmed and posed no threat whatsoever to Defendants." *Id.* ¶¶ 5, 6.[2]

Plaintiff does not allege that *Defendant RTI* personnel fired any shots or ordered that shots be fired. Nor does Plaintiff allege that RTI was even present or anywhere near the scene. (To the contrary, Plaintiff alleges that an RTI employee had been "dropped off" prior to the incident. Compl. ¶ 2). Plaintiff thus relies on allegations of "agency," "joint venture," "conspiracy," and general notions of "supervision" as the alleged basis of RTI's liability.

According to Plaintiff, "[t]his is not the first time [Unity] employees have killed defenseless people in Baghdad." *Id.* ¶ 8. Plaintiff alleges that Unity employees harmed two people prior to this incident, having allegedly "shot [a] civilian in the Karada neighborhood" on or about June 24, 2007, and allegedly killing a civilian a year earlier "when he failed to stop at a security checkpoint." *Id.* While Plaintiff alleges that "[r]easonable discovery is likely to produce evidence of other killings," *id.*, Plaintiff fails to allege any incidents of deadly force during the five years RTI has been under contract to the USAID other than the single incident noted above. To be sure, Plaintiff has failed to allege any facts to support his naked allegation that Defendants are "war profiteers" who have "knowingly engaged in an ongoing campaign of terror against the inhabitants of the city." *Id.* ¶ 11.

---

[2] Plaintiff fails to note that the highway on which the incident occurred had been the site of numerous insurgent attacks, including suicide attacks, against U.S. forces and civilians. *See, e.g.*, http://www.google.com/search?sourceid=navclient&ie=UTF-8&rls=GGLD,GGLD:2004-17,GGLD:en&q=karada+suicide.

From these allegations, Plaintiff seeks recovery in Count I under the Alien Tort Statute ("ATS"),[3] 28 U.S.C. § 1350, alleging that "[d]efendants' acts ... were deliberate, willful, intentional, wanton, malicious and oppressive" and constitute war crimes. Compl. ¶ 61. Plaintiff seeks recovery in Count II under the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 note, alleging that Defendants were operating under color of law in murdering or summarily executing or directing an attack against Ms. Antranick. Compl. ¶ 68. Finally, Plaintiff alleges a variety of common law tort claims, including wrongful death (Count III), negligent hiring and supervision (Count IV), negligence in failing to rescue (Count V), assault and battery (Count VI), and negligent infliction of emotional distress (Count VII). Plaintiff seeks compensatory and punitive damages "in amounts to be ascertained at trial," and further "seeks equitable relief to prevent further human rights violations." *Id.* ¶ 96. Additionally, Plaintiff seeks damages for pecuniary loss "resulting from loss of society, comfort, attention, services and support." *Id.* ¶ 97.

RTI seeks dismissal of the entire Complaint because Plaintiff has failed to: (1) adhere to this Court's procedural requisites prior to bringing an action on behalf of an estate, and (2) allege facts sufficient to impute the acts of Unity employees to RTI. RTI independently seeks dismissal of Count I for lack of subject matter jurisdiction and Counts I, II, and VII for failure to state a claim. RTI also respectfully requests this Court to strike Plaintiff's requests for declaratory and injunctive relief, and to transfer any surviving claims to the United States District Court for the Eastern District of North Carolina.

---

[3] The ATS is also sometimes referred to as the Alien Tort Claims Act or ATCA. However, for the sake of consistency, this Statement of Points and Authorities refers to the statute as the ATS, like the Supreme Court did in its landmark ATS case, *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004).

**ARGUMENT**

RTI seeks dismissal of the Complaint under Federal Rule of Civil Procedure 12 for failure to state a claim and for lack of subject matter jurisdiction. It is well settled that the party invoking the jurisdiction of a federal court bears the burden of establishing the court's jurisdiction. *Nemariam v. Fed. Democratic Republic of Ethiopia*, 400 F. Supp. 2d 76, 80 (D.D.C. 2005), *aff'd on other grounds*, 491 F.3d 470 (D.C. Cir. 2007) (quoting *Pitney Bowes, Inc. v. U.S. Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998)). Once the court's jurisdiction is challenged, the plaintiff, rather than the movant, bears the burden of proof in establishing jurisdiction. *BPA Int'l, Inc. v. Kingdom of Sweden*, 281 F. Supp. 2d 73, 79 (D.D.C. 2003). Further, "a plaintiff['s] factual allegations . . . will bear closer scrutiny in resolving a [Rule] 12(b)(1) motion" to dismiss for lack of subject matter jurisdiction. *Abu Ali v. Gonzales*, 387 F. Supp. 2d 16, 17-18 (D.D.C. 2005) (quoted authority and internal quotation marks omitted). On such a motion, the court may properly consider facts outside of the complaint. *BPA Int'l*, 281 F. Supp. 2d at 80 ("The submission of matters outside the pleadings does not convert a Rule 12(b)(1) motion to one for summary judgment."); *see also Abu Ali*, 387 F. Supp. 2d at 18.

In ruling on a motion to dismiss for failure to state a claim for relief, a court generally accepts the allegations of a complaint as true. *West Virginia Highlands Conservancy v. Johnson*, 540 F. Supp. 2d 125, 133 (D.D.C. 2008) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). Nonetheless, the court need not accept legal conclusions and conclusory allegations as true. *Id.* (citing *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006)). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Martens v. U.S.*, No. 05-1805, 2007 WL 2007580, at *1 (D.D.C.

July 6, 2007) (quoting *Bell Atl., Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007)); *see also Roz Trading Ltd v. Zeromax Group, Inc.,* 517 F. Supp. 2d 377, 388 (D.D.C. 2007) (same). Indeed, the "court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations." *Spahr v. United States*, 501 F. Supp. 2d 92, 95 (D.D.C. 2007) (citing *Twombly,* 127 S. Ct. at 1964-65).

I.    **THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE CLAIMS ON BEHALF OF AN ESTATE MUST BE — BUT WERE NOT HERE — BROUGHT BY AN AUTHORIZED REPRESENTATIVE.**

The instant action is brought by Jalal Askander Antranick. Compl. ¶ 1; *see also id.* ¶ 13 (stating that Plaintiff is Jalal Askander Antranick, the father of Genevia Jalal Antranick, as well as "the executor of her estate and her sole legal heir"). According to the Complaint, Mr. Antranick is "a domicile" of Colorado, a U.S. permanent resident, and an Iraqi citizen. *Id.* ¶ 30. Because the purported Plaintiff lacks capacity or standing to bring the alleged claims, this Court should dismiss the Complaint in its entirety.

A foreign personal representative must comply with statutory requirements to establish his authority to act on behalf of the estate. Federal Rule of Civil Procedure 17 provides that the "[c]apacity to sue or be sued" of one "acting in a representative capacity" is determined "by the law of the state in which the district court is held." FED. R. CIV. P. 17(b). Thus, District of Columbia statutes governing the capacity to represent the estate of a foreign decedent apply in this action, *see, e.g., Fennell v. Monongahela Power Co.*, 350 F.2d 867 (4th Cir. 1965) (applying West Virginia statutes), and any purported representative must meet the statutory requirements dictated by the law of the District of Columbia.

In the District of Columbia, a "foreign personal representative is appointed to administer the estate of a decedent not domiciled in the District of Columbia, but which has property located here." *In re Estate of Monge*, 841 A.2d 769, 773 (D.C. 2004) (citing D.C. CODE § 20-341(a)

(2001)).  Once duly appointed, a "foreign personal representative may exercise all the powers of such office and may sue and be sued in the District of Columbia, subject to any statute or rule relating to nonresidents." D.C. CODE § 20-342 (2001).  To demonstrate that he has authority to administer the estate, the D.C. Code requires that the foreign personal representative comply with certain statutory requirements.[4]

Specifically, in this jurisdiction, a foreign personal representative administering an estate "shall file with the Register a copy of the appointment as personal representative and a copy of the decedent's will, if any, authenticated pursuant to 28 U.S.C. sec. 1738." D.C. CODE § 20-341(b) (2001).  "Upon filing a copy of the appointment as personal representative in another jurisdiction . . . [a] foreign personal representative may exercise all the powers of such office and may sue and be sued in the District of Columbia." *Estate of Monge*, 841 A.2d at 774  (citing D.C. CODE §§ 20-341(b), 20-342) (internal quotation marks omitted).

Here, there is no allegation, much less evidence, that a "foreign personal representative administering [the] estate" filed "with the Register a copy of the appointment as personal representative and a copy of the decedent's will, if any, authenticated pursuant to 28 U.S.C. sec. 1738." D.C. CODE § 20-341(b).  In fact, a phone call to the clerk in the Probate Division of this Court has confirmed that Plaintiff has failed to satisfy the statutory requirements set forth above. *See* Affidavit of Nicole Silver, ¶ 4.  Compliance with the relevant District of Columbia statutes not only is required, but is particularly important in a case such as this, which involves a foreign national, thereby implicating a legal system that may approach acting on behalf of an estate quite

---

[4] Notwithstanding Plaintiff's allegation to the contrary, *see* Compl. ¶ 31, Plaintiff has property in this jurisdiction because, as a matter of law, Plaintiff's pending lawsuit constitutes "property" for purposes of the D.C. Code. *See, e.g., Bullard v. Curry-Cloonan*, 367 A.2d 127, 132 (D.C. 1976) ("It has been repeatedly held that 'assets,' as applied to decedent's estate, means property, real or personal, tangible or intangible, legal or equitable, which can be made available (to the estate).") (citing *Stoner v. Nat'l Metropolitan Bank*, 77 F. Supp. 699, 700-01 (D.D.C. 1948)); *see generally Boyce v. Boyce*, 541 A.2d 614 (D.C. 1988) (finding that wife's inchoate personal injury claim constituted marital property).

differently from what would be common in the United States. *Cf. Langford v. Merickel*, 199 F. Supp. 424 (D. Minn. 1961) (dismissing an action on behalf of an estate because the executrix failed to comply with the applicable state procedural requisites set forth by statute).

Accordingly, this Court must dismiss the Complaint in its entirety for failure to meet the basic statutory requirements of the D.C. Code.

## II.    PLAINTIFF CANNOT SHOW THAT RTI SHOULD BE HELD LIABLE FOR UNITY'S ACTIONS.

Plaintiff alleges that Ms. Antranick was "shot through the head and neck by employees of Defendant Unity Resources Group, L.L.C.," Compl. ¶ 1, but fails to explain why liability for this incident should be placed on RTI.  Plaintiff does not allege that RTI personnel shot Ms. Antranick.  Nor does Plaintiff allege that RTI directed Unity personnel to shoot Ms. Antranick. To the contrary, Plaintiff alleges that Unity personnel "dropped off an employee of RTI and were returning to their base of operations" at the time of the alleged incident.  Compl. ¶ 2.

Recognizing that there can be no direct liability against RTI, Plaintiff identifies in Part VII (Causes of Action) of his Complaint (pp. 13-16) multiple theories by which he hopes to impute the alleged wrongful conduct of Unity personnel first to Unity, and then to RTI.  To be clear, many of his allegations are simply untrue, and there is no factual basis for Plaintiff even to include them in his Complaint.  Many of these same allegations are formulaic in nature, intending, again, to force-fit the alleged facts into a cause of action.  As shown below, however, Plaintiff's theories of secondary liability fail in every instance.  If characterized as claims, they should be dismissed.  If characterized as factual allegations serving as predicates to the

substantive causes of action (Counts I-VII), these paragraphs and theories should be stricken, and the causes of action that depend on their application should be dismissed.[5]

**Agency and Vicarious Liability (Compl. ¶¶ 47-48).**  Plaintiff repeatedly alleges that the RTI-Unity relationship is that of a prime contractor and subcontractor.  *Id.* ¶¶ 2, 23, 24. Accepting this allegation as true, RTI cannot be held liable.  A subcontractor does not act under the supervision and control of the contractor, as an employee or agent acts under an employer or principal, *see* RESTATEMENT (SECOND) OF TORTS § 409 (1965), and liability therefore will not attach to a contractor for its subcontractor's negligence.  *Id.*; *see also* 41 AM. JUR. 2d *Independent Contractors* § 27 (2008); *see, e.g., District of Columbia v. Howell*, 607 A.2d 501 (D.C. 1992); *Little v. Omega Meats I, Inc.*, 615 S.E.2d 45 (N.C. Ct. App.), *aff'd*, 622 S.E.2d 494 (N.C. 2005).[6]

**Aiding and Abetting (Compl. ¶¶ 49-50).**  Plaintiff likewise fails to properly allege secondary liability under an "aiding and abetting" theory because Plaintiff has not alleged (and cannot allege under Rule 11) that RTI provided any "substantial assistance" to Unity for an unlawful purpose or with the knowledge that Unity would engage in wrongful acts.

Though courts articulate slightly differing elements for aiding and abetting liability, this Circuit has observed that "these elements can be merged or articulated somewhat differently without affecting their basic thrust." *Halberstam v. Welch*, 705 F.2d 472, 478 (D.C. Cir. 1983). To hold RTI liable for Unity's acts under an aiding and abetting theory, Plaintiff must allege,

---

[5] Plaintiff has invoked the laws of the District of Columbia, North Carolina, and Colorado to support his claims.  Compl. ¶ 46.  We therefore address these claims as pled (and under the laws invoked) by Plaintiff.  By doing so, RTI is not suggesting that the laws of any one of these states governs this action.

[6] A contractor can be held liable for the acts of its subcontractor only when the contractor exercises a sufficient degree of control over the subcontractor's function. *See Levy v. Currier*, 587 A.2d 205, 209 (D.C. 1991); *Lilley v. Blue Ridge Elec. Membership Corp.*, 515 S.E.2d 483 (N.C. Ct. App. 1999).  By Plaintiff's own admission, however, RTI personnel were not on the scene and *could not have supervised* the Unity personnel who allegedly shot Ms. Antranick.  Compl. ¶ 2.

*inter alia*, that RTI was generally aware of its role as part of an overall illegal or tortious activity at the time that it provided assistance to Unity. *See id.* at 478 (citing *Investors Research Corp. v. SEC*, 628 F.2d 168, 178 (D.C. Cir. 1980)).[7] Aiding and abetting liability is thus meant to capture those acts that entail knowing and active participation in wrongful acts, not merely conduct that is benignly attendant to legitimate business proceedings such as those between RTI and Unity at issue here. *See id.* (aiding and abetting liability is reserved only for those who "knowingly and substantially assist" in an illegal or tortuous activity; *Foltz v. U.S. News & World Report, Inc.*, 627 F. Supp. 1143, 1163 (D.D.C. 1986) (demanding anything less "would emasculate the standard" for imputation of liability).

Plaintiff here speciously alleges that "[RTI] aided and abetted...by providing substantial assistance...in the form of money, weapons, instructions, encouragement, and assurances of impunity and/or indemnification." Compl. ¶ 49. Accepting these allegations as true, Plaintiff nonetheless fails to allege — as he must to sustain an aiding and abetting claim — that RTI provided the alleged "substantial assistance" with the requisite intent, that is, with knowledge that the assistance would be used to commit wrongful acts. Payment on the contract, and/or the provision of weapons to Unity to enable it to perform its security function, surely cannot constitute predicate acts giving rise to an aiding and abetting claim absent an allegation that RTI intended Unity to misuse the funds or weapons.[8] But Plaintiff fails to make this allegation. And it would be difficult to allege that RTI "instructed" or "encouraged" Unity personnel to fire upon

---

[7] *Accord Am. Fed. of Teachers, AFL-CIO v. Bullock*, 539 F. Supp. 2d 161, 167 (D.D.C. 2008); *Holmes v. Young*, 885 P.2d 305, 308 (Colo. Ct. App. 1994); *Hinson v. Jarvis*, 660 S.E.2d 604, 607 (N.C. Ct. App. 2008); *Blow v. Shaughnessy*, 364 S.E.2d 444, 447 (N.C. Ct. App. 1988); RESTATEMENT (SECOND) OF TORTS § 876 (1979).

[8] In fact, RTI did not provide any weaponry to Unity nor did it promise "immunity" for alleged illegal conduct. Plaintiff makes these factual allegations only to recite verbatim the elements of aiding and abetting, but does so in the absence of any factual basis, thereby failing to aver *specific* allegations necessary to support his rote and general allegations.

Ms. Antranick given that RTI was not on the scene and did not even know about the incident until after the fact. Again, Plaintiff does not make this allegation because he cannot.

That Plaintiff can only generically allege RTI "had reason to know/or did know the nature and scope of the conduct alleged herein," Compl. ¶ 50, evidences Plaintiff's inability to assert any specific factual basis for claiming that RTI was aware of its role at the time of its alleged assistance in an *illegal or tortious* activity. Merely alleging that RTI knew of Unity's business functions cannot suffice because Unity was duly licensed to perform security functions in Iraq, *id*. ¶ 24, and alleging that RTI "had reason to know/or did know the nature and scope of the conduct alleged herein" is the sort of formulaic parroting that can be cured only by dismissal. *Cf. Ungar v. Islamic Rep. of Iran*, 211 F. Supp. 2d 91, 99 (D.D.C. 2002) (holding that neither the Iranian government nor its officials were liable for terrorist attack under an aiding and abetting theory absent showing that "that the 'knowing and substantial assistance' of Iran extended to the 'principal violation'-the [specific] attack on [the plaintiffs]").

The only factual assertions Plaintiff can maintain here fall short of even alleging RTI "knowingly and substantially" assisted Unity in these purported tortious acts. By contrast, the D.C. Circuit in *Halberstam* specifically noted that the companion knew about ongoing criminal acts and that she had been a willing partner in such conduct for five years when the companion acted as a banker, record keeper, and secretary while using her shared home to store and process the ill-gotten goods. 705 F.2d at 474. Plaintiff's allegations pale by comparison, failing to establish any legitimate factual basis for the required, but absent, allegation that RTI "knowingly and substantially" assisted a tortious or wrongful enterprise.

Plaintiff's naked and formulaic allegation that RTI aided and abetted Unity's allegedly wrongful actions should be dismissed and/or stricken.

11

**Joint and Several Liability:**  Plaintiff appears to assert "joint and several liability" as an independent cause of action or, at least, as a means by which it may hold RTI secondarily liable for Unity's acts.  Compl. ¶¶ 51, 52.  But "joint and several liability" is neither a cause of action nor a bridge to liability.  *See Fraioli v. Lemcke*, 328 F. Supp. 2d 250, 282 (D.R.I. 2004) (noting that joint and several liability is "a request for relief or a rule of contribution: it is not a cause of action") (citing *Tilcon Capaldi, Inc. v. Feldman*, 249 F.3d 54, 62 (1st Cir. 2001)); *see also* RESTATEMENT (THIRD) OF TORTS: *Apportionment Liab.* § 10 (2000).  Accordingly, this Court should strike Plaintiff's "claim" for "joint and several liability."

**Joint Venturers (Compl. ¶¶ 53-54):**  Plaintiff's allegations that RTI and Unity formed a joint venture are facially ridiculous; indeed, his own specific allegations belie his conclusory assertion that RTI and Unity together formed a joint venture.  On the one hand, Plaintiff alleges that RTI was tasked by the USAID "to create 180 local and provincial governments in Iraq," "promote Iraqi civil participation," and "design, establish and support interim representative bodies that are culturally acceptable, transparent and accountable."  Compl. ¶¶ 16, 17.  On the other hand, Plaintiff does not allege that Unity provides, or is even capable of providing, similar services.  Plaintiff instead avers that Unity "is a private security contractor with a contract to provide security services" to RTI.  *Id.* ¶ 2.  By Plaintiff's own allegations, the two Defendants are *not* in the same business and perform very different functions.

To allege the existence of a joint venture, the Plaintiff must plead (1) some joint interest in property; (2) an agreement, express or implied, to share in the profits and losses of the

venture; and (3) actions or conduct evidencing cooperation on behalf of the parties.[9]  Here, Plaintiff fails to satisfy even the first element because he must do more than allege the existence of a joint interest; he must allege what that joint interest is.  Plaintiff's averment that there is some undisclosed "undertaking" is not enough.[10]

More fundamentally, Plaintiff himself has alleged that RTI retained Unity as a subcontractor.  Compl. ¶¶ 2, 21, 24.  RTI and Unity, therefore, are by definition not sharing profits from a single joint venture.  Rather, as alleged by Plaintiff, RTI is in privity with USAID and is paid under that contract.  *Id.* ¶¶ 16, 19.  Unity, in turn, is in privity with RTI and is paid under their separate contract.  Simply, there is no allegation of joint venture employees, joint venture bank accounts, or joint venture assets.  Indeed, there is no factual allegation at all — other than Plaintiff's *formulaic and conclusory   allegations* — that could possibly support Plaintiff's fiction.

**Civil Conspiracy (Compl. ¶¶ 55-56)**:  Plaintiff's last attempt to allege a bridge that may render RTI liable for the acts of Unity personnel also falls short as a matter of law.  To state a claim for civil conspiracy, Plaintiff must allege, *inter alia*, that RTI and Unity perpetrated an unlawful act pursuant to and in furtherance of an agreement between the two Defendants.[11] While Plaintiff does conclusorily allege that "Defendants agreed and conspired to commit the wrongful acts alleged herein," *id.* ¶ 55, he has simultaneously alleged that, by the time of the incident, Unity employees had already "dropped off an employee of RTI and were returning to

---

[9] *See Libby v. L.J. Corp.*, 247 F.2d 78 (D.C. Cir. 1957); *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606 (Colo. 1999); *Rhoney v. Fele*, 518 S.E.2d 536 (N.C. Ct. App. 1999).

[10] *See Libby*, 247 F.2d 78; *Tompkins v. Comm'r*, 97 F.2d 396 (4th Cir. 1938); *Compass Ins. Co*, 984 P.2d 606; *Rifenburg Constr., Inc. v. Brier Creek Assoc. Ltd. P'ship*, 586 S.E.2d 812 (N.C. Ct. App. 2003), *aff'd*, 593 S.E.2d 585 (N.C. 2004); *Slaughter v. Slaughter*, 379 S.E.2d 98 (N.C. App. 1989).

[11] *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995); *Griva v. Davison*, 637 A.2d 830, 848 (D.C. 1994); *Norman v. Nash Johnson & Sons Farms, Inc.*, 537 S.E.2d 248, 265 (N.C. Ct. App. 2000).

their base of operations." *Id.* ¶ 2.  By virtue of this allegation, RTI *could not have* ordered or agreed to kill Ms. Antranick.  Indeed, Plaintiff implicitly concedes that RTI had no knowledge of the alleged conduct before its occurrence.

Noticeably absent is any assertion of the substance of the alleged "agreement" or "conspiracy."  Therefore, the count of civil conspiracy must be dismissed because, as the North Carolina Court of Appeals instructs, "plaintiff's complaint cannot simply speculate about wrong doings without stating actual facts about the alleged conspiracy."  *Emily's Cookie Mix, Inc. v. Cora Ltd. P'ship*, 621 S.E.2d 340, 2005 WL 3046449, *3 (N.C. Ct. App. Nov. 15, 2005) (attached as Exhibit A); *see also Twombly*, 127 S.Ct. at 1965-66 (holding, albeit in the antitrust context, that properly alleging a claim for conspiracy "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made....[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice." (emphasis added)).[12]

By way of comparison, in *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 659 S.E.2d 442, 449 (N.C. Ct. App. 2008), the North Carolina Court of Appeals held that an allegation strikingly similar to the one pled by Plaintiff failed to state a claim upon which relief could be granted.  There, it was not enough for the plaintiff to state that the defendants "maliciously conspired together and acted in concert, explicitly, impliedly or tacitly, to engage in the above-

---

[12] *See also McManus v. District of Columbia*, 530 F. Supp. 2d 46, 74 -75 (D.D.C. 2007) (noting that "[a]n essential element of any conspiracy claim is the existence of some actual conspiracy....[T]o survive a motion to dismiss for failure to state a claim, a plaintiff must set forth more than just conclusory allegations of an agreement," in a case where plaintiffs failed to allege "the existence of any events, conversations, or documents indicating that there was ever an agreement or 'meeting of the minds' between any of the defendants," and ultimately holding that, "[i]n the absence of such allegations, Plaintiffs' Amended Complaint boils down to a conclusory and purely speculative assertion that Defendants entered into a conspiracy." (internal quotations and citations omitted)); *Boulter v. Jordan*, 733 F. Supp. 85 (D. Colo. 1990) (conclusory allegations of civil conspiracy cannot withstand a motion to dismiss); *Fox v. Wilson*, 354 S.E.2d 737, 743 (N.C. Ct. App. 1987) (complaint for civil conspiracy "must . . . allege[] wrongful overt acts"); *Shope v. Boyer*, 150 S.E.2d 771, 774 (N.C. 1966) (complaint for civil conspiracy is judged by "the facts alleged and not by pleader's conclusions").

referenced fraudulent and otherwise wrongful acts with the intent to injure plaintiff." *Id.* In upholding the trial court's dismissal of the civil conspiracy claim, the Court of Appeals held that the plaintiff's allegations failed on two grounds: first, the plaintiff "failed to allege that there was an agreement between the defendants to commit the wrongful overt acts against plaintiff" and, second, the plaintiff "failed to establish evidence of the conspiracy that was 'sufficient to create more than a suspicion or conjecture.'" *Id.*[13] Removing all "suspicion and conjecture," Plaintiff's allegations fail to establish a "civil conspiracy" and must be dismissed.

## III.    PLAINTIFF'S FIRST CAUSE OF ACTION MUST BE DISMISSED.

This Court lacks subject matter jurisdiction under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, to adjudicate Plaintiff's First Cause of Action for war crimes, *see* Compl. ¶¶ 57-66, because only *states* and *state actors* can be held liable for violations of the law of nations. Even assuming *arguendo* that RTI could be held liable, Plaintiff's First Cause of Action fails for the independently sufficient ground that Plaintiff fails to allege facts sufficient to constitute a war crime, the alleged cause of action upon which ATS jurisdiction is predicated.

---

[13] *See also McCreary v. Heath,* No. Civ. A. 04-0623 (PLF), 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005) (dismissing conspiracy claim that failed "to allege the existence of any events, conversations, or documents indicating that there was ever an agreement or 'meeting of the minds' between any of the defendants....Instead, plaintiff repeatedly makes the conclusory statement that a conspiracy exists and surmises that all negative events related to his job occurred as a result of the conspiracy"); *Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004) ("A plaintiff must set forth more than just conclusory allegations of an agreement to sustain a claim of conspiracy against a motion to dismiss."); *Estate of Phillips v. District of Columbia*, 257 F. Supp. 2d 69, 83 (D.D.C. 2003) (dismissing conspiracy claim, in part, because plaintiffs failed to allege adequately how the defendants "acted 'in concert'"), *rev'd on other grounds*, 455 F.3d 397, 372 (D.C. Cir. 2006); *Graves v. United States,* 961 F. Supp. 314, 321 (D.D.C. 1997) (dismissing claim where plaintiff alleged only that his former employer "colluded" to keep him underemployed and failed to assert "any facts showing the existence or establishment of an agreement").

A.    **Plaintiff's Alien Tort Statute Claim Fails As A Matter Of Law Because The Law Of Nations Reaches Only States And State Actors.**

Under the controlling law of this Circuit, reaffirmed recently by this Court in a series of cases, only *states* and *state actors* can be held liable for violations of the law of nations, except in exceedingly narrow circumstances not present here. *Sanchez-Espinoza v. Reagan*, 770 F.2d 202 (D.C. Cir. 1985); *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774 (D.C. Cir. 1984); *Mwani v. Bin Ladin*, No. Civ. A99-125CKK, 2006 WL 3422208 at *3 (D.D.C. Sept. 28, 2006); *Saleh v. Titan Corp.*, 436 F. Supp. 2d 55 (D.D.C. 2006); *Doe I v. Exxon Mobil Corp.*, 393 F. Supp. 2d 20 (D.D.C. 2005); *Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10 (D.D.C. 2005). Because RTI is a private corporation and not a state or state actor, this Court lacks subject matter jurisdiction over Plaintiff's First Cause of Action and must dismiss it.

1.    **This Circuit Has Held That The Law Of Nations Reaches Only States and State Actors.**

The ATS, passed in 1789, *see Sosa v. Alvarez-Machain*, 542 U.S. 692, 712-13 (2004), reads in its entirety: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The Supreme Court has held that the ATS is "only jurisdictional," *Sosa*, 542 U.S. at 712, and "furnish[es] jurisdiction for a relatively modest set of actions alleging violations of the law of nations." *Id*. at 720.

In *Tel-Oren v. Libyan Arab Republic*, 726 F.2d at 775, this Circuit set forth its rule that, with few exceptions not applicable here, the ATS provides federal subject matter jurisdiction for violations of the law of nations *only if committed by states and state actors*. In *Tel-Oren*, Israeli plaintiffs sued the Palestine Liberation Organization (PLO), among others, invoking jurisdiction under the ATS for various alleged violations of the law of nations and treaties for a civilian bus bombing in Israel. *Id*. This Circuit affirmed this Court's dismissal of the ATS claims. *Id*.

16

Judge Edwards[14] held that subject matter jurisdiction was lacking because the law of nations *does not "impose[] the same responsibility or liability on non-state actors*, such as the PLO, as it does on states and persons acting under color of state law." *Id.* (emphasis added) (distinguishing *Filartiga v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980), in which the Second Circuit held that official state torture violates the law of nations). Judge Edwards declined to "venture out of the comfortable realm of established international law ... in which states are the actors," to recognize liability of private actors. *Id.* at 792. Edwards contrasted "these fringe areas [of international law suggesting private liability that] are only gradually emerging and offer, as of now, no obvious stopping point" with the "firmly established ... core principle binding states to customary international obligations." *Id.*

Just a year later in *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, this Circuit again expressly rejected private, non-state liability under the law of nations. Therein, Nicaraguan citizens sued certain U.S. Executive officials, invoking jurisdiction under the ATS, for providing "support to anti-Nicaraguan terrorist groups operating military training camps in the United States, Honduras, Costa Rica, and Nicaragua," which the Contras used to "carr[y] out 'scores of attacks upon innocent Nicaraguan civilians' which . . . 'resulted in summary execution, murder, abduction, torture, rape, wounding, and the destruction of private property and public facilities,'" all allegedly in violation of the law of nations. *Id.* at 204-07 (quoting underlying complaint). Expressly reaffirming Judge Edwards' concurrence in *Tel-Oren*, then-Judge Scalia rejected ATS jurisdiction over the claims against U.S. officials in their *personal* capacity because "no treaty ...

---

[14] The panel wrote separately to explain their reasons for dismissing. Judge Bork affirmed the dismissal of Plaintiffs' ATS claims because they "failed to state a cause of action sufficient to support jurisdiction ... . Neither the law of nations nor any of the relevant treaties provides a cause of action that appellants may assert in courts of the United States." *Tel-Oren*, 726 F.2d at 799 (Bork, J., concurring). Judge Robb affirmed the dismissal of Plaintiffs' ATS claims on political question doctrine grounds, concluding that the case involved nonjusticiable political questions. *Id.* at 823 (Robb, J., concurring).

purports to make the activities at issue . . . unlawful when conducted by private individuals," nor does "*the law of nations [or customary international law] ... reach private, non-state conduct of this sort* for the reasons stated by Judge Edwards in *Tel-Oren.*" *Id.* at 206-07 (internal citation omitted) (emphasis added).[15]  *Tel-Oren* and *Sanchez-Espinoza* continue to be controlling Circuit precedent to this day.  *See, e.g.*, *Saleh*, 436 F. Supp. 2d at 57-58; *Ibrahim*, 391 F. Supp. 2d at 14-15.

> **2.    The Supreme Court Has Cautioned Judicial Restraint In Recognizing New Claims Under The ATS And Suggested That Only States May Be Liable For Violating The Law Of Nations.**

In its seminal case addressing the ATS, *Sosa v. Alvarez-Machain*, 542 U.S. 692, the Supreme Court emphasized the narrow reach of ATS jurisdiction, consonant with this Circuit's prior holdings in *Tel-Oren* and *Sanchez-Espinoza*.  The Court inferred from the Act's history that the drafters intended to provide jurisdiction over a "handful of international law *cum* common law claims understood in 1789," namely, "violation of safe conducts, infringement of the rights of ambassadors, and piracy," all of which were firmly established and universally accepted in the international law of the time.  *Id.* at 715.  The Court, however, recognized "restrained" federal court discretion to consider new causes of action under the "present-day law of nations" that meet the same strict standard, specifically admonishing that "any claim based on the present-day law of nations [must] rest on a norm of international character *accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms we have recognized.*"  *Id.* at 725 (emphasis added).

---

[15] While not directly pertinent here, this Circuit also made clear that the plaintiffs' simultaneous efforts to bring suit against certain U.S. officials in their *official* capacity similarly must fail because "[i]t would make a mockery of the doctrine of sovereign immunity if federal courts were authorized to sanction or enjoin, by judgments nominally against present or former Executive officers . . . ."  *Id.* at 207.

The Court underscored a number of reasons for lower federal courts to act with "restraint," *id.*, and "great caution," *id.* at 728, in determining whether a norm of international law is sufficiently definite to support ATS jurisdiction, including: (i) "the general practice [of] . . . look[ing] for legislative guidance before exercising innovative authority over substantive law," *id.* at 726; (ii) the Court's repeated admonition that "a decision to create a private right of action is one better left to legislative judgment in the great majority of cases," given "the possible collateral consequences of making international rules privately actionable," *id.* at 727; *see also* 732-33; (iii) "[t]he potential implications for the foreign relations of the United States of recognizing such causes," *id.* at 727; and (iv) the lack of any "congressional mandate to seek out and define new and debatable violations of the law of nations." *Id.* at 728. The Court also acknowledged other considerations, including exhaustion of remedies both in the alien's domestic legal system and in international claims tribunals and "a policy of case-specific deference to the political branches." *Id.* at 733 n.21. And, as this Court recently observed, the high Court also confirmed this Circuit's narrow reading of the ATS by "suggest[ing] that *only states, and not corporations or individuals, may be liable for international law violations.*" *Doe I*, 393 F. Supp. 2d at 26 (citing *Sosa*, 542 U.S. at 733 n.20) (emphasis added).

With this guidance, federal courts may not recognize a new cause of action under the ATS "with less definite content and acceptance among civilized nations than the historical paradigms familiar when § 1350 was enacted." *Sosa*, 542 U.S. at 732. Accordingly, the Court held "that the judicial power should be exercised on the understanding that the door is still ajar *subject to vigilant doorkeeping*, and thus open to a *narrow class of international norms today*." *Id.* at 729 (emphasis added).

### 3.    This Court Has Heeded The Supreme Court's Admonition By Refusing To Expand Liability To Private Actors Like RTI.

Following *Sosa*, this Court has repeatedly declined to expand private liability under the law of nations beyond the 18th-century paradigmatic claims of the violation of safe conducts, infringement of the rights of ambassadors, and piracy. *See Mwani*, 2006 WL 3422208, *4 ("properly exercis[ing] subject matter jurisdiction" under the ATS and entering default judgment against Osama bin Ladin and al Qaeda for "directly infring[ing] on the rights of ambassadors" in the attack on the U.S. Embassy in Nairobi).

In *Ibrahim v. Titan Corp.*, Iraqi nationals brought an action alleging torture by the U.S. military at Abu Graib prison, and sued private government contractors, Titan and CACI, which provided interpreters and interrogators to the U.S. military in Iraq. 391 F. Supp. 2d at 12. The plaintiffs could not sue the U.S. Government itself because of sovereign immunity. *Id*. This Court emphasized that *Sosa* "counsel[ed] *very great caution*" in recognizing law of nations violations. *Id*. at 13-14 (discussing *Sosa*, 542 U.S. at 725-28) (emphasis added). Finding no applicable norm in the treaties and other sources of international law plaintiffs referenced as condemning torture because they "generally address *official (state)* torture," the issue was "whether the law of nations applies to *private actors* like the [government contractors]." *Id*. As this Court succinctly put it, "*in the D.C. Circuit the answer is no*," because as *Tel-Oren* held, "*no consensus [exists] that private actors are bound by the law of nations*." *Id*. (discussing *Tel-Oren*, 726 F.2d at 786-87, 791-95) (emphasis added). The Court further observed that this Circuit "stat[ed] quite clearly that the law of nations 'does not reach private, non-state conduct ... for the reasons stated by Judge Edwards in *Tel-Oren*.'" *Id*. (quoting *Sanchez-Espinoza*, 770 F.2d at 205-07). Thus, "[a]fter *Tel-Oren* or *Sanchez-Espinoza*, . . . [the alleged conduct] is not

20

actionable under the [ATS's] grant of jurisdiction, as a violation of the law of nations." *Id.* at 15. Accordingly, this Court dismissed the plaintiffs' ATS claims. *See id.* at 14.

In assessing the instant ATS claim, this Court "must conduct a more searching merits-based inquiry than is required in a less sensitive arena." *Doe I*, 393 F. Supp. 2d at 24 (citing *Walsh v. Ford Motor Co.*, 588 F. Supp. 1513, 1519 (D.D.C. 1984), *vacated on other grounds*, 807 F.2d 1000 (D.C. Cir. 1986)). Under the controlling law of this Circuit, the law of nations reaches only states and state actors, except in exceedingly narrow circumstances not present here. Therefore, RTI cannot be held liable for the law of nations violations Plaintiff alleges, nor secondarily liable for the alleged law of nations violations of Unity, *another private corporation*. Accordingly, this Court lacks subject matter jurisdiction and must dismiss Plaintiff's ATS claim.

> **4.    There Is No Middle Ground Between State and Private Action For Purposes Of The ATS, And This Court Should Reject Plaintiff's Vague And Conclusory "Color Of Law" Allegations.**

No doubt recognizing that this Circuit has repeatedly declined to exercise ATS jurisdiction over claims against private actors, Plaintiff nakedly asserts that Defendants acted under "color of law," Compl. ¶¶ 61, 63, and alleges further that, "if such a showing is required," the complained-of acts "were done with the complicity of state actors,"[16] *id.* ¶ 62, though Plaintiff does not share who those complicit state actors might be. For the reasons articulated below, Plaintiff's allegations are insufficient.

First, this Court has explicitly rejected color of law and conspiracy theories as substitutes for state action for purposes of establishing a violation of the law of nations upon which ATS

---

[16] Plaintiff's odd way of pleading — premising factual allegations on whether or not the allegation is "required" under the law to state a cause of action — seems to reflect an effort to fit the allegations within a legal paradigm without thought or consideration to whether the facts may properly be pled under Federal Rule of Civil Procedure 11.

jurisdiction can be predicated.[17]  In *Saleh v. Titan Corp.*, 436 F. Supp. 2d at 57, this Court —

treating *Ibrahim* as *stare decisis* and relying on *Tel-Oren*, *Sanchez-Espinoza*, and *Sosa* —

reaffirmed "that the conduct of private parties ... [i]s not actionable under the ATS's grant of

jurisdiction as violative of the law of nations." *Id*.  The Court pointedly rejected the plaintiffs'

reliance on "color of law" allegations:  "*Sanchez-Espinoza* is controlling Circuit precedent and is

not cast in doubt by" out-of-Circuit cases involving allegations of private parties acting under

color of non-U.S. law to violate the law of nations.  *Id*. at 57, 58 n.3 (referring to *Presbyterian*

*Church of Sudan v. Talisman Energy Inc.*, 244 F. Supp. 2d 289 (S.D.N.Y. 2003), *Kadic v.*

*Karadzic*, 70 F.3d 232 (2d Cir. 1995), and *Filartiga*, 630 F.2d 876).  As this Court concluded,

"*Sanchez-Espinoza makes it clear that there is no middle ground between private action and*

*government action, at least for purposes of the [ATS]*."  *Id*. at 58 (emphasis added).

Accordingly, this Court dismissed the plaintiffs' ATS claims.  *Id*. at 60.

Likewise, in *Doe I v. Exxon Mobil Corp.*, this Court rejected, explicitly, both color of law

and aiding and abetting theories as an "overreach" of ATS jurisdiction.  393 F. Supp. 2d at 26.

In *Doe I*, Indonesian citizens, basing jurisdiction in the ATS, sued Exxon, which had contracted

with the Indonesian military to provide security for Exxon's natural gas pipeline, alleging that

Exxon had violated the law of nations by aiding and abetting the Indonesian military in genocide,

---

[17] *But see Arias v. Dyncorp*, 517 F. Supp. 2d 221 (D.D.C. 2007), wherein Judge Roberts relied on out-of-Circuit precedent to find that allegations that a contractor of the U.S. State Department was acting under "color of law" were sufficient.  The *Arias* Court relied on the color of law analysis in *Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995), which this Court expressly stated in *Saleh* did not cast doubt upon the D.C. Circuit's holdings in *Tel-Oren* and *Sanchez-Espinoza* that there is no middle ground between private and state action for ATS purposes.  *Saleh*, 436 F. Supp. 2d at 57, 58 n.3.  In this regard, the *Arias* decision also directly contradicts this Court's 2005 decision in *Doe I*, 393 F. Supp. at 26 (disavowing "color of law" analysis in the ATS context because "[g]rafting § 1983 color of law analysis onto international law claims would be an end-run around the accepted principle that most violations of international law can be committed only by states.  Recognizing acts under color of law would dramatically expand the extraterritorial reach of the statute.") (citation and footnote omitted).  *Arias* stands out as the only post-*Sosa* decision of this Court suggesting that ATS claims may proceed against private parties.

torture, crimes against humanity, arbitrary detention, extrajudicial killing, and sexual violence. *Id.* at 22, 24. In dismissing the plaintiffs' ATS claims, this Court concluded that Exxon "c[ould] not be held liable for violations of international law on a theory that they aided and abetted the Indonesian military in committing the[] [alleged] acts." *Id.* at 24. The Court then further determined that a finding of liability under a color of law theory "would be an end-run around the accepted principle that *most violations of international law can be committed only by states.*" *Id.* at 26 (citing *Sanchez-Espinoza*, 770 F.2d at 206-07) (emphasis added).

Even if this Court were not bound to follow Circuit precedent and could instead accept "color of law" theory for purposes of establishing ATS jurisdiction, Plaintiff's conclusory allegations are not sufficient. Without elaboration and with studied ambiguity, Plaintiff alleges that RTI "acted under color of law" and was "assisted by U.S. and Iraqi government and military officials." Compl. ¶¶ 61-63. But the only factual assertion in support of this "color of law" allegation is Plaintiff's allegation that "[p]rivate security forces are licensed and openly operate under the laws of Iraq," *id.* ¶ 62, a mirror copy of an allegation found deficient by the Eleventh Circuit in *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1264, 1266 (11th Cir. 2005), *cert. denied*, 127 S.Ct. 596 (2006). Of particular relevance here, the *Aldana* court specifically held that "Guatemala's registration and toleration of private security forces d[id] not transform those forces' acts into state acts." *Id.* at 1248 (citing *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 171-78 (1972)). In the instant case, Plaintiff further fails to identify the state actors with whom RTI allegedly conspired, the alleged agreement entered into, the purpose of any such alleged conspiracy or joint action, or any covert or overt acts in furtherance of the alleged conspiracy or joint action. Surely Plaintiff does not allege that RTI conspired with USAID or "U.S. and Iraqi government and military officials," Compl. ¶ 62, to "murder or

summarily execute[] . . . , or direct[] an attack on" civilians such as Ms. Antranick.  *Id.* ¶ 61.  Not only is such an inference absurd, it directly contradicts Plaintiff's detailed description of RTI's activities in Iraq as "provid[ing] governance services for Iraq," *Id.* ¶ 14, *i.e.*, "to create 180 local and provincial governments in Iraq and promote Iraqi civic participation in the political process." *Id.* ¶ 16; *see also id.* ¶¶ 17, 64.

Simply, Plaintiff cannot identify any state actor who allegedly "conspired" with Defendants to kill innocent civilians.  And, as noted above, this Court need not and should not accept conclusory allegations "unsupported by facts set out in the complaint or legal conclusions cast as factual allegations." *Spahr*, 501 F. Supp. 2d at 95 (citing *Twombly*, 127 S. Ct. at 1964-65).[18]

Because this Circuit and this Court do not recognize any "middle ground between private action and government action," *Saleh*, 436 F. Supp. 2d at 58 (discussing *Sanchez-Espinoza*), and have explicitly rejected color of law and complicity theory for establishing a violation of the law of nations for purposes of ATS jurisdiction, *id.* at 57-58; *Doe I*, 393 F. Supp. 2d at 26, Plaintiff's First Cause of Action fails for lack of subject matter jurisdiction, and this Court must dismiss it.

**B.    Plaintiff's First Cause Of Action Must Be Dismissed Because Plaintiff Fails, As A Matter Of Law, To Allege Facts Sufficient To State A "War Crime."**

Plaintiff's ATS claim must be dismissed for the independent and sufficient reason that Plaintiff fails to allege facts that give rise to a "war crime" upon which ATS jurisdiction can be

---

[18] Of course, to the extent Plaintiff alleges RTI and Unity were acting with the complicity of or jointly with the U.S. Government, *see* Compl. ¶¶ 14, 17, 62, 63, Plaintiff's claims would be nonjusticiable either under the political question doctrine or on sovereign immunity grounds.  *See Sanchez-Espinoza*, 770 F.2d at 207; *Saleh*, 436 F. Supp. 2d at 58 (emphasizing that allegations that the defendant acted under color of U.S. law move the plaintiff "closer . . . to the jurisdictional limitation of the political question doctrine"); *Ibrahim*, 391 F. Supp. 2d at 14 n.3 ("For rather obvious reasons ... plaintiffs disavow any assertion that the defendants were state actors [of the U.S. government], ... [I]f defendants were acting as agents of the state, they would have sovereign immunity under *Sanchez-Espinoza*.").

predicated.   To constitute a "war crime" under international law, the acts complained of must either involve military personnel or otherwise be undertaken in furtherance of a war objective or to orchestrate hostilities.   Plaintiff alleges neither circumstance here.   Rather, Plaintiff alleges only that "[t]he murder of Ms. Antranick was committed in the course of *a civil conflict*," *i.e.*, an internal and non-international conflict.   Compl. ¶ 64 (emphasis added).   Accepting Plaintiff's allegations as true for purposes of this Motion, *i.e.*, that the conflict is not of an international nature, common Article 3 of Geneva Convention IV,[19] *see id.* ¶ 44(j), and § 2441(c)(3) of the War Crimes Act,[20] 18 U.S.C. 2441, both of which expressly apply to conflicts "not of an international character," provide guidance.[21]

---

[19] Convention Relative to the Protection of Civilian Persons in Time of War, Aug. 12, 1949, 6 U.S.T. 3516, 75 U.N.T.S. 287 (Feb. 2, 1956).

[20] Of course, the War Crimes Act, a federal criminal statute, does not provide a private cause of action under which Plaintiff can sue RTI.

[21] To the extent Plaintiff alleges that RTI has directly violated certain international declarations and agreements, the Supreme Court has expressly rejected the notion that "'[i]nternational agreements, even those directly benefiting private persons, . . . create private rights or provide for a private cause of action in domestic courts.'" *Medellin v. Texas*, 128 S. Ct. 1346, 1357 n.3 (2008) (quoting 2d Restatement (Third) of Foreign Relations Law of the United States § 907, Comment a, p. 395 (1986)). This Court has likewise held that Geneva Convention IV, Compl. ¶ 44(j), is not self-executing and does not provide a private cause of action. *In re Iraq and Afghanistan Detainees Litig.*, 479 F. Supp. 2d 85, 115-17 (D.D.C. 2007) (dismissing the plaintiffs' claims of direct violation of Geneva Convention IV). In addition, the Supreme Court has specifically observed that the United Nations Charter, Compl. ¶ 44(d), is not self-executing and does not create individually enforceable rights. *Medellin*, 128 S. Ct. at 1357 n.3; *see also Nattah v. Bush*, 541 F. Supp. 2d 223, 233 (D.D.C. 2008) (citing *Comm. of U.S. Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 936 (D.C. Cir. 1988)). Similarly, Declarations of the UN General Assembly, including the Universal Declaration of Human Rights ("UDHR"), Compl. ¶ 44(e), and the Declaration on the Protection of All Persons From Being Subjected to Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Compl. ¶ 44(h), "are merely aspirational and were never intended to be binding on member States of the United Nations," let alone to create private causes of action. *Flores v. Southern Peru Copper Corp.*, 414 F.3d 233, 259 (2d Cir. 2003); *see also Sosa*, 542 U.S. at 734-35 (observing that the UDHR "ha[s] little utility under the standard set out in this opinion" and "does not of its own force impose obligations as a matter of international law"); *Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 816 n.17 (D.C. Cir. 1987) (the UDHR is "merely a nonbinding resolution"). Similarly, the Vienna Declaration and Programme of Action, Compl. ¶ 44(i), adopted by the 1993 World Conference on Human Rights, is equally non-binding and, at most, "merely aspirational," *see Flores*, 414 F.3d at 259, and the International Covenant on Civil and Political Rights, Compl. ¶ 44(f), likewise "ha[s] little utility under the standard set out in [*Sosa*]" and "d[oes] not itself create obligations enforceable in the federal courts." *Sosa*, 542 U.S. at 734-35. As for the Convention Against Torture and Other Cruel, Inhuman or

To state a "war crimes" claim, the conduct giving rise to the claim must take place "*in the context of and in association with*" the armed conflict. 18 U.S.C. § 2441(c)(3). This Court recently interpreted a similar term, "*in the course of . . . armed conflict* between military forces of any origin," as used in the Antiterrorism Act of 1991 ("ATA"), 18 U.S.C. § 2331(4)(C). *Estate of Klieman v. Palestinian Auth.*, 424 F. Supp. 2d 153, 162-67 (D.D.C. 2006) (emphasis added). The plaintiffs there argued that "an attack on a civilian bus ... cannot be deemed to have occurred '*in the course of*' war between nations or armed conflict within the meaning of § 2331" because "'in the course of' ... [is] a gatekeeper phrase that is intended to exclude as a matter of law a subset of conduct which — because of its nature and substance — deviates from and/or is insufficiently related to the general set of conduct governed by the provision in question." *Id*. at 164; *see also id*. at 165 (citing cases similarly interpreting "in the course of"). Concluding that "'in the course of' necessarily imposes limitations on what 'acts' constitute 'acts of war' within the meaning of [the ATA]," this Court held that the bus attack "did not occur 'in the course of' an armed conflict." *Id*. at 166-67. This Court should take a similar view of Plaintiff's war crimes allegations.

Numerous secondary sources confirm that a "war crime" requires a nexus between the complained-of conduct and an armed conflict, as opposed to mere occurrence of the conduct in a war zone. The nexus requirement serves two important purposes. GUENAEL METTRAUX, INTERNATIONAL CRIMES AND THE *AD HOC* TRIBUNALS, 38-39 (2005). First, it distinguishes "war crimes from purely domestic crimes ... . Whilst the international laws of war would apply to ...

---

Degrading Treatment or Punishment ("CAT"), Compl. ¶ 44(g), it is a non-self-executing treaty, and the United States has executed it in part through the TVPA, which creates "a private right of action for victims of official torture." *Flores*, 414 F.3d at 246-47, n.20. Plaintiff has already pled a TVPA claim in his Second Cause of Action, making any purported claim under the CAT both redundant and incorrect as a matter of U.S. and international law. Should this Court decide not to dismiss any claims allegedly arising from these instruments, RTI requests a more definite statement identifying the specific provisions allegedly breached and how RTI purportedly violated them.

those actions sufficiently connected with the armed conflict to be regarded as a war crime, domestic law ... would normally apply to [those which are not]." *Id*. Second, it necessarily excludes "purely random or isolated criminal occurrences which do not constitute war crimes." *Id*. at 39.[22] Accordingly, "[i]t would not be sufficient ... to establish merely that the conduct in question took place whilst an armed conflict was ongoing or that this crime could be committed due . . . to the circumstances created by the armed conflict." *Id*. at 41-42.

While Plaintiff again tries to fit his allegations into a "war crime" paradigm, Plaintiff's more specific allegations belie his more general characterizations. Plaintiff generally alleges that the acts were "committed in the course of a civil conflict for political purposes," that "RTI's work in Iraq is political in nature, and the death of Ms. Antranick occurred in furtherance and within the scope of these activities." Compl. ¶ 64. But Plaintiff makes no allegation that the alleged incident occurred in the course of hostilities or in furtherance of some war objective. In fact, Plaintiff alleges that Ms. Antranick was "shot through the head and neck," *id*. ¶ 1, by "[Unity] employees who . . . had just dropped off an employee of RTI and were returning to their base of operations." *Id*. ¶ 2; *see In re Sinaltrainal Litig.*, 474 F. Supp. 2d 1273, 1287-88 (S.D. Fla. 2006) (dismissing ATS war crimes claims and noting that the plaintiffs "fail[ed] to identify any allegations that the acts were committed in furtherance of war hostilities"). Plaintiff's inflammatory allegation that "[t]he Defendants are war profiteers, knowingly engaged in an ongoing campaign of terror against the inhabitants of [Baghdad]," Compl. ¶ 11, not only lacks

---

[22] *See also, e.g.*, Wolfgang Schomburg & Ines Peterson, *Genuine Consent to Sexual Violence Under International Criminal Law*, 101 AM. J. INT'L L. 121, 130-31 (2007) (noting that the nexus requirement excludes any criminal conduct not sufficiently connected with an armed conflict to "ensure[] that not every crime committed during an ongoing armed conflict automatically qualifies as a war crime"); METTRAUX, at 38-47 (explaining that a nexus is required to distinguish "war crimes" from the "great many crimes . . . committed in armed conflicts that do *not* constitute war crimes" (emphasis added)); SEAN D. MURPHY, PRINCIPLES OF INTERNATIONAL LAW 421 (2006) (same).

any grounding in the facts, but "is a far cry from alleging that [RTI and Unity] actually conspired . . . to orchestrate hostilities." *See In re Sinaltrainal*, 474 F. Supp. 2d at 1289.

The logical consequence of Plaintiff's allegations is that "any violence or threat against a civilian or 'non-combatant' during an armed conflict should be considered a war crime," a contention this Court has previously rejected as "stretch[ing] the meaning of war crimes ... too far" and as "unsupported by authority." *Doe v. Islamic Salvation Front*, 257 F. Supp. 2d. 115, 120-21 (D.D.C. 2003); *accord In re Sinaltrainal*, 474 F. Supp. 2d at 1289 (explaining that recognizing plaintiffs' war crimes claims would require "a dramatic expansion of [ATS] jurisprudence, one which lacks support in either domestic or international law," wherein plaintiffs failed to allege that defendants acted to further war hostilities). Because Plaintiff has failed to allege facts sufficient to state a claim for "war crimes," this Court lacks subject matter jurisdiction and must dismiss Plaintiff's First Cause of Action.

## IV.    PLAINTIFF'S TORTURE VICTIM PROTECTION ACT CLAIM MUST BE DISMISSED AS A MATTER OF LAW.

Plaintiff's Second Cause of Action alleges a claim under the Torture Victim Protection Act ("TVPA"), for "extrajudicial killing." 28 U.S.C. § 1350 note § 2(a)(2); *see* Compl. ¶¶ 67-69. The TVPA provides a substantive cause of action in federal court against "an individual who, under actual or apparent authority, or color of law, of any foreign nation...subjects an individual to extrajudicial killing." 28 U.S.C. § 1350 note § 2(a)(2). Plaintiff's TVPA claim fails as a matter of law because: (1) the TVPA applies only to "*individuals*" and thus not to RTI as a corporation; (2) RTI was not acting under "actual or apparent authority" or under "color of law of a foreign nation"; and (3) RTI did not subject an individual to an "extrajudicial killing" within the meaning of the TVPA.

A.    **Plaintiff's TVPA Claim Fails As A Matter Of Law Because The Statute Does Not Apply to Corporations.**

The TVPA, which provides a substantive cause of action in federal courts, states, in pertinent part, that "an *individual* who, under actual or apparent authority, or color of law, of any foreign nation … subjects an individual to extrajudicial killing shall ... be liable for damages." 28 U.S.C. § 1350 note § 2(a)(2) (emphasis added).    Under classic canons of statutory construction, the "plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240-42 (1989).  By its plain language, the TVPA expressly and unequivocally limits its applicability to "individual" defendants. *See Collett v. Socialist Peoples' Libyan Arab Jamahiriya*, 362 F. Supp. 2d 230, 242 (D.D.C. 2005) (holding that the TVPA did not provide a cause of action against Libya or the Libyan intelligence agency because the TVPA applies only to claims against individual defendants).  This Court, joined by a multitude of other jurisdictions, has specifically recognized that "[o]n balance, the plain reading of the [TVPA] strongly suggests that it only covers human beings, and *not corporations*." *Doe I*, 393 F. Supp. 2d at 28 (emphasis added); *accord Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1164, 1174-75 (C.D. Cal. 2005); *In re Agent Orange Product Liab. Litig.*, 373 F. Supp. 2d 7, 56 (E.D.N.Y. 2005), *aff'd sub nom.*, *Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co.*, 517 F.3d 104 (2d Cir. 2008); *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 565-66 (S.D.N.Y. 2005); *Arndt v. UBS AG*, 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004); *Beanal v. Freeport-McMoRan,*

*Inc.*, 969 F. Supp. 362, 382 (E.D. La. 1997), *aff'd on other grounds*, 197 F.3d 161, 168-69 (5th Cir. 1999).[23]

In *Doe I*, this Court entertained a suit against Exxon Mobil, in which the plaintiffs alleged a TVPA claim, in addition to other claims. 393 F. Supp. 2d at 28. This Court held, based on a plain reading of the statute, that the TVPA "only covers human beings, and not corporations." *Id*. In so deciding, this Court relied, in part, on the Supreme Court's analysis of the meaning of the word "individual" in *Clinton v. City of New York*, 524 U.S. 417, wherein the high Court, in the context of the Line Item Veto Act, recognized that the word "individual" typically denotes a more limited group than the word "person," which often also covers corporations. *Id*. at 428-29 nn.13-14; *accord Beanal*, 969 F. Supp. at 382 (noting that "the plain meaning of the term 'individual' does not typically include a corporation"). Similarly, in *Collett v. Socialist Peoples' Libyan Arab Jamahiriya*, this Court limited the scope of the TVPA to individual human beings, refusing to impose liability on the state of Libya or its intelligence agency. 362 F. Supp. 2d at 242.

Resorting to and relying on the canon of statutory construction that "identical words used in different parts of the same act" are presumed to have an identical meaning, courts outside of

---

[23] Only two cases have permitted TVPA claims against corporations: *Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345, 1358-59 (S.D. Fla. 2003), and *Estate of Rodriquez v. Drummond Co., Inc.*, 256 F. Supp. 2d 1250, 1266-67 (N.D. Ala. 2003). *Estate of Rodriguez* heavily relied on *Sinaltrainal* in reaching its conclusion. These two courts depart from the prevailing rationale on several fronts: (1) both cite to and rely on the Supreme Court's holding in *Clinton v. City of New York*, 524 U.S. 417, 428-29 nn.13-14 (1998), for the proposition that the term "individual" may be synonymous with the term "person" for purposes of the Line Item Veto Act, though they both ignore the high Court's affirmation that in "*ordinary* usage…'person' often has a broader meaning in the law…('person' includes corporations, companies…)"; (2) both likewise fail to address the need to define uniformly the same term repeated in a statute; (3) both conclude that because Congress did not explicitly exempt corporations from liability under the act, it must have implicitly intended to include them. *See Sinaltrainal*, 256 F. Supp. 2d at 1358-59; *Estate of Rodriguez*, 256 F. Supp. 2d at 1266-67. As discussed herein, such conclusions are contrary to the well-settled standard of statutory interpretation that the plain meaning of legislation controls, and a speculative inquiry into Congresses' ill-defined intent is inappropriate in the absence of ambiguity.

this jurisdiction have reached the same conclusion as this Court did in *Doe I*. *See In re Agent Orange*, 373 F. Supp. 2d at 56 (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003)); *see also Mujica*, 381 F. Supp. 2d at 1176 (citing *Costa*, 539 U.S. at 101; *Atlantic Cleaners & Dyers v. United States,* 286 U.S. 427, 433 (1932)). Each of these courts noted that the TVPA, by its terms, explicitly applies to acts by an "individual" who subjects another "individual" to torture or to an extrajudicial killing. 28 U.S.C. § 1350 note §2(a)-(b); *see Mujica*, 381 F. Supp. 2d at 1176; *In re Agent Orange*, 373 F. Supp. 2d at 56. As the *Mujica* court observed, it is not "possible for corporations to be tortured or killed" or "for corporations to feel pain and suffering." 381 F. Supp. 2d at 1176. Accordingly, the only reading of the TVPA that avoids an "absurd result" is one that "exclud[es] corporations from the scope of the statute's liability." *Id.* (internal quotation marks and citation omitted); *accord In re Agent Orange*, 373 F. Supp. 2d at 56 ("Both from context and common sense only natural persons can be the 'individual' victims of acts that inflict 'severe pain and suffering.' Because the TVPA uses the same term 'individual' to identify offenders, the definition of 'individual' within the statute appears to refer to a human being, suggesting that only natural persons can violate the Act." (citation omitted)). Affording the term "individual" a uniform definition throughout the statute compels this Court to exclude corporations from the TVPA's scope. Accordingly, this Court must dismiss Plaintiff's Second Cause of Action.

> **B.      Plaintiff's Second Cause of Action Fails as a Matter of Law Because Plaintiff Has Not Alleged — And Cannot Allege — That RTI Acted Under Actual or Apparent Authority or Under Color of Law of a Foreign Nation.**

Even if the TVPA applied to corporations (which it does not), Plaintiff's TVPA claim would fail because he has not alleged, nor can he allege, that RTI acted under actual or apparent authority or under color of law of a foreign nation, an essential element of a TVPA claim.

31

To maintain an action under the TVPA, Plaintiff must establish that RTI acted "under actual or apparent authority, or color of law" of a foreign nation. 28 U.S.C. §1350 note § 2(a). Thus, the plain language of the TVPA evinces (1) its explicit state action requirement and (2) its singular application to acts committed under authority or color of *foreign* law.[24]  *See Harbury v. Hayden*, 444 F. Supp. 2d 19 (D.D.C. 2006), *aff'd,* 522 F.3d 413 (D.C. Cir. 2008); *Schneider v. Kissinger*, 310 F. Supp. 2d 251 (D.D.C. 2004), *aff'd,* 412 F.3d 190, 366 (D.C. Cir. 2005).

The TVPA's legislative history is equally explicit on this point: "[T]he plaintiff must establish some governmental involvement in the torture or killing to prove a claim," and thus the TVPA "does *not* attempt to deal with torture or killing *by purely private groups*." H. R. Rep. No. 367, at 5 (1991) (emphasis added); *see also Belhas v. Ya'Alon*, 515 F.3d 1279, 1288 (D.C. Cir. 2008) ("There must be some level of government action for an individual to be liable in a TVPA case.").

Under the TVPA, a defendant acts under "color of law" when he or she acts together with foreign state officials or with significant foreign state aid.  *Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254 (2d Cir. 2007), *aff'd sub nom., American Isuzu Motors, Inc. v. Ntsebeza*, 128 S.Ct. 2424 (2008) (citing *Kadic,* 70 F.3d at 245).  There is no allegation, nor do the facts lend themselves to an allegation, even under Plaintiff's relaxed pleading standards, that Iraqi state officials were in any way involved in the death of Ms. Antranick.[25]

---

[24] Of course, insofar as Plaintiff asserts U.S. governmental assistance in furtherance of its state action argument, *see* Compl. ¶ 62, that assertion is irrelevant, as the TVPA applies only to acts committed under the auspices of *foreign* authority or law.

[25] While Plaintiff alleges that RTI acted under "color of law," Compl. ¶¶ 61, 63, and "with the complicity of state actors," Compl. ¶ 62, Plaintiff fails to allege that RTI acted under color of *foreign* law or conspired with the State of Iraq.  Nor for the reasons stated above would such a conclusory allegation, even if made, be sufficient. See discussion *supra* at III.A.4.

That Plaintiff's allegations are insufficient as a matter of law is further highlighted by this Court's recent decision in *Doe I v. Exxon Mobil*, 393 F. Supp. 2d. at 20, wherein this Court dismissed an action against several oil companies brought under the ATS and TVPA, alleging that they aided and abetted human rights abuses committed by the Indonesian army by hiring members of that army to guard natural gas pipelines. *Id*. at 22. This Court dismissed the TVPA claims, holding that, despite the plaintiffs' allegations that the oil companies made decisions on where to build bases, hired mercenaries to train the troops, and provided logistical support to the army, the plaintiffs still "d[id] not sufficiently allege that defendants participated in or influenced the military's actions that allegedly caused the human rights violations." *Id*. at 27. If the *Doe I* plaintiffs' more specific and factually-based allegations were insufficient to establish "color of law" for purpose of the TVPA, Plaintiff's conclusory allegations in the instant case — which do not even allege that RTI acted under color of *foreign* law — must likewise fail. Indeed, cases in which courts have held that plaintiffs have sufficiently alleged state action under the TVPA stand in sharp contrast to Plaintiff's bare allegations here.[26]

---

[26] *See Aldana*, 416 F.3d at 1249 (holding that town mayor's alleged active participation as an armed aggressor in the plaintiffs' alleged torture sufficiently established state action for purposes of the TVPA); *Chavez v. Carranza*, 413 F. Supp. 2d 891, 903 (W.D. Tenn. 2005) (holding that allegations that private individuals carried military-issued rifles and were accompanied by members of El Salvadoran security police when carrying out acts alleged to violate the TVPA were sufficient to establish "state action" under the TVPA); *Mujica*, 381 F. Supp. 2d at 1175 (holding that allegations that oil company paid for and received security for its pipeline from Colombian Air Force ("CAF") in addition to allegations that the CAF acted as the company's agent in carrying out a helicopter attack on a village were sufficient to meet the "color of law" requirement under the TVPA, though the court subsequently dismissed the plaintiff's TVPA claims against the corporation because the TVPA applies only to individuals); *Tachiona v. Mugabe,* 169 F. Supp. 2d 259, 316 (S.D.N.Y. 2001), *aff'd in part, rev'd in part on other grounds, Tachiona v. U.S.*, 386 F.3d 205 (2d Cir. 2004), *cert. denied*, 547 U.S. 1143 (2006) (holding that plaintiffs had sufficiently alleged acts under "color of law" for TVPA purposes, where defendants, including Zimbabwe's president, foreign minister, and members of the controlling political party of Zimbabwe, allegedly employed state transportation, communication, and financial resources to commit killings and torture).

Because Plaintiff has failed to allege any credible foreign governmental involvement in the alleged acts, Plaintiff's TVPA claim fails as a matter of law and must be dismissed. *See Spahr*, 501 F. Supp. 2d at 97-98 (citing *Twombly*, 127 S. Ct. at 1964-66).

**C.**    **Plaintiff's TVPA Claim Fails For The Additional Reason That The Alleged Incident Does Not, As A Matter of Law, Constitute An "Extra-Judicial" or "Deliberated Killing" Within The Meaning Of The Act.**

To bring a TVPA claim, Plaintiff must also establish that RTI subjected Ms. Antranick to an "extrajudicial killing," as defined in the Act. 28 U.S.C. § 1350 note § 2(a)(2). The TVPA defines "extrajudicial killing," in pertinent part, as a "deliberated killing not authorized by previous judgment pronounced by a regularly constituted court…" *Id*. at § 3(a). Manifest in the Act's definition is that the TVPA does not apply to all "killings." Rather, for a "killing" to be actionable under the TVPA, it must be perpetrated under authority or color of foreign law (as discussed *supra* at IV.B), in the absence of proper judicial authorization, and it must be "deliberated."

To date, courts in this jurisdiction and elsewhere have recognized TVPA claims for "extrajudicial killings" only in instances such as assassinations, bus and airplane bombings, executions by governmental "death squads," executions of prisoners afforded little or no judicial process before their death, and comparable instances where the defendant targeted the victim in advance. *See, e.g., Oveissi v. Islamic Republic of Iran*, 498 F. Supp. 2d 268 (D.D.C. 2007) (in the Foreign Sovereign Immunity Act ("FSIA") exemption context, highlighting that the FSIA "lifts" its definition of "extrajudicial killing" directly from the TVPA, and holding that an *assassination* of an expatriate former Iranian military leader in Paris qualified as an "extrajudicial killing"); *Estate of Bayani v. Islamic Republic of Iran*, 530 F. Supp. 2d 40 (D.D.C. 2007) (holding that the execution of an individual in Iran, after "trial" by Iranian Revolutionary Court, did not constitute sufficient judicial process and thus execution met the definition of

"extrajudicial killing" under the TVPA); *Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 85 (D.D.C. 2006) (holding that the "victims of [a] Tel Aviv bus bombing were *deliberately targeted for death* … thus qualifying the bombing as an act of 'extrajudicial killing,' as defined by the [TVPA].").[27]   In each case, the alleged perpetrator affirmatively sought out a specific target and deliberately effectuated a "killing," and each presents a punitive or retributive quality conspicuously lacking here.  Plaintiff has not alleged (and cannot allege) that the alleged acts in the present case were committed with the requisite degree of planning, targeting, and "deliberation" to establish a TVPA claim.  Accepting all factual allegations as true, the acts which allegedly resulted in the death of Ms. Antranick, while tragic, are simply not of the sort contemplated as actionable under the TVPA.

Moreover, in considering the "deliberated" and "extrajudicial killing" elements in tandem with the Act's explicit "under authority or color of foreign law" requirement, the inapplicability of the TVPA to Plaintiff's claim is glaring.  That the TVPA specifically uses the terms "extrajudicial" and "deliberated" suggests that Congress intentionally limited the TVPA's coverage to a specific scope of conduct.  The paradigmatic types of conduct intended to fall under the TVPA are, for example, calculated, government-endorsed assassinations such as those in *Oveissi* or *Rafael Saravia*, or the summary execution of prisoners without proper trial such those in *Bayani*.  *See Oveissi*, 498 F. Supp. 2d at 268; *Rafael Saravia*, 348 F. Supp. 2d at

---

[27] *Accord, e.g., Chavez*, 413 F. Supp. 2d at 903 (granting summary judgment on TVPA claim to El Salvadoran plaintiff whose parents "were *summarily executed by government-affiliated death squads*" and another El Salvadoran plaintiff whose husband was a leader in a political opposition group and was *abducted and killed by public security forces*, as they both qualified as "extrajudicial killings" (emphasis added)); *Doe v. Rafael Saravia*, 348 F. Supp. 2d 1112, 1144 (E.D. Cal. 2004) (holding that the allegations of involvement by the "*chief of security" for the organizer of El Salvadoran paramilitary organization* in the 1980 *assassination* of an archbishop sufficiently "establish[ed] Plaintiff's claims of extrajudicial killing in violation of the TVPA" (emphasis added)); *Lafontant v. Aristide,* 844 F. Supp. 128, 138 (E.D.N.Y. 1994) (holding the *assassination* of a political opponent *on the orders of the president of Haiti* fell within the TVPA's definition of "extrajudicial killing").

1144; *Estate of Bayani*, 530 F. Supp. 2d at 40.  The TVPA's allowance for "killings" carried out pursuant to proper judicial authority serves a vital gate-keeping function, offering a reciprocal protection to state actors engaged in judicially legitimized conduct.

The jurisprudence of this Court brings this point to bear.  Recently, in *Pugh v. Socialist People's Libyan Arab Jamahiriya*, this Court entertained claims brought by family members and personal representatives of victims of the bombing of UTA Flight 772, which exploded in mid-air over Niger.  No. 02-02026 HHK,  2006 WL 2384915 at *1 (D.D.C. May 11, 2006).  The plaintiffs brought claims under the TVPA against *individual Libyan governmental agents and officials*, premised on their involvement in the attack.  *Id.*  In holding that the bombing qualified as an "extrajudicial killing" under the TVPA, this Court emphasized that "[t]he undisputed evidence establishes that these actions *were deliberately planned* with knowledge that the death of those aboard Flight 772 … would result.  Moreover, the victims were not convicted of any crime such that the killings were authorized or lawful.  Consequently, the killings were extrajudicial and give rise to liability pursuant to the TVPA."  *Id.* at *9.

Plaintiff's failure to allege an "extrajudicial" or  "deliberated" killing, as those terms are employed in the TVPA, is fatal to his TVPA claim.  Plaintiff's Second Cause of Action must therefore be dismissed.

## V.    COUNT VII SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO ALLEGE FACTS SUFFICIENT TO MAKE A CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

Plaintiff's Seventh Cause of Action (negligent infliction of emotional distress) should be dismissed because Plaintiff has failed to (and cannot) allege the requisite elements of the cause

of action in any of the jurisdictions he invokes.[28]  *See* Compl. ¶ 46 (invoking the laws of the District of Columbia, Colorado and North Carolina).

District of Columbia:  Plaintiff fails to state a cause of action for negligent infliction of emotional distress under the laws of this jurisdiction because Plaintiff fails to and cannot allege that Mr. Antranick was present at his daughter's death or at the time of her injury.  In the District of Columbia, to state a claim for negligent infliction of emotional distress, the complaint must allege:  (1) that plaintiff was present in the zone of physical danger, which was (2) created by defendant's negligence, and (3) that the plaintiff feared for his own safety.  *Wright v. United States*, 963 F. Supp. 7, 18 (D.D.C. 1997); *Williams v. Baker*, 572 A.2d 1062, 1067 (D.C. 1990). A plaintiff in this jurisdiction must also show that his emotional distress is "serious and verifiable," which is defined as "long continued mental disturbance, [such] as ... repeated hysterical attacks, or mental aberration."  *Jones v. Howard Univ. Inc.*, 589 A.2d 419, 424 (D.C. 1991).  In addition to not being present at the scene of the shooting, Mr. Antranick has failed to allege that he has suffered from "serious and verifiable emotional distress" or that he has suffered from "repeated hysterical attacks or mental aberration."  *See* Compl. ¶ 95.  For these reasons, Plaintiff has failed to state a cognizable claim under the laws of the District of Columbia.

Colorado:  Plaintiff has likewise failed to state a claim for negligent infliction of emotional distress under the laws of Colorado.  In Colorado, a plaintiff must allege and establish (1) that the defendant was negligent, (2) the negligence subjected the plaintiff to an unreasonable

---

[28] "[U]ntil the choice of laws issues are briefed," Plaintiff has pled his common law tort claims under the laws of the District of Columbia, North Carolina and Colorado.  Compl. ¶ 46.  RTI's Motion is drafted accordingly.  If, however, any of the tort claims survive the instant Motion, RTI respectfully requests that the Court order briefing on choice of law so that the parties may tailor their future pleadings accordingly. Pursuant to Federal Rule of Civil Procedure 44.1, RTI notes that Iraqi substantive law may also apply given that the Plaintiff and the decedent are citizens of Iraq, the decedent's estate has been probated in Iraq, and the operative events as described in the Complaint occurred in Iraq.

risk of bodily harm that made the plaintiff fear for his or her own personal safety, and (3) that the plaintiff's fear manifested itself in physical consequences or long-continued emotional disturbance. *Scharrel v. Wal-Mart Stores, Inc.*, 949 P.2d 89, 93 (Colo. Ct. App. 1997); *see also Towns v. Anderson*, 579 P.2d 1163, 1165 (Colo. 1978) (plaintiff needs to be subject to unreasonable risk). Colorado courts have repeatedly refused to expand this cause of action to situations where the plaintiff was not subjected to an unreasonable risk of danger. *Kimelman v. City of Colorado Springs*, 775 P.2d 51, 52 (Colo. Ct. App. 1988); *Hale v. Morris*, 725 P.2d 26, 28-9 (Colo. Ct. App. 1986); *Millican v. Clayton*, 701 P.2d 107, 108-09 (Colo. Ct. App. 1985). Here, Plaintiff has failed to allege that the Defendants subjected the *Plaintiff* — the *father* of the decedent — to any unreasonable risk of bodily harm that made him fear for his personal safety. *See* Compl. ¶ 95. Plaintiff likewise has failed to allege that he suffered from any physical consequences or long-continued emotional disturbance. *See id*. ¶ 93. Thus, as a matter of law, Mr. Antranick cannot bring a claim for negligent infliction of emotional distress in Colorado.

North Carolina: Finally, Plaintiff's claim fails as a matter of North Carolina law. To survive a motion to dismiss, a plaintiff in North Carolina must allege that he has suffered from a particular disorder or condition. *See, e.g., Haynes v. Sentry Corp.,* No. 5:00CV43-BR(2), 2000 WL 33682678, at *1 (E.D.N.C. Apr. 4, 2000) (dismissing a claim for failure to "set forth the specifics of [the] distress or damages as required") (attached as Exhibit B); *Pardasani v. Rack Room Shoes, Inc.*, 912 F. Supp. 187, 192 (M.D.N.C. 1996) (dismissing emotional distress claims because "[p]laintiff fail[ed] to claim any 'severe or disabling mental condition'"). To be clear, under North Carolina law, a plaintiff must show that severe emotional distress — not mere disappointment, sadness or regret — was a foreseeable result of a defendant's negligence. *Sorrells v. M.Y.B Hospitality Ventures of Ashville,* 435 S.E.2d 320, 321-22 (N.C. 1993); *Johnson*

*v. Ruak Obstetrics & Gynecology Assoc.*, 395 S.E.2d 85, 97 (N.C. 1990). The North Carolina Supreme Court has defined "severe emotional distress" as "any emotional or mental disorder, such as, ... neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be . . . diagnosed by trained professionals." *Johnson*, 395 S.E.2d at 97.

First, Plaintiff's Complaint is transparently deficient in that it fails to "set forth the specifics of [the] distress" as required by *Haynes,* No. 5:00CV43-BR(2), 2000 WL 33682678, at *1. Indeed, Plaintiff fails to allege anywhere in the Complaint that he is suffering from an emotional disorder or any other type of disabling mental condition.[29]

Second, Plaintiff has not properly alleged that the death of his daughter has caused him "foreseeable" severe emotional harm. To make a foreseeability determination, North Carolina courts consider the following factors: (1) the plaintiff's proximity to the negligent act; (2) the relationship between the plaintiff and the person injured; and (3) whether the plaintiff personally observed the negligent act. *Johnson*, 395 S.E.2d at 98. The North Carolina Supreme Court has dismissed claims for negligent infliction of emotional distress when plaintiffs have failed to allege properly the element of foreseeability. *Sorrells,* 435 S.E.2d at 323 (N.C. 1993) (granting motion to dismiss in parent-child negligent infliction of emotional distress cases); *Hickman v. McKoin*, 446 S.E.2d 80, 83 (N.C. 1994) (same).

Here, Plaintiff does not allege that Defendants knew even the identity of the decedent at the time of the incident, much less whether the decedent had any surviving parents or the identity of the surviving parent. *See Sorrells,* 435 S.E.2d at 323 (dismissing negligent infliction of

---

[29]   Mr. Antranick merely alleges that "Defendants [sic] negligence directly and foreseeably harmed Plaintiff," and that Defendants' negligence "did in fact cause Plaintiff to suffer severe emotional distress." Compl. ¶¶ 94, 95. This boilerplate, conclusory language is insufficient to support this cause of action.

emotional distress claim where "it d[id] not appear that the defendant had any actual knowledge that the plaintiffs existed"). Nor, more importantly, did Plaintiff allege that RTI knew that the Unity personnel were engaged in an altercation with the daughter of someone who was predisposed to suffer from more than normal distress caused by the death of a daughter. *See Sorrells*, 435 S.E.2d at 323 (holding that dismissal of claims is appropriate where plaintiff did not witness negligent act and where defendant was not on notice that parent would suffer from severe emotional distress); *see also Gardner v. Gardner*, 435 S.E.2d 324, 328 (N.C. 1993) (holding that defendant must be aware of the possibility that the death of plaintiff's child would cause plaintiff to suffer from a mental disorder or other severe and disabling mental condition).

Having failed to allege properly the foreseeability element of the claim, Plaintiff's claim for negligent infliction of emotional distress under North Carolina law fails.

## VI.   THIS COURT SHOULD STRIKE PLAINTIFF'S REQUESTS FOR DECLARATORY AND INJUNCTIVE RELIEF BECAUSE NEITHER FORM OF RELIEF IS AVAILABLE AS A MATTER OF LAW.

Plaintiff's prayers for relief in the form of a declaratory judgment, *see* Compl. Part IX (p. 25), ¶ (b), and equitable relief "enjoining Defendants from further engaging in human rights abuses against other inhabitants of Baghdad," *id.* Part IX (p. 26), ¶ (d), should be stricken because neither form of relief is available to Plaintiff, even accepting his allegations as true.

Plaintiff's request for declaratory relief should be denied because such relief is appropriate to delineate only ongoing and forward-looking legal rights and obligations, *not* as a substitute for traditional fact-finding of events that have already occurred. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, this Court, "upon the filing of an appropriate pleading, may declare the *rights and other legal relations* of any interested party seeking such declaration, whether or not further relief is or could be sought." *Id.* Thus, while a Plaintiff may properly seek declaratory relief as to the existence of a legal right (or relationship), such relief is

unsuitable as a means of determining whether those rights have already been violated, at least absent an ongoing case or controversy relating to future behavior. Plaintiff misapprehends the purpose of a declaratory judgment. Declaratory judgment may not be used to "try a disputed question of fact as a determinative issue, rather than a construction of definite stated rights, status, and other relations." 26 C.J.S. *Declaratory Judgments* § 15 (2008).[30] To the extent that Plaintiff seeks a factual adjudication of Defendants' conduct and an application of law to that determination, declaratory judgment is cumulative, redundant, and unnecessary in light of Plaintiff's other requested relief. *See* Compl. Part IX (p.25-26).

Plaintiff also asks this Court to "grant Plaintiff equitable relief, permanently enjoining Defendants from further engaging in human rights abuses against other inhabitants of Baghdad." *Id*. Part IX (p.26), ¶ (d). Disregarding for the moment the inflammatory and overly generic language employed by Plaintiff, RTI asks this Court to strike this prayer for relief because, *inter alia*, Plaintiff lacks standing to seek such relief.

Plaintiff's request for relief is an archetypical assertion of prohibited third-party standing. Plaintiff is not a lead plaintiff acting at the behest of the "inhabitants of Baghdad" in a class action, nor does he assert any statutory basis for his entitlement to such relief. Rather, Plaintiff prays for enjoinment of "human rights abuses" against "*other inhabitants of Baghdad*." *Id*. (emphasis added). By his own language Plaintiff concedes that he seeks relief for parties other

---

[30] *Accord In re Combustion Equipment Assoc., Inc.*, 838 F.2d 35, 38 (2d Cir. 1988) (recognizing that a "suit raising primarily legal issues is a better candidate for declaratory judgment than is a suit raising factual issues"); *Dimuccio v. D'Ambra*, 779 F. Supp. 1318, 1322 (M.D. Fla. 1991) ("[D]eclaratory judgment actions are unique proceedings that will not lie when judicial determinations hinge on factual issues not involving contract interpretations or *construction* of rights or other relations" (emphasis added)); *Allstate Ins. Co. v. Philip Leasing Co.*, 214 F. Supp. 273, 275 (D.S.D. 1963) (holding declaratory judgment improper "where the declaratory judgment action would interfere with an action which has already been commenced[;]…where identical issues between the parties may be handled equally as well in an already pending suit;…where declaratory relief is not necessary or proper under the circumstances, and…where declaratory relief will serve no useful purpose." (citations omitted)).

than himself.   In doing so, Plaintiff asks this Court to controvert the bedrock principle of prudential standing jurisprudence that a "plaintiff generally must assert his own legal rights and interests, and *cannot rest his claim to relief on the legal rights or interests of third parties.*" *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (emphasis added).   Since standing is "the threshold question in every federal case," this Court must strike Plaintiff's prayer for permanent injunctive relief.  *Id*. at 498; *see also Baker v. Carr*, 369 U.S. 186, 204 (1962).

## VII.    ANY SURVIVING CLAIMS SHOULD BE TRANSFERRED TO THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA.

Should any of Plaintiff's claims in the Complaint survive this Motion, RTI respectfully requests that this Court, for the convenience of the parties and witnesses and in the interest of justice, transfer this action to the U.S. District Court for the Eastern District of North Carolina.

"For the convenience of the parties and witnesses, in the interest of justice," a district court may "transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under § 1404, the moving party bears the burden of establishing that transfer is proper.  *Trout Unlimited v. United States Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).

In evaluating a § 1404 motion to transfer, a court must first determine "whether the action could have been brought in the proposed transferee district."  *Gemological Inst. of Am., Inc. v. Thi-Dai Phan*, 145 F. Supp. 2d 68, 71 (D.D.C. 2001).  RTI is subject to personal jurisdiction in North Carolina; thus, this action could have been brought in North Carolina.  *See* 28 U.S.C. § 1391(a)(3); *see also Gemological Inst.*, 145 F. Supp. 2d at 72.

Because this threshold inquiry is easily met here, this Court must next weigh the traditional private and public interest factors.  The private interest factors include:

> (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the

42

> defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

*Trout Unlimited*, 944 F. Supp. at 16 (footnotes omitted).  The public interest factors include:

> (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

*Id.* (footnotes omitted); *see also Gemological Inst.*, 145 F. Supp. 2d at 71 (listing private and public interest factors).

While a plaintiff's choice of forum is generally "accorded 'substantial deference,'" *Gemological Inst.*, 145 F. Supp. 2d at 71 (quoting *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 51, 52 (D.D.C. 2000)), "substantially less deference is warranted when," as here, "the forum preferred by the plaintiff is not his home forum."  *Id.*  The lack of deference is reinforced where the chosen forum — here, the District of Columbia — has "no meaningful ties to the controversy and no particular interest in the parties or the subject matter." *Trout Unlimited*, 944 F. Supp. at 17; *see also id.* at 18 (transferring case where decision-making process occurred in transferee district, not in the District of Columbia).

North Carolina, the proposed transferee district has substantially greater ties to this case than the District of Columbia.  While RTI has both a District of Columbia and a North Carolina office, North Carolina is RTI's place of incorporation, and the jurisdiction in which RTI maintains its headquarters and its principal place of business.  Declaration of Moddassir Mohammad Ali ("Ali Decl.") ¶ 2.  And while RTI has eight domestic offices and another eight international offices, more than 2200 of RTI's 2600 employees work in its North Carolina headquarters.  *Id.*  More fundamentally, the operative RTI-Unity Contract was negotiated

43

between Unity representatives in Dubai, the United Arab Emirates, and RTI representatives in its North Carolina office. *Id.* ¶ 4. The Contract is also administered through RTI's International Contracts and Procurement department, which is located in RTI's North Carolina office. *Id.* ¶ 5. To the extent there is communication outside of Iraq under and pertaining to the Contract, the communication is overwhelmingly between RTI's North Carolina office and Unity's Dubai office. *Id.* ¶ 7. Also, payments to Unity for work in connection with the RTI-Unity Contract are made through RTI's North Carolina office. *Id.* ¶ 6. Finally, the Contract designates a contractual representative for RTI in RTI's North Carolina office and specifies that North Carolina law governs. *Id.* ¶¶ 9-10. Thus, because of the strong ties to North Carolina and the lack of any meaningful ties to this district, this Court must be "especially cautious in allowing this case to remain in the District of Columbia." *Trout Unlimited*, 944 F. Supp. at 17.

The remaining private interest factors also weigh in favor of transfer. While most of the RTI witnesses with relevant knowledge of this action work or otherwise reside in Iraq, those domestic RTI witnesses who have any role at all with Unity overwhelmingly are located in North Carolina. Ali Decl. ¶ 8. Nor can Plaintiff point to any documentary evidence relevant to this action located in the District of Columbia. Thus, the private interest factors favor litigating this action in North Carolina. *See, e.g.*, *Gemological Inst.*, 145 F. Supp. 2d at 73 (transferring action to district in which "key witnesses, documents and stored inventory" were located).

Given the limited ties to this judicial district, there is no reason to burden the courts of this district with litigation in which this district has no interest. Rather, North Carolina has a greater interest in having this controversy decided before its courts. Finally, because this case is in its early stages, there is no potential for delay if the case were transferred to North Carolina.

*See Trout Unlimited*, 944 F. Supp. at 19.   Accordingly, RTI requests that any claims not dismissed be transferred to the U.S. District Court for the Eastern District of North Carolina.

## CONCLUSION

For the foregoing reasons, RTI respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety.   To the extent this Court dismisses fewer than all of the Counts, RTI respectfully requests that this Court strike Plaintiff's request for declaratory and injunctive relief and transfer the remainder of the case to the U.S. District Court for the Eastern District of North Carolina.

Respectfully submitted,

 /s/ Eric W. Bloom
Eric W. Bloom (Bar No. 417819)
Karen Sugden Manley (Bar No. 495029)
Nicole Y. Silver (Bar No. 472630)
Sarah E. Saucedo*
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C.  20006
Phone:  (202) 282-5743
Fax:  (202) 282-5100

Mark A. Ash*
Clifton L. Brinson (Bar No. 465178)
SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, LLP
2500 Wachovia Capitol Center (27601)
P.O. Box 2611
Raleigh, NC 27601-2611
Phone:  (919) 821-1220
Fax:  (919) 821-6800

*Counsel for Defendant RTI*

## CERTIFICATE OF SERVICE

The undersigned verifies that on July 10, 2008, she caused a true and correct copy of (i) Defendant RTI's Motion (1) To Dismiss Plaintiff's Complaint, (2) To Strike Plaintiff's Requests For Declaratory And Injunctive Relief, and (3) To Transfer The Remaining Claims, and (ii) Defendant RTI's Statement of Points and Authorities In Support of Its (1) Motion to Dismiss Plaintiff's Complaint, (2) Motion To Strike Plaintiff's Requests For Declaratory And Injunctive Relief, and (3) Motion To Transfer The Remaining Claims to be served, via the indicated method, upon the following:

**VIA the Electronic Case Filing system & U.S. Mail**
Paul Wolf
DC Bar 480285
PO Box 11244
Washington, D.C.  20008-1244
Tel: (202) 674-9653
paulwolf@icdc.com

*Counsel for Plaintiff*

**VIA the Electronic Case Filing system & U.S. Mail**
William S. D'Amico
David T. Blonder
CHADBOURNE & PARKE LLP
1200 New Hampshire Ave., NW
Washington, D.C.  20036
tel:  (202) 974-5616

*Counsel for Defendant UnityResources Group*

_Nicole Silver_

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Jalal Askander Antranick,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Case No. 1:08-cv-00595** |
| **Research Triangle Institute, International and** ) | |
| **Unity Resources Group, L.L.C.,** ) | |
| ) | **Honorable Paul L. Friedman** |
| ) | |
| **Defendants.** ) | |

## <u>AFFIDAVIT OF NICOLE SILVER</u>

I, Nicole Silver, hereby make this affidavit in support of Defendant Research Triangle Institute's (i) Motion to Dismiss Plaintiff's Complaint, (ii) Motion to Strike Plaintiff's Requests For Declaratory and Injunctive Relief, and (iii) Motion to Transfer any remaining claims to the United States District Court for the Eastern District of North Carolina, and state as follows:

1.    I am a member of the bar of this Court.

2.    I am an attorney at Winston & Strawn LLP in Washington, D.C. and counsel to Defendant RTI.

3.    On June 5, 2008, I called the Probate Division/Office of the Register of Wills of the Superior Court of the District of Columbia to confirm that Jalal Askander Antranick, the Plaintiff in this action, had not retained an authorized representative in the District of Columbia to act on his behalf in this jurisdiction.

4.    I spoke with a clerk in the court who, over the course of the call, conducted and completed a computer search for any possible entries relating to Jalal Askander Antranick and/or

Genevia Jalal Antranick.  The clerk advised me that she performed the search using "Antranick",

"Askander", "Jalal" and "Genevia," but that she found no records relating to the "Estate of

Genevia Jalal Antranick" or "Jalal Askander Antranick."

     I declare under penalty of perjury that the foregoing is true and correct.

Dated:  July 10, 2008

                                   Nicole Yanika Silver
                                   WINSTON & STRAWN LLP
                                   1700 K Street NW
                                   Washington, D.C.  20006
                                   (202) 282-5946

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **Jalal Askander Antranick,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. 1:08-cv-00595** |
| | ) | |
| **Research Triangle Institute, International and** | ) | |
| **Unity Resources Group, L.L.C.,** | ) | **Honorable Paul L. Friedman** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DECLARATION OF MODDASSIR MOHAMMAD ALI

I, Moddassir Mohammad Ali, hereby declare under 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that, based upon personal knowledge and information provided to me during my employment at RTI, the following is true and correct:

1. I am currently an employee of Research Triangle Institute ("RTI"). I was the Director of International Contracts and Procurement of RTI from April 2007 to April 2008, and starting in April 2008, I have assumed responsibilities as the Chief Procurement Officer of RTI.

2. RTI has its principal place of business and its headquarters in North Carolina. North Carolina is also RTI's state of incorporation. While RTI has 8 domestic offices and 8 additional international offices, more than 2200 of RTI's 2600 employees work at its North Carolina headquarters.

3. On June 27, 2005, RTI contracted with Unity Resources Group ("Unity") for the provision of security services (the "RTI/Unity Contract").

4. The RTI/Unity Contract was negotiated between personnel in RTI's North Carolina office and personnel in Unity's Dubai office. RTI's Washington D.C. office did not participate in the negotiation of the RTI/Unity Contract.

5. The RTI procurement office, which administers the RTI/Unity Contract, is located in RTI's North Carolina office.

6. Payments to Unity for work in connection with the RTI/Unity Contract are made through RTI's North Carolina office, not through RTI's Washington, D.C. office.

7. Formal contractually binding communication between RTI and Unity regarding the RTI/Unity Contract is conducted between RTI's North Carolina office and Unity's Dubai office.

8. While a number of RTI employees in North Carolina are responsible for administering the RTI/Unity Contract and for approval for payment on the RTI/Unity Contract, there is but a single RTI employee in Washington, D.C. who shares any responsibility in connection with the RTI/Unity Contract.

9. Article 12 of the RTI/Unity Contract provides that the contractual representatives for RTI and Unity are located in North Carolina and Dubai, United Arab Emirates, respectively.

10. Article 34 of the RTI/Unity Contract provides that North Carolina law governs.

Executed on this 7th day of July, 2008

Moddassir Mohammad Ali

# EXHIBIT A

174 N.C.App. 625, 621 S.E.2d 340 (Table), 2005 WL 3046449 (N.C.App.)
**Unpublished Disposition**
Briefs and Other Related Documents

NOTE: THIS OPINION WILL NOT BE PUBLISHED IN A PRINTED VOLUME. THE DISPOSITION WILL APPEAR IN A REPORTER TABLE.

Court of Appeals of North Carolina.
EMILY'S COOKIE MIX, INC., Plaintiff,
v.
CORA LIMITED PARTNERSHIP; J. Thomas Lindley, Sr., Mary J. Lindley; Kelly Jo Donovan; and Tonya Rae Hunter, Defendants.
No. COA04-1630.
Nov. 15, 2005.

*1 Appeal by plaintiff from order entered 7 September 2004 by Judge Robert H. Hobgood in Alamance County Superior Court. Heard in the Court of Appeals 17 August 2005.

Ridge & Holley, by David K. Holley, for plaintiff-appellant.

Lewis & Roberts, PLLC, by James A. Roberts, III and Geoffrey S. Proud, for defendants-appellees.

ELMORE, Judge.

Emily's Cookie Mix, Inc. (plaintiff) appeals an order of the trial court dismissing its complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Plaintiff is a North Carolina corporation with its principal offices in Alamance County, North Carolina. On 1 May 2002 plaintiff entered into an agreement with defendant CORA Limited Partnership (CORA) to lease shop premises in Burlington, North Carolina from defendant. The terms of the lease included an agreement that the plaintiff-tenant "shall not use the leased property for any purposes other than COOKIES use without the written consent of the Landlord." At this same time, defendants Kelly Jo Donovan (Donovan) and Tonya Rae Hunter (Hunter) owned and operated "The Beverage Gallery," which was located in the same business development as plaintiff's shop.

Plaintiff took possession of the premises and began operating its business under the name "Emily's Cookie Shoppe." After the start of operations, the parties agree that plaintiff began advertising the sale of coffee in its store window and that defendants Donovan and Hunter later requested the removal of said signs and advertisements. Defendants assert that these advertisements constituted a violation of plaintiff's lease agreement and were detrimental to the business efforts of defendants Donovan and Hunter. Plaintiff refused to remove the advertisements at which point defendant CORA also demanded that plaintiff cease selling and advertising the sale of beverages.

According to plaintiff, on 7 January 2003, defendant CORA filed suit against plaintiff for Summary Ejectment from the leased premises due to unauthorized use of the premises, and defendant CORA's claim was dismissed with prejudice. Plaintiff alleges that it requested discussions with defendant CORA regarding the possible renewal of the lease, but that defendant refused to consider any renewal. Plaintiff alleges that this refusal was a direct result of efforts by defendants Donovan and Hunter, who conspired with and induced defendant CORA to attempt to terminate the lease without consideration of renewal. On 22 August 2003 plaintiff filed the instant suit in the Superior Court of Alamance County. Defendants filed an Answer, Counterclaims, and a Motion to Dismiss all claims pursuant to Rule 12(b)(6). The trial court granted defendants' motion and dismissed plaintiff's claims. From this order entered 7 September 2004, plaintiff appeals.

Plaintiff asserted two separate claims in its complaint: tortious interference with contract, and unfair and deceptive trade practices in violation of N.C. Gen.Stat. § 75-1.1. With respect to the claim

of tortious interference, plaintiff argues that the trial court erred in dismissing the claim since plaintiff satisfied all of the substantive elements. Specifically, plaintiff contends that the complaint sufficiently stated the existence of a valid lease contract between itself and defendant CORA; alleged attempts by defendants Donovan and Hunter to terminate the lease contract; and that defendants' actions were malicious.

**\*2** In reviewing a dismissal of a complaint for failure to state a claim, this Court must determine as a matter of law whether the complaint alleges the substantive elements of a legally recognized claim. *See Sutton v. Duke,* 277 N.C. 94, 104-05, 176 S.E.2d 161, 167 (1970). The elements of tortious interference with contract are "1) the existence of a valid contract between plaintiff and a third party; (2) knowledge by defendant of the contract; (3) acts by defendant to intentionally induce the third party not to perform the contract; (4) defendant's acts were committed without justification; and (5) actual damage to the plaintiff." *Barker v.Kimberly-Clark Corp.,* 136 N.C.App. 455, 462, 524 S.E.2d 821, 826 (2000) (citing *Childress v. Abeles,* 240 N.C. 667, 674, 84 S.E.2d 176, 181-82 (1954)).

A motion to dismiss a claim of tortious interference is properly granted where the complaint shows the interference was justified or privileged. *See Peoples Security Life Ins. Co. v. Hooks,* 322 N.C. 216, 367 S.E.2d 647 (1988). Our Supreme Court has stated that competition in business may serve as a justification for interference in another's business relations. *Id.* at 221, 367 S.E.2d at 650. In *Peoples Security,* the plaintiff insurance company sued the defendant, a former district manager and employee, for hiring a number of employees away from the plaintiff's business to work with the defendant at a competing insurance company. *Id.* at 217-18, 367 S.E.2d at 648. The plaintiff argued that the defendant tortiously interfered with employment contracts between the plaintiff and its employees. *Id.* at 219, 367 S.E.2d at 649. The Court concluded that the defendant's actions constituted justifiable interference into the plaintiff's business relations where the plaintiff and defendant are competitors. *Id.* at 222, 367 S.E.2d at 650.

In the case at bar, plaintiff asserts that defendants Donovan and Hunter unlawfully and maliciously induced defendant CORA to refuse to renew the lease between CORA and plaintiff. However, in order for plaintiff to maintain the action, it must show that defendant's actions were unjustified. Here, the lease agreement between plaintiff and defendant CORA was drafted to prevent direct competition between the tenants of the business development. When plaintiff began selling coffee and advertising the sale of beverages it violated the lease and placed itself in direct competition with defendants Donovan and Hunter. With the existence of direct competition between the parties, Donovan and Hunter's actions in seeking to have plaintiff comply with its lease were justified, not malicious or unlawful.

Plaintiff argues nonetheless that its complaint sufficiently stated a claim for tortious interference because a motion to dismiss should not be granted unless the plaintiff is entitled to no relief under any set of facts which could support the claim. *See Embree Construction Group v. Rafcor, Inc.,* 330 N.C. 487, 490-91, 411 S.E.2d 916, 920 (1992). However, *Embree* requires that the complaint adequately allege the substantive elements of tortious interference with contract. *Id.* at 500, 411 S.E.2d at 925. Thus, plaintiff's claim of tortious interference must "allege facts demonstrating that defendants' actions were not prompted by 'legitimate business purposes.' " *Id.* at 500, 411 S.E.2d at 926. Plaintiff has failed to make such a showing.

**\*3** Plaintiff's second cause of action alleges unfair and deceptive trade practices based upon a civil conspiracy between defendant CORA and defendants Hunter and Donovan. This Court has defined a civil conspiracy as "[a]n agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way." *Colvard v. Francis,* 106 N.C.App. 277, 281, 416S.E.2d 579, 581 (internal quotation omitted), *disc. review denied,* 332 N.C. 146, 419 S.E.2d 570 (1992).

Plaintiff relies chiefly on *Pedwell v. First Union Natl. Bank,* 51 N.C.App. 236, 275 S.E.2d 565 (1981), to argue that 12(b)(6) dismissals should not be allowed where a plaintiff alleges a civil conspiracy to prevent the performance of a contract. In *Pedwell,* the plaintiffs alleged that the defendant bank made a contract to sell a condominium to the plaintiffs and that the bank and the defendant finance company conspired to deny the plaintiffs a loan in order to prevent the plaintiffs

from performing their contractual obligations. *Id.* at 237-38, 275 S.E.2d at 566-67. This Court reversed the dismissal of the plaintiffs' claim since the defendants' alleged actions, if true, would have constituted an unlawful act for which they would have been liable to the plaintiffs. *Id.* at 238, 275 S.E.2d at 567.

The facts in the instant dispute are distinguishable from *Pedwell.* The actions of defendants Donovan and Hunter, even if true, cannot be an "unfair act affecting commerce," like the allegations in *Pedwell.* Unlike the legitimate business reasons that prompted the actions by defendants Donovan and Hunter in the instant case, *Pedwell* involved an executory contract between the parties and the defendant bank's specific legal duty not to act to prevent the plaintiffs from performing that contract. *See id.* at 237-38, 275 S.E.2d at 556-57.

Furthermore, claims of civil conspiracy must meet a factual threshold. A plaintiff's complaint cannot simply speculate about wrong doings without stating actual facts about the alleged conspiracy. *See Fox v. Wilson,* 85 N.C.App. 292, 301, 354 S.E.2d 737, 743 (1987) (plaintiff must allege wrongful overt acts in order to state claim for recovery based upon civil conspiracy); *see also Shope v. Boyer,* 268 N.C. 401, 405, 150 S.E.2d 771, 774 (1966) (complaint for civil conspiracy must allege facts, rather than conclusions, that conspiracy existed). Plaintiff here did not allege the existence of any specific wrongful acts by defendants pursuant to a civil conspiracy. In short, the complaint was lacking of any facts regarding defendants' alleged unlawful conduct.

Finally, plaintiff argues that there is no precise definition of unfair and deceptive acts and that allegations of "malicious interference with contract and conspiracy to damage its business ... are sufficient to survive a motion to dismiss." We determine that plaintiff is not entitled to such a favorable presumption. The fact that plaintiff has included claims of tortious interference and conspiracy in its complaint does not make such allegations indisputable facts beyond this Court's review. Whether or not such claims are founded is a legal conclusion that this Court reviews without a presumption of truth. *See Miller v. Rose,* 138 N.C.App. 582, 592, 532 S.E.2d 228, 235 (2000) ("In ruling on a Rule 12(b)(6) motion to dismiss, the trial court regards all factual allegations of the complaint as true.... Legal conclusions, however, are not entitled to a presumption of truth.")(internal citation omitted). Therefore, for the reasons discussed *supra,* we affirm the order of the trial court.

*4 Affirmed.

Judges CALABRIA and GEER concur.

Report per Rule 30(e).

N.C.App.,2005.
Emily's Cookie Mix, Inc. v. Cora Ltd. Partnership
174 N.C.App. 625, 621 S.E.2d 340 (Table), 2005 WL 3046449 (N.C.App.)
Unpublished Disposition

Briefs and Other Related Documents (Back to top)

• 2005 WL 835736 (Appellate Brief) Defendants-Appellees' Brief (Mar. 22, 2005)
END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.



# EXHIBIT B

Not Reported in F.Supp.2d, 2000 WL 33682678 (E.D.N.C.)

<u>Motions, Pleadings and Filings</u>

Only the Westlaw citation is currently available.

United States District Court, E.D. North Carolina.

Theresa HAYNES, Plaintiff,

v.

THE SENTRY CORPORATION, Reginald Wright, and Joseph Fescina, Defendants.

No. 5:00CV43-BR(2).

April 4, 2000.

*ORDER*

<u>BRITT</u>, Senior J.

 **\*1** This matter is before the court on the motion of defendants for partial dismissal pursuant to <u>Fed.R.Civ.P. 12(b)(5) and (6)</u>. Plaintiff filed a response to the motion and defendants have filed a reply. The motion is ripe for decision.

 Plaintiff filed the instant action on 22 December 1999 in the General Court of Justice, Superior Court Division for Cumberland County, North Carolina. Her complaint alleges the following causes of action against all three defendants: (1) sexual discrimination and retaliation in violation of Title VII; (2) wrongful termination in violation of the Public Policy of North Carolina; (3) negligent supervision; (4) intentional infliction of emotional distress; and, (5) assault and battery. On 21 January 2000, defendants removed the action to this court on the basis of federal question jurisdiction. Defendant Wright has moved to dismiss all claims against him pursuant to <u>Fed.R.Civ.P. 12(b)(5)</u> for failure of service. Defendants Wright and Fescina have moved to dismiss all claims against them pursuant to <u>Fed.R.Civ.P.12(b)(6)</u> on the ground that plaintiff has failed to state a claim upon which relief can be granted. Defendant Sentry Corporation has moved to dismiss plaintiff's claims for intentional infliction of emotional distress and assault and battery for failure to state a claim upon which relief can be granted. The court will address each motion in turn.

 Wright claims that he has never been served with the summons and complaint in this matter. In her response, plaintiff recounts her attempt to serve Wright and attaches what appear to be receipts for certified mail delivery addressed to him. However, there is no contention by plaintiff nor any indication in her filings that Wright has ever been served. Further, plaintiff has not requested an extension of time within which to achieve service on Wright. Therefore, all claims against Wright will be dismissed pursuant to <u>Fed.R.Civ.P. 12(b)(5)</u>.

 Defendants Wright and Fescina contend that the claims pursuant to Title VII, for violation of North Carolina Public Policy and for negligent supervision against them should be dismissed because they were not plaintiff's employer. Plaintiff concedes that these individuals are not subject to liability for these claims. (Pl.'s Resp. to Defs.' Mot. for Partial Dismissal at 3.) <u>FN1</u> For the reasons stated in defendants' memorandum in support of their motion for partial dismissal, these claims will be dismissed.

   <u>FN1.</u> The pages in plaintiff's response to defendants' motion for partial dismissal were not numbered by plaintiff.

 In order to state a claim for the intentional infliction of emotional distress, a plaintiff must allege that a defendant engaged in extreme and outrageous conduct which was intended to cause and did cause plaintiff severe emotional distress. *Bryant v. Thalhimer Bros., Inc.,* <u>113 N.C.App. 1, 6-7, 437 S.E.2d 519, 522 (1993)</u>, *appeal dismissed, review denied by,* <u>336 N.C. 71, 445 S.E.2d 29 (1994)</u>. In

the alternative, plaintiff may show that defendant was recklessly indifferent to the likelihood that its actions would cause severe emotional distress. *Dickens v. Puryear,* 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). Conduct is considered extreme and outrageous when it rises to a level that is "utterly intolerable in a civilized community." *Daniel v. Carolina Sunrock Corp.,* 110 N.C.App. 376, 383, 430 S.E.2d 306, 310, *rev'd on other grounds,* 335 N.C. 233, 436 S.E.2d 835 (1993). Assuming, but not deciding, that the allegations of plaintiff's complaint state conduct by defendants which would be intolerable in a civilized community, the court will move on to address the sufficiency of plaintiff's allegations that she did in fact suffer severe emotional distress. She must allege that defendants' conduct caused her to suffer a "severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Holloway v. Wachovia Bank & Trust Co.,* 339 N.C. 338, 355, 452 S.E.2d 233, 243 (1994). Paragraphs 42 and 43 of plaintiff's complaint state the she did "suffer severe emotional distress" and "sustaine[ed] other damages." However, she did not set forth the specifics of that distress or damages as required to properly state a cause of action for the intentional infliction of emotional distress. This claims will be dismissed as to all defendants.

*\*2* Plaintiff's final claim is for assault and battery. In order to state a claim for assault, a plaintiff must establish the five elements of that tort: "intent, offer of injury, reasonable apprehension, apparent ability and imminent threat of injury." *Hawkins v. Hawkins,* 101 N.C.App. 529, 533, 400 S.E.2d 472, 475 (1991) *aff'd,* 331 N.C. 743, 417 S.E.2d 447 (1992). Words alone, without more, are not sufficient to establish a claim for assault. *Dickens v. Brewer,* 320 N.C. 437, 446, 276 S.E.2d 325, 331 (1981). In order to make out a claim for battery, a plaintiff must establish "intent, harmful or offensive contact, causation and lack of privilege." *Hawkins,* at 533, 400 S.E.2d at 475.

With respect to defendant Wright, plaintiff has alleged that he made sexually inappropriate comments toward her. She has not alleged offer of injury, reasonable apprehension, apparent ability or imminent threat of injury. Neither has she alleged that Wright touched her anywhere on her person or any fact which would satisfy the elements of battery. With respect to defendant Fescina, plaintiff has alleged that he touched her on more that one occasion. However, she has failed to allege facts sufficient to establish any of the other elements of assault or battery. Because plaintiff has not sufficiently alleged facts to state a claim for assault and battery against the individual defendants, there is no basis for imputing liability via the doctrine of *respondeat superior* to the corporate defendant.

For the reasons stated above, defendants' motion to dismiss is ALLOWED. All of plaintiff's claims against defendants Wright and Fescina are DISMISSED and plaintiff's claims for intentional infliction of emotional distress and for assault and battery are DISMISSED. Plaintiff's claims pursuant to Title VII, for wrongful termination in violation of the public policy of North Carolina and for negligent supervision against Sentry remain.

E.D.N.C.,2000.
Haynes v. Sentry Corp.
Not Reported in F.Supp.2d, 2000 WL 33682678 (E.D.N.C.)

Motions, Pleadings and Filings (Back to top)

• 5:00cv00043 (Docket) (Jan. 21, 2000)
END OF DOCUMENT



(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| Jalal Askander Antranick,                 ) | |
|                                           ) | |
|          Plaintiff,                       ) | |
|                                           ) | |
|          v.                               )     Civil Case No. 1:08-cv-00595 |
|                                           ) | |
| Research Triangle Institute, International and ) | |
| Unity Resources Group, L.L.C.,            )     Honorable Paul L. Friedman |
|                                           ) | |
|          Defendants.                      ) | |
| _____ ) | |

This matter coming to be heard on Defendant RTI's Motion to Dismiss,

IT IS HEREBY ORDERED that Plaintiff's Complaint be DISMISSED in its entirety, with prejudice.

Dated: _____, 2008         _____

                                      **Honorable Paul L. Friedman**