# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

_____
                                 )

**Jalal Askander**                      )
                                 )

      **Plaintiff,**                 )
                                 )

          **v.**                     )
                                 )

**Research Triangle Institute, Int.**    )      **Civil Action No. 08-595 (PLF)**
                                 )

      **and**                   )
                                 )

**Unity Resources Group,**         )
                                 )

      **Defendants.**             )
_____)

## PLAINTIFF'S OPPOSITION TO DEFENDANT
## <u>UNITY RESOURCES GROUP'S MOTION TO DISMISS</u>

Paul Wolf
P.O. Box 11244
Washington, D.C. 20008-1244
Phone: (202) 674-9653
Fax: (202) 364-6188

*Attorney for Jalal Askander*

August 4, 2008

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………….    iii

STATEMENT OF FACTS ……………………………………………    1

SUMMARY OF ARGUMENT …………………………....................................    1

STANDARD OF REVIEW …………………………………………………..    2

ARGUMENT ……………………………………………………………………    2

I.    THE COURT CAN EXERCISE GENERAL PERSONAL
      JURISDICTION OVER UNITY RESOURCES GROUP
      BECAUSE UNITY IS DOING BUSINESS IN THE DISTRICT. ……...    2

      A.    Unity Has a Continuing Presence in Washington, D.C.
            Directed at Advancing its Corporate Objectives. ………………..    3

      B.    Unity Has Been Properly Served in the District of Columbia. …..    5

II.   THE COURT CAN EXERCISE SPECIFIC PERSONAL
      JURISDICTION OVER UNITY RESOURCES GROUP BECAUSE
      THE DEATH OF MS. ANTRANICK RELATES TO UNITY'S
      ACTIVITIES IN THE DISTRICT.. …………………………………...    7

      A.    RTI's Acts in Furtherance of a Conspiracy Count as Contacts
            with the Forum for Unity Resources Group.. ...............................    12

III.  DUE PROCESS REQUIRES THE EXERCISE OF PERSONAL
      JURISDICTION IN A U.S. COURT. …………………………….......    14

IV.   THE DEFENDANT HAS WAIVED THE OBJECTION OF FORUM
      NON CONVENIENS BY NOT RAISING IT IN HIS FIRST MOTION
      TO DISMISS. ..........................................................................................    16

CONCLUSION …………………………………………………………....    18

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Aiken v. Lustine Chevrolet, Inc.*,
    392 F.Supp. 883 (D.D.C. 1975) ………………………………………    9

*Burger King v. Rudzewicz*,
    471 U.S. 462 (1985) …………………………………………………….    7, 15

*Copeland-Jackson v. Oslin*
    2008 WL 2211938 (D.D.C. 2008) ……………………………………    7

*Crane v. New York Zoological Society*,
    894 F.2d 454 (D.C.Cir. 1990) …………………………………………    2

*El-Fadl v. Central Bank of Jordan*,
    75 F.3d 668 (D.C. Cir. 1996) …………………………………………    3

*FC Inv. Group LC v. IFX Markets, Ltd.*,
    479 F.Supp.2d 30 (D.D.C.,2007) ……………………………………..    13

*Gatewood v. Fiat, S. p. A.*,
    617 F.2d 820 (D.C. Cir. 1980) ………………………………………..    9

\* *Gorman v. Ameritrade Holding Corp.*,
    293 F.3d 506 (D.C. Cir. 2002) ………………………………………..    5-6

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ................................................................    7-8

*Heller v. Nicholas Applegate Capital Management, L.L.C.*,
    498 F.Supp.2d 100 (D.D.C. 2007) ……………………………………    12

\* *Helmer v. Doletskaya*,
    290 F.Supp.2d 61 (D.D.C. 2003) ……………………………………..    9

*In re Air Crash Disaster near New Orleans*,
    821 F.2d 1147 (5th Cir. 1987) ..................................................    16

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,
    256 F.3d 548 (7th Cir. 2001) ………………………………………...    16

*Lony v. E.I. Du Pont de Nemours & Co.*,
    935 F.2d 604 (3rd Cir. 1991) ..................................................    16-17

*Material Supply Intern., Inc. v. Sunmatch Industrial Co., Ltd.*,
    62 F.Supp.2d 13 (D.D.C. 1999) ……………………………………………… 11

* *McGee v. Int'l Life Ins. Co.*,
    355 U.S. 220 (1957) ................................................................................. 9

*Meyers v. Smith*,
    460 F.Supp. 621 (D.D.C. 1978) ………………………………………… 3

* *Mwani v. bin Laden*,
    417 F.3d 1 (D.C. Cir. 2005) ……………………………………………….. 15-16

*Naartex Consulting Corp. v. Watt*,
    722 F.2d 779 (D.C. Cir. 1983) ………………………………………….. 11

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*,
    484 U.S. 97 (1987) ................................................................................. 14

* *Overseas Partners, Inc. v. Progen Musavirli*,
    15 F.Supp.2d 47 (D.D.C. 1998) ………………………………………… 12

* *Ramamurti v. Rolls-Royce Ltd.*,
    454 F.Supp. 407 (D.D.C. 1978), *affirmed* 612 F.2d 587 (D.C.Cir.1980)… 3, 5

*Richards v. Duke University*,
    480 F.Supp.2d 222 (D.D.C. 2007) ……………………………………… 11, 13

* *Ross v. Product Development Corp.*,
    736 F.Supp. 285 (D.D.C. 1989) ………………………………………… 2-3

*Roz Trading Ltd v. Zeromax Group, Inc.*,
    517 F.Supp.2d 377 (D.D.C. 2007) ............................................................ 3

* *State of Md. v. Eastern Air Lines*,
    81 F.Supp. 345 (D.D.C. 1948) ………………………………………… 4

*Youming Jin v. Ministry of State Sec.*,
    335 F.Supp.2d 72 (D.D.C. 2004) ……………………………………… 13

**STATE CASES**

*Cohane v. Arpeja-California, Inc.*,
    385 A.2d 153 (D.C.), *cert. denied*, 439 U.S. 980, (1978) .......................... 11

*District Grocery Stores, Inc. v. Brunswick Quick Freeze Co.*,
      106 A.2d 134 (D.C. 1954) …………………………………………….    5

*Shoppers Food Warehouse v. Moreno*,
      746 A.2d 320 (D.C. 2000) …………………...............................    7-8

## STATE STATUTES

D.C. Code § 13-334 ......................................................................    2-6

D.C. Code § 13-423 ......................................................................    7-11

D.C.Code § 29-101.99(b) ...........................................................    6

D.C.Code § 29-101.99(e)(2) .......................................................    6

## FEDERAL STATUTES

Federal Acquisition Regulations System, 48 C.F.R. 1.000 <u>et seq</u>. ........................    10

## OTHER AUTHORITIES

Rule 4(k)(2) of the Federal Rules of Civil Procedure. …………………………..    2, 14-16

Fed. R. Civ. P. 4(k) advisory committee's notes to 1993 amendments. ………....    14

Rules 12(g) and (h) of the Federal Rules of Civil Procedure ...............................    16-17

## STATEMENT OF FACTS

Genevia Jalal Antranick, a passenger in a car in downtown Baghdad, was brutally murdered by employees of Defendant Unity Resources Group[1] (hereinafter "URG" or "Unity") last year, as was the driver of the vehicle.  Her father and sole legal heir, Jalal Askander, seeks to hold Unity, and the USAID contractor for which it was working, the Research Triangle Institute, International ("hereinafter RTI"), liable for the incident in D.C. District Court.  He alleges aiding and abetting violations of international law under the Alien Tort Statute ("ATS") and Torture Victim Protection Act ("TVPA"), and related state tort claims arising from the incident.  The Defendant seeks to dismiss the case for lack of personal jurisdiction.[2]

The driver of the vehicle, Marani Awanis Manook, was also killed in the hail of machine gun fire. Ms. Manook's estate brought suit on February 8th of this year, making similar claims to those of Mr. Askander. (1:08-cv-00096 (PLF)  Because the two cases involve the same facts and the same defendants, joinder and a consolidated briefing schedule are in order.

## SUMMARY OF ARGUMENT

General personal jurisdiction can be exercised over Defendant Unity Resources Group because it has a continuing corporate presence in the District directed at advancing the Defendant's interests, and because it holds itself out to the public as doing business here.  This is not only alleged in the Complaint, but also borne out in declarations made by Defendant's Washington, D.C. agent, David Rolfes.

---

[1] In this lawsuit, Unity refers to itself as "Unity Resources Group, Pte. Ltd., sued herein as Unity Resources Group, LLC" without explaining what that means.

[2] Although it appears to be a typographical error, the caption of Defendant's motion refers to the "Plaintiff's First Amended Complaint."  Plaintff has yet to amend his Complaint.

The Court may also exercise specific personal jurisdiction over the Defendant because the Defendant's activities in the District are related to the death of Plaintiff's daughter. They are related and have a substantial relationship with the District because Defendant's contract with RTI is a subcontract under a USAID contract, the terms of which are controlled by USAID.  In determing the contacts required to exercise specific jurisdiction, acts and omissions of co-defendant Research Triangle Institute may also be considered, because the Plaintiff has alleged a civil conspiracy.

Finally, the efforts of the Defendant to insulate itself from the jurisdicion of this Court cannot serve to insulate it from the jurisdiction of all U.S. courts.  Under Rule 4(k)(2) of the Federal Rules, since the Defendant has purposefully directed its activities towards the United States, it is subject to the jurisdiction of our courts.  To avoid the application of Rule 4(k)(2), the burden shifts to the Defendant waive personal jurisdiction in another state where the suit could be brought.

## STANDARD OF REVIEW

A plaintiff need only present a prima facie case that personal jurisdiction exists in order to survive a motion to dismiss for lack of personal jurisdiction.  Crane v. New York Zoological Society, 894 F.2d 454, 456 (D.C.Cir.1990).

## ARGUMENT

### I.    The Court Can Exercise General Personal Jurisdiction Over Unity Resources Group Because Unity is Doing Business in the District.

The D.C. District Court can obtain jurisdiction over a foreign corporation "doing business" in the District pursuant to D.C. Code § 13-334.  Ross v. Product Development Corp., 736 F.Supp. 285, 289 (D.D.C. 1989)  This law confers jurisdiction over the

defendant corporation for all purposes, not only those arising from the defendant's contacts with the District. Id. at 290. The term "doing business," within § 13-334 is defined as "any continuing corporate presence in the forum state directed at advancing the corporation's objectives." Ramamurti v. Rolls-Royce Ltd., 454 F.Supp. 407, 409 (D.D.C. 1978), affirmed 612 F.2d 587 (D.C.Cir.1980); El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 675 (D.C. Cir. 1996). Although the maintenance of an office in the District is an indication that a corporation is doing business here, it is not a requirement. Ross v. Product Development Corp., 736 F.Supp. 285, 290 (D.D.C. 1989); D.C.Code Ann. § 13-334 (provision made for service where defendant has no place of business in District). Personal jurisdiction is determined as of the time of the action's commencement. Roz Trading Ltd v. Zeromax Group, Inc., 517 F.Supp.2d 377, 384 (D.D.C. 2007)

### A.    Unity has a continuing presence in Washington, D.C. directed at advancing its corporate objectives.

In February of 2007, Defendant Unity Resources Group began leasing an office in the District. Plaintiff's daughter was killed on October 9 of that year. Some time after the Estate of Marani Manook filed the related lawsuit on February 8th, 2008, Unity ended this lease, and now only rents the space by the hour.[3] See Declaration of David Rolfes, Docket Entry # 26-4 in 08-cv-00096 (PLF) at ¶ 6. (Declaration in the Manook case)

---

[3] There is a suggestion that Unity may have ended the lease in an attempt to avoid this lawsuit. Unity was put on notice of this suit in November of 2007, by way of a letter from the undersigned, who has also been in telephone contact with Defendant's counsel in Dubai. Just as it is now illegal to destroy evidence once a letter is sent notifying the party that litigation is being contemplated, the date of the demand letter should be used, rather than the date the lawsuit was filed, to determine the relevance of the office. See Meyers v. Smith, 460 F.Supp. 621, 623-624 (D.D.C. 1978) (court would not create rule completely precluding consideration of contacts with jurisdiction occurring slightly outside period of limitations in the process of determining whether the court could assert jurisdiction over a nonresident defendant) Alternatively, the Court could use the date the Manook case was filed to determine whether Unity was "doing business" with its office in the District. If the court has jurisdiction to hear the Manook case but not this one, the result could be that the cases are tried separately in different courts. This could create different results in different courts, based on the same facts.

Unity Resources Group still has a continuous presence here directed at advancing Unity's objectives, however. <u>See</u> Declaration of David Rolfes, Docket # 13-4 at ¶ 5. Mr. Rolfes still works as a sales agent who solicits business within the District of Columbia and elsewhere, and still spends some of his time performing client relations and client support activities for Unity. <u>Id</u>. Mr. Rolfes says he is an independent contractor. However, he does not name his business and appears to do business under Unity Resources Group's name.

Although Unity no longer operates the office on a full time basis, it continues to hold itself out to the public as operating from this address. This is evidenced by the fact that Unity still lists this location as its U.S. address, and phone calls to this address are forwarded to Mr. Rolfe's cell phone.[4] <u>Id</u>. at ¶ 6. Unity also advertises this as its address on the internet. See Def's Reply Memorandum in <u>Manook</u> case, Docket Entry # 26 in 08-cv-00096 (PLF) at 8 n. 6. ("Unity's office could have been uncovered at any time, merely by performing a basic internet search.")

When a corporation maintains an office and otherwise holds itself out to the public generally as being present in the District of Columbia for the purpose of doing business, it is "doing business" within the District. <u>State of Md. v. Eastern Air Lines</u>, 81 F.Supp. 345 (D.D.C. 1948) Mr. Rolfes' activities in soliciting new business within the District, combined with his support of existing clients, advance Unity's corporate objectives. <u>See</u> Rolfes Declaration, Docket # 13-4 at ¶ 5. Therefore, regardless of Mr. Rolfes' personal arrangements with Unity, Unity is "doing business" in the District, because through him, it holds itself out to the public as doing business here, and this

---

[4] In ¶ 6, Mr. Rolfes states that "Unity still maintains the office space address ..." The public portrayal of this office as an office of Unity is sufficient to show that Unity is doing business here, regardless of whether Unity has a Tax ID Number or how Mr. Rolfes is paid.

continuous presence advances Unity's corporate objectives. Ramamurti, 454 F.Supp. at 409.

### B.    Unity Has Been Properly Served in the District of Columbia.

The Defendant argues that Mr. Rolfes is not an agent, but an independent contractor. Therefore, his activities in the District do not subject the Defendant to the Court's jurisdiction. The Defendant then argues that because Mr. Rolfes was not physically served in the District, the Court cannot exercise general jurisdiction. Def's Motion to Dismiss at 6-8. Both of these propositions are contradicted by Gorman v. Ameritrade Holding Corp., 293 F.3d 506 (D.C. Cir. 2002). In Gorman, the court noted that the nature of the relationship is immaterial, as long as the agent or contractor is conducting the defendant's business:

> Gorman's best case is District Grocery Stores, Inc. v. Brunswick Quick Freeze Co., 106 A.2d 134 (D.C.1954), where, in the course of holding that service had been validly made, the Court of Appeals said that "we need not here be concerned with the precise character of the relationship between" the company and the person upon whom process was served. 106 A.2d at 135. Indeed, the court declared that "[w]hether, then, the person served with process may be regarded as the agent of the defendant corporation is, in our view, immaterial." Id. (internal alterations and quotation marks omitted). But the scope of the recipient's agency was immaterial in District Grocery Stores because it was clear that he "was, at least, conducting the business which ... the defendant was doing in the District of Columbia." Id. (internal quotation marks omitted). And as the court emphasized, the District's "doing business" statute expressly authorizes service upon a foreign corporation's "agent ... or person conducting its business." Id. (quoting D.C.Code § 13-103, the predecessor of the current § 13-334); see supra note 1.

Gorman v. Ameritrade, 293 F.3d at 515. The Defendant cites the Gorman case for the erroneous proposition that § 13-334 requires "physical" service on a defendant corporation within the District. Def's Motion to Dismiss at 6. The D.C. Circuit in Gorman strongly suggested that service on the Mayor would suffice:

> Finally, Gorman urges that it would be unfair if a foreign corporation, lawfully subject to the jurisdiction of the District of Columbia because it does business here, could evade that jurisdiction by keeping its agents out of the District and hence beyond the range of effective service of process. If such a loophole does exist, the legislature can, of course, remove it by amending § 13-334 to provide an alternative method of service. But we are not at all certain that legislative action is required. Section 29-101.99(e)(2) of the D.C.Code, cited by neither party, provides that "[w]henever any foreign corporation does not have an agent for service of process ... the Mayor shall be the agent for service of process for the corporation." Although on its face this section appears to close the loophole identified by Gorman, we need not determine whether service upon the Mayor would have been sufficient to bring Ameritrade within the jurisdiction of the district court because Gorman never attempted to make such service.

Gorman v. Ameritrade, 293 F.3d at 516 (footnote omitted). Defendant suggests that the Mayor was not served, but proof has been offered that the D.C. Department of Consumer and Regulatory Affairs (DCRA) accepted the Summons and Complaint, and charged Plaintiff's process server a $15.00 fee for "Service of Process" for "Jalal Askander Antranick v. Research Triangle Institute, International."[5]    See Return of Service/Affidavit, Docket Entry # 9.

The Defendant contends that the service of process provision § 29-101.99(e)(2) does not apply because Unity had no obligation to register its business under § 29-101.99(b). Defs Motion to Dismiss at 7. Section (b) states that the appointment of an agent for the solicitation of business outside the District is does not entail a registration obligation. However, Mr. Rolfes not only solicits business, but also performs client support and client relations activities. Declaration of David Rolfes at ¶ 5. In addition, there is nothing in the statute linking these two provisions together. On its face, § (e)(2) only provides a method for the Mayor to serve process on a corporation in the District that has no registered agent. It makes no mention of whether the Mayor may serve a

---

[5] D.C.Code § 29-101.99(e)(2) provides that "[i]n the event of service to the Mayor, the Mayor shall immediately cause one of the copies to be forwarded by certified or registered mail, addressed to the foreign corporation at its principal office or at its last known address."

corporation with no registration obligation, and in this case, the Mayor charged Plaintiff $15.00 to do so. <u>See</u> Return of Service/Affidavit, Docket Entry # 9. Finally, § (e)(3) provides that "[n]othing in this subsection shall limit or affect the right to serve any process or notice of demand required or permitted by law to be served on a foreign corporation in any other matter now or hereafter permitted by law." This precludes Defendant's construction of § (b) as a limitation to § (e)(2).

II.   **The Court Can Exercise Specific Personal Jurisdiction Over Unity Resources Group Because the Death of Ms. Antranick Relates to Unity's Activities in the District.**

To assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, the defendant must have 'purposefully directed' his activities at residents of the forum," <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 472 (1985) (quoting <u>Keeton v. Hustler Magazine</u>, Inc., 465 U.S. 770 (1984)), "and the litigation results from alleged injuries that 'arise out of or relate to' those activities," <u>Id</u>. (quoting <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 (1984)).

Likewise, under the "long arm" statute for the District of Columbia, § 13-423 of the D.C. Code, for the Court to have personal jurisdiction over a non-resident defendant, the defendant must have purposefully availed itself of the privilege of conducting activities within the District of Columbia, thus invoking the benefits and protections of its laws. <u>Copeland-Jackson v. Oslin</u>, 2008 WL 2211938 (D.D.C. 2008). Under D.C. law, the nexus requirement of the D.C. long arm statute is satisfied, and specific jurisdiction may be exercised, if a claim either arises out of or relates to the non-resident defendant's business activity. <u>Shoppers Food Warehouse v. Moreno</u>, 746 A.2d 320, 332 (D.C. 2000) (<u>citing</u> <u>Burger King</u>, 471 U.S. at 472).

The long arm statute provides jurisdiction for both torts, and for claims arising or related to the defendant's transaction of business in the District. The Defendant argues that only §§ 13-423(a)(3) & (4) of the long arm statute apply, since these provide jurisdiction for torts, and that the "transacting business" provision of the long arm statute, § 13-423(a)(1), does not apply, because a tort cannot "arise" from a contract. Def's Motion to Dismiss at 20-21. Pointedly, the <u>Keeton</u>, <u>Helicopteros Nacionales</u>, and <u>Shoppers Food Warehouse</u> cases all use the language "arises out of or relates to." The murder of Ms. Antranick clearly "relates to" not only the contract, whereever it was made, but also Mr. Rolfes' business dealings with RTI in his customer support role, as well as the RTI-USAID contract. Although the long arm statute only uses the word "arising", the court should interpret this to mean "arising out of or relates to," following <u>Shoppers Food Warehouse v. Moreno</u>, 746 A.2d at 332.

The words "relate to" do not mean proximately caused. The Supreme Court has yet to clarify whether contacts that are "related to" a cause of action, but are not so closely related that the action "arises out of" them, are sufficient for specific personal jurisdiction. In a dissenting opinion in <u>Helicopteros Nacionales</u>, Justice Brennan argued that if a defendant's forum contacts were related to, although not giving rise to, the cause of action, the case might be treated as one asserting specific jurisdiction. <u>Helicopteros Nacionales</u> 466 U.S. at 421. The majority of the Supreme Court, however, declined to consider it. <u>Id</u>. at 415 n. 10. Therefore, lower Federal courts have had to develop their own definitions of "related to" for purposes of specific personal jurisdiction.

The District of Columbia long-arm statute does not require that the contacts required for jurisdiction, such as regular solicitation of business or a specific course of

contact, have a direct relationship to the act, or failure to act, which caused the Plaintiff's injury.  Aiken v. Lustine Chevrolet, Inc., 392 F.Supp. 883, 885 (D.D.C. 1975)  For example, the court would have jurisdiction for a tort committed outside the District, but which has effects within the District, under § 13-423(a)(4), despite the fact that the tort would not be a contact for jurisdictional purposes.  See Gatewood v. Fiat, S. p. A., 617 F.2d 820 (D.C. Cir. 1980).  Under the "transacting business" provision of § 13-423(a)(1), there is a requirement that the cause of action have some connection to the forum.  The effect need not be the claimed injury, however.  See Helmer v. Doletskaya, 290 F.Supp.2d 61, 67 (D.D.C. 2003) ("Transacting business" provision of the District of Columbia long-arm statute permits exercise of personal jurisdiction when non-resident defendant's contractual activities cause repercussions in the District.)  It is sufficient if a suit is based on a contract that has a "substantial connection" with the District.  McGee v. Int'l Life Ins. Co., 355 U.S. 220, 222 (1957).

The URG-RTI contract clearly has a "substantial connection" to the forum because it is a subcontract under a USAID contract.  Provisions of RTI's contract with USAID "flow down" to its subcontractors and are required by USAID to be present in any subcontract.[6]  These should be set forth in Section J of RTI's contract with USAID, called its "Subcontracting Plan," which is incorporated by reference as a material part of RTI's contract with USAID.  See Exhibit A, Affidavit of Paul Wolf.  The Subcontracting Plan gives USAID control over the contractual terms to be used between RTI and any subcontractors, including Unity Resources Group.  As a subcontractor to a Federal government contract, Unity is also subject to the voluminous Federal Acquisition Regulations System, 48 C.F.R. 1.000 et. seq. (FARS), which contains provisions for

---

[6] The expression "flow down" is not a legal term of art, but is used in the Federal contractor industry.

subcontractors to assert claims against the government through the prime contractor (so-called "pass through" claims).

A statutory example of a "flow down" provision of the FARS regulations can be found in 48 C.F.R. 752.228-7, which requires prime contractors to assure that their subcontractors have Defense Base Act (DBA) insurance coverage.  Subsection (c) of this regulation states that "[t]he contractor further agrees to insert in all subcontracts hereunder to which the DBA is applicable, a clause similar to this clause, including this sentence, imposing on all subcontractors a like requirement to provide overseas workmen's compensation insurance coverage and obtain DBA coverage under the USAID requirements contract."  Because USAID controls many of the terms of the RTI-URG contract, there is a "substantial connection" to USAID, and hence to Washington, D.C.  Since Plaintiff does not have RTI's Subcontracting Plan, he cannot be any more specific.

While the Defendant avers that the RTI-URG contract was negotiated and executed entirely outside the District, at the time this lawsuit was filed, Unity was also transacting other business in the District through its agent David Rolfes.  Mr. Rolfes' other activities count as contacts whether they are related to this case or not.  In his affidavit, Mr. Rolfes admits he spends a portion of his time on client relations and client support activities, but he does not say whether this time was spent supporting RTI.  Declaration of David Rolfes at ¶ 5.  It is a fair inference that RTI is Unity's only major client in the U.S., since Mr. Rolfes has only generated $200,000 of new business thus far, and it is also a fair inference that Mr. Rolfes functions as RTI's domestic contact with Unity.  While the Plaintiff may not be able to show that the murder of Ms. Antranick

"arose" from some particular act of Mr. Rolfes, the incident was still "related" and has a "substantial connection" to his activities in supporting RTI, to his solicitation of new business in and from the District generally, and to USAID.

Much of Defendant's brief is spent going through the contacts alleged in the complaint. For each, the Defendant cites an example of how one instance of that type of contact, by itself, was insufficient to establish minimum contacts. See Def's Motion to Dismiss at 8-18. It should be clear that these contacts must be considered in the aggregate. In addition, contacts with the Federal government may be considered in this case, because the "government contacts exception" does not apply to contacts made with the government for commercial purposes. See Richards v. Duke University, 480 F.Supp.2d 222, 230 (D.C. 2007) (government contacts exception to the transacting business provision of D.C. long-arm statute allows for petitioning the government and for the redress of grievances); Naartex Consulting Corp. v. Watt, 722 F.2d 779, 787 (D.C.Cir.1983). Solicitation of U.S. government business is of an entirely different character than other kinds of contacts with the government. In the latter case, an analogy can be made to making an appearance in court to deny personal jurisdiction - this does not count as a contact.

The District of Columbia long arm statute, § 13-423, provides for jurisdiction to the fullest extent permissible under the Due Process Clause. Material Supply Intern., Inc. v. Sunmatch Industrial Co., Ltd., 62 F.Supp.2d 13, 19 (D.D.C. 1999); Cohane v. Arpeja-California, Inc., 385 A.2d 153 (D.C. 1978), cert denied 439 U.S. 980 (1978). The sweep of the "transacting any business" clause within District of Columbia's long-arm statute covers any transaction of business in the District of Columbia that can be reached

11

jurisdictionally without offending the Due Process Clause.  Heller v. Nicholas Applegate Capital Management, LLC, 498 F.Supp.2d 100, 109 (D.D.C. 2007)  These cases show that the Court should interpret the long arm statute in the broadest sense possible without offending Due Process.

As a benchmark, the instant case may be compared with Overseas Partners, Inc. v. Progen Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti, 15 F.Supp.2d 47, 51 (D.D.C. 1998).  In Progen, a foreign corporation was held to have transacted business in the District of Columbia and, therefore, had sufficient minimum contacts for specific personal jurisdiction in a contract dispute arising out of real estate development in Turkey.  The corporation's project manager allegedly sought out American developer to discuss the project; the parties negotiated some of the terms of the contract in the District; the corporation's agents traveled to the District to visit with potential subcontractors and financial institutions; and the contract contemplated that the developer would perform significant portions of the work in the District. The facts of the instant case are similar. Although the Defendant in the instant case denies that any of the terms of the contract were negotiated in the District (which is doubtful, considering RTI's Subcontracting Plan), the facts are stronger here, because Unity maintains a permanent office in Washington, D.C. which acts as its domestic point of contact with RTI.

    **A.**    **RTI's Acts in Furtherance of a Conspiracy Count as Contacts with the Forum for Unity Resources Group.**

Defendant argues that contacts with the forum cannot be aggregated among co-defendants in order to meet the "minimum contacts" threshold.  Def's Motion to Dismiss at 9.  That may be true as a general proposition, but in this case, the Plaintiff has alleged a

conspiracy.  One of the Plaintiff's allegations is that the Defendants have conspired to create and maintain policies which result in the deaths of innocent people in Iraq.  Under the "conspiracy jurisdiction doctrine," a defendant's contact with the forum can arise from the acts of co-conspirators in that forum.  Richards v. Duke University, 480 F.Supp.2d 222, 229 (D.D.C.,2007); Youming Jin v. Ministry of State Sec., 335 F.Supp.2d 72, 78 (D.D.C.,2004).  For the purpose of personal jurisdiction, the defendant's co-conspirator is deemed to be his agent.  FC Inv. Group LC v. IFX Markets, Ltd., 479 F.Supp.2d 30, 41 (D.D.C.,2007).

Under District of Columbia law, to establish personal jurisdiction on the basis of a theory of conspiracy jurisdiction, courts require a prima facie showing of (1) a conspiracy, (2) in which the defendant participated, and (3) a co-conspirator's overt act within the forum, subject to the long-arm statute and in furtherance of the conspiracy. Richards v. Duke University, 480 F.Supp.2d at 229.  Plaintiff has alleged that Defendants RTI and URG have conspired to create and maintain policies that result in the deaths of innocent civilians in Iraq.  When their employees kill people, no one is disciplined and no corrective action is taken to avoid similar incidents in the future.  This is a prima facie showing of a conspiracy, the purpose of which is, at a minimum, to protect the lives of their employees without regard to the harm they cause to others, beyond any reasonable definition of self-defense.  Overt acts within the forum can include omissions; ie, the failure of RTI's employees in Washington, D.C. to take corrective action in the face of prior incidents of murder and attempted murder.  In other words, the allegation is that RTI's employees in Washington, D.C. are supporting their business in Iraq, and to the extent they have a duty to report things, or to take corrective measures after previous

13

incidents of murders and shootings, their omissions suffice as overt acts within the forum

in furtherance of the conspiracy.  It is a fair inference that RTI uses its Washington, D.C.

office as a liaison with USAID.

**III.    Due Process Requires the Exercise of Personal Jurisdiction in a U.S. Court.**

Another basis for personal jurisdiction can be found in the Due Process Clause

itself, applied through Rule 4(k)(2) of the Federal Rules of Civil Procedure.  This rule

says:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the
> United States, serving a summons or filing a waiver of service is also effective,
> with respect to claims arising under federal law, to establish personal jurisdiction
> over the person of any defendant who is not subject to the jurisdiction of the
> courts of general jurisdiction of any state.[7]

The Defendant is a U.S. government contractor which apparently believes it

cannot be sued in any U.S. court.  If there is no jurisdiction in this Court, then the

question is whether there is personal jurisdiction in any U.S. court.  If the answer is no,

then the D.C. District Court can exercise personal jurisdiction under Rule 4(k)(2).

Whether the exercise of jurisdiction is "consistent with the Constitution" for

purposes of Rule 4(k)(2) depends on whether a defendant has sufficient contacts with the

United States as a whole to justify the exercise of personal jurisdiction under the Due

---

[7] The Advisory Committee's Notes for the 1993 amendments to Rule 4 provide the following background
regarding paragraph (k)(2):

This paragraph corrects a gap in the enforcement of federal law. Under the former rule, a problem was
presented when the defendant was a non-resident of the United States having contacts with the United
States sufficient to justify the application of United States law ..., but having insufficient contact with any
single state to support jurisdiction under state long-arm legislation or meet the requirements of the
Fourteenth Amendment limitation on state court territorial jurisdiction.... In this respect, the revision
responds to the suggestion of the Supreme Court made in <u>Omni Capital</u>....

Fed. R. Civ. P. 4(k) advisory committee's notes 1993 amendments, referring to <u>Omni Capital Int'l, Ltd. v.
Rudolf Wolff & Co.</u>, 484 U.S. 97 (1987).

Process Clause of the Fifth Amendment.  Mwani v. bin Laden, 417 F.3d 1, 11-12 (D.C. Cir. 2005).  The Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations,"  Burger King, 471 U.S. at 472, (quoting International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)), and "requir[es] that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' " Id. (quoting Shaffer v. Heitner, 433 U.S. 186, 218 (1977)) (second alteration in original).  The alleged contacts with the United States as a whole are Unity's business dealings with RTI as a subcontractor to USAID, its office and agent in Washington, D.C., its advertising directed at the United States (listing on the website of the U.S. Commercial Service, "BuyUSA.gov", the work of its "Americas Contact" Neil Marshall, and its advertising through trade associations), and its registration with the U.S. Federal Government Central Contractor Registry.  Complaint at ¶¶ 21-24.

If Plaintiff had filed suit in North Carolina, he would have to argue that several visits by URG employees to RTI in North Carolina constituted minimum contacts with the state.  Since the contract was executed in Dubai, see Affidavit of Patrick Gaul, Docket # 13-4 at ¶ 3, this is a weaker basis for the exercise of personal jurisdiction than the maintenance of a permanent office in Washington, D.C. with a sales and service agent.

A defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed and consent to personal jurisdiction there.  Unlike federal subject-matter jurisdiction, personal jurisdiction is waivable.  If, however, the Defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the Court is entitled to use Rule 4(k)(2).  Mwani v.

bin Laden, 417 F.3d 1, 11 (D.C. Cir. 2005), folowing the approach used in ISI Int'l, Inc. v. Borden Ladner Gervais LLP, 256 F.3d 548, 552 (7th Cir.2001).  Of course, venue must also lie in the proposed transferee forum for the suit to proceed.  So the question is, if Unity can't be sued here, where in the U.S. can they be sued?

**IV.    Defendant has Waived the Objection of Forum Non Conveniens by Not Raising it in his First Motion to Dismiss.**

The Defendant purports to reserve the right to file a second motion to dismiss based on the doctrine of forum non conveniens.  Whether a defendant's motion to dismiss based on forum non conveniens is made in a timely manner depends on whether it is made in a reasonable time after the defendant has become aware of the facts the form the basis for the motion.  See Lony v. E.I. Du Pont de Nemours & Co., 935 F.2d 604, 607 (3rd Cir. 1991), quoting In re Air Crash Disaster near New Orleans, 821 F.2d 1147, 1165 (5th Cir. 1987) (motion must be made within a reasonable time "after the facts or circumstances ... have developed and become known").

While motions to dismiss on the grounds of forum non conveniens do not fall under Rule 12, the court should still use Rule 12 as a guideline in determining whether the motion was made in a reasonable time.  That is, if the facts and circumstances upon which the motion is made are already known, the Defendant should join its motion based on forum non conveniens and present it at the same time as motions made under Rule 12. Rule 12(g)(2) of the Federal Rules of Civil Procedure requires that "Except as provided in Rule 12(h)(2) or (3),[8] a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the

---

[8] Section (h)(2) applies to motions to dismiss for failure to state a claim, join an indispensible party, or state a legal defense.  Section (h)(3) applies to motions to dismiss for lack of subject matter jurisdiction.  Hence, those sections are inapplicable.

party but omitted from its earlier motion."  Rule 12(h) of the Federal Rules of Civil Procedure states that such defenses and objections are waived if not presented in the first motion made under Rule 12.

In other words, should the Defendant choose to make a motion based on <u>forum non conveniens</u> at a later date, its justification should be based on facts obtained in discovery, which cannot reasonably be inferred from what has already been alleged. Even then, however, if the court has expended significant resources on the case, considerations of judicial economy may weigh in favor of retaining the action.  <u>Lony v. E.I. Du Pont de Nemours & Co.</u>, 935 at 607. ("whenever discovery has proceeded substantially so that the parties already invested much of the time and resources they will expend before trial, the presumption against dismissal ... greatly increases.")  The defendant should not be permitted to present its defenses and objections sequentially as a litigation strategy; ie., to first try to duck the Court's jurisdiction, and if that doesn't work, argue that the forum is inconvenient.   Defendant's argument that the Court must decide the question of personal jurisdiction before it can rule on a <u>forum non conveniens</u> motion is unavailing, and Defendant's offer to unilaterally prove that the majority of witnesses and evidence exist outside the U.S. is unfair.  <u>See</u> Def's Response in <u>Manook</u> case, 08-cv-00096 (PLF), Docket Entry # 25 at 1 n 2.

**CONCLUSION**

Unity Resources Group is, without a doubt, a difficult entity to pin down. Owned by two Australians, and incorporated under the laws of Singapore, this $57 million corporation uses either a post office box or a hotel room in Dubai as its corporate address. This corporation does business in Washington, D.C., and is a significant subcontractor for USAID, using a "rent a desk" in the District, and forwarding calls made there to the cell phone of its U.S. agent, David Rolfes. Unity has apparently developed this complex structure in the expectation that it can escape liability for its wrongful acts.

Yet Unity is doing business here. It is a USAID subcontractor with an office here. Washington, D.C. is the forum most closely connected to this corporation, and to the facts of this case. For the foregoing reasons, Plaintiff respectfully requests this Court deny Unity Resources Group's motion to dismiss Plaintiff's Complaint.

Respectfully submitted,

/s/

_____
Paul Wolf
D.C. Bar #480285
P.O. Box 11244
Washington, D.C. 20008-1244
(202) 674-9653
paulwolf@icdc.com

## Certificate of Service

I hereby certify that on August 4, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


/s/ Paul Wolf

_____

Paul Wolf

**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

_____
                                        )
**Jalal Askander**                      )
                                        )
    **Plaintiff,**  )
                                        )
      **v.**  )
                                        )
**Research Triangle Institute, Int.**   )     **Civil Action No. 09-595 (PLF)**
                                        )
    **and**          )
                                        )
**Unity Resources Group, L.L.C.**       )
                                        )
    **Defendants.**  )
_____)


**<u>DECLARATION OF PAUL DAVID WOLF</u>**


     I, Paul David Wolf, hereby declare under penalty of perjury, that based upon my personal knowledge, the following is true and correct:

1.     I am the counsel of record for Jalal Askander in this case, and a member of this Court.

2.     Several months ago, counsel for the Estate of Marani Awanis Manook provided me with a copy of a USAID contract award, which I have studied and believe to be an authentic copy of the contract between Defendant Research Triangle Institute, Int., and the United States Agency for International Development (USAID), governing their relationship as it relates to this case.

3.     An internet search of the contract/award number appearing at the top of every page of this document, 267-C-00-05-00505-00, indicates that this number pertains to an

award called "Iraq Strengthening Local and Provincial Governance" granted to awardee "Research Triangle Park, NC 27709-2194." A notice of the award dated April 4, 2005 can be found at http://www.fbodaily.com/archive/2005/04-April/29-Apr-2005/FBO-00797004.htm. RTI's website also refers to this contract number. This is in the fine print at the bottom of http://www.lgp-iraq.org/.

4.     On July 16 of this year, I contacted USAID in an attempt to obtain an authenicated copy of this document. Erin McKee, who manages the contract, told me that I would have to request it through the Freedom of Information Act because it contains proprietary information.

5.     Because I will be unable to obtain an authenticated copy of this document in time to oppose this motion, and because the document may contain proprietary information, at this time all I can do is quote from a section of the copy I have.

6.     On page 32 of the RTI-USAID contract appears the following:

**H.9 SUBCONRACTING PLAN AND THE SF 294 – SUBCONTRACTING REPORT FOR INDIVIDUAL CONTRACTS AND SF 295 – SUMMARY CONTRACTING REPORT.**

The Contractor's subcontracting plan dated February 28, 2005 is hereby incorporated as a material part of this contract. (see Section J, Attachment 8, RTI's subcontracting plan).

(bold in original)

7.     On page 48 of the RTI-USAID contract appears the following:

ATTACHMENT 8     RESEARCH TRIANGLE INSTITUTE SUB-CONTRACTING PLAN          2/28/2005     14 (pages)

8.     I do not have the referenced 14 page Subcontracting Plan.

Signed this 4th day of August, 2008.

/s/

_____

Paul David Wolf