UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ───────────────────────────── ) | | |
| Jalal Askander Antranick, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | Civil Case No. 1:08–cv–00595 |
| ) | | |
| Research Triangle Institute, International and ) | | |
| Unity Resources Group, L.L.C., ) | | Honorable Paul L. Friedman |
| ) | | |
| Defendants. ) | | |
| ─────────────────────────────) | | |

## <u>DEFENDANT RTI'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION (1) TO DISMISS PLAINTIFF'S COMPLAINT, (2) TO STRIKE PLAINTIFF'S REQUESTS FOR DECLARATORY AND INJUNCTIVE RELIEF, AND (3) TO TRANSFER THE REMAINING CLAIMS</u>

| | |
|---|---|
| Mark A. Ash* | Eric W. Bloom (Bar No. 417819) |
| Clifton L. Brinson (Bar No. 465178) | Karen Sugden Manley (Bar No. 495029) |
| Smith, Anderson, Blount, Dorsett, Mitchell & | Nicole Y. Silver (Bar No. 472630) |
| Jernigan, LLP | Sarah E. Saucedo* |
| 2500 Wachovia Capitol Center (27601) | Winston & Strawn LLP |
| P.O. Box 2611 | 1700 K Street, N.W. |
| Raleigh, NC 27601–2611 | Washington, D.C. 20006 |
| Phone: (919) 821–1220 | Phone: (202) 282–5743 |
| Fax: (919) 821–6800 | Fax: (202) 282–5100 |
| | |
| | Counsel for Defendant RTI |
| | |
| August 8, 2008 | *Admitted pro hac vice |

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT ......................................................................................................2

I.   THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY
     BECAUSE CLAIMS ON BEHALF OF AN ESTATE MUST BE — BUT
     WERE NOT HERE — BROUGHT BY AN AUTHORIZED
     REPRESENTATIVE. ..................................................................................2

II.  EVEN ASSUMING THAT PLAINTIFF MAY IMPUTE THE ALLEGED
     WRONGFUL ACTS OF UNITY'S EMPLOYEES TO UNITY,
     PLAINTIFF CANNOT IMPUTE THOSE SAME ACTS TO RTI. ...................4

     A.   Plaintiff's Allegations of "Agency and Vicarious Liability" Are
          Insufficient To Impute Unity's Alleged Culpability To RTI. ..................4

     B.   Plaintiff's Allegations of "Joint Venture" Liability Are Insufficient
          To Impute Unity's Conduct To RTI. .......................................................6

     C.   Plaintiff's Allegations of "Civil Conspiracy" Liability Are
          Insufficient To Impute Unity's Conduct To RTI. ....................................6

     D.   Plaintiff's Allegations of "Joint and Several Liability" Are
          Insufficient To Impute Unity's Conduct To RTI. ....................................7

     E.   Plaintiff's Allegations of "Aiding and Abetting" Are Insufficient to
          Impute Unity's Conduct to RTI. .............................................................7

III. PLAINTIFF'S FIRST CAUSE OF ACTION MUST BE DISMISSED. ...........9

     A.   This Circuit Has Consistently Held That ATS Jurisdiction
          Generally Does Not Reach Private Actors...............................................9

          1.   Plaintiff Misconstrues Circuit Precedent Regarding The
               Liability Of Private Actors Under The Law Of Nations............................9

          2.   Plaintiff's Allegations That RTI Acted Under "Color Of
               Law" Fail To Support His ATS Claim. ...................................................11

          3.   Decisions By Other Circuits Do Not Diminish This
               Circuit's ATS Jurisprudence.................................................................14

          4.   The ATS Jurisdictional Inquiry Is Made By Reference To
               The Law Of Nations, Not To U.S. Statutory Law Nor The
               Practices Of War Crimes Tribunals. ......................................................14

        5.      Plaintiff Fails To Allege Facts Necessary To Constitute A War Crime Upon Which ATS Jurisdiction Can Be Predicated.........................................................................................15

IV.     PLAINTIFF'S TORTURE VICTIM PROTECTION ACT CLAIM MUST BE DISMISSED AS A MATTER OF LAW.................................................17

     A.     Corporations Are Not "Individuals" Under The TVPA. ......................................17

     B.     The Alleged Incident Does Not Constitute An "Extrajudicial" Killing Under The TVPA.......................................................................20

     C.     RTI And Unity Were Not Acting Under Actual Or Apparent Authority Or Under The Color Of Law Of Any Foreign Nation..........................22

V.      ANY SURVIVING CLAIMS SHOULD BE TRANSFERRED TO THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA...............................................................................................23

VI.    RTI'S MOTION TO DISMISS COUNT VII, AND RTI'S MOTION TO STRIKE PLAINTIFF'S PRAYERS FOR INJUNCTIVE AND DECLARATORY RELIEF, SHOULD BE GRANTED BECAUSE THEY ARE *UNOPPOSED*.............................................................................................25

CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*American Mfrs. Mut. Ins. Co. v. Sullivan,*
    526 U.S. 40 (1990)..................................................................................3

*Amoco Oil Co. v. Borden, Inc.,*
    889 F.2d 664 (5th Cir. 1989) ...............................................................18

*Beanal v. Freeport-McMoRan, Inc.,*
    969 F. Supp. 362 (E.D. La. 1997) .......................................................18

*Beanal v. Freeport-McMoran, Inc.,*
    197 F.3d 161 (5th Cir. 1999) ...............................................................18

*\*Bell Atl. Corp. v. Twombly,*
    127 S. Ct. 1955 (2007)........................................................................5, 7

*Blum v. Yaretsky,*
    457 U.S. 991 (1982).............................................................................13

*Burton v. Wilmington Parking Auth.,*
    365 U.S. 715 (1961).............................................................................12

*Cabello v. Fernández–Larios,*
    402 F.3d 1148 (11th Cir. 2005) .............................................................8

*Clinton v. City of New York,*
    524 U.S. 417 .......................................................................................18

*D'Amario v. Providence Civic Center Auth.,*
    783 F.2d 1 (1st Cir. 1986)....................................................................12

*Dennis v. Sparks,*
    449 U.S. 24 (1980)...............................................................................13

*Desert Palace, Inc. v. Costa,*
    539 U.S. 90 (2003)...............................................................................20

*Dinco v. Dylex Ltd.,*
    111 F.3d 964 (1st Cir. 1997)...........................................................17, 18

*\*Doe I v. Exxon Mobil Corp.,*
    393 F. Supp. 2d 20 (D.D.C. 2005) ............................................... passim

*Estate of Rodriguez v. Drummond Co.,*
    256 F. Supp. 2d 1250 (N.D. Ala. 2003)..............................................18

i

*Flatow v. Islamic Republic of Iran,*
  999 F. Supp. 1 (D.D.C. 1998) ........................................................21

*Forti v. Suarez-Mason,*
  672 F. Supp. 1531 (N.D. Cal. 1987) ..............................................21

*Gallagher v. "Neil Young Freedom Concert,"*
  49 F.3d 1442 (10th Cir. 1995) .......................................................12

*Halberstam v. Welsh,*
  705 F.2d 472 (D.C. Cir. 1983) .........................................................7

*Hall v. E.I. DuPont De Nemours & Co. Inc.,*
  345 F. Supp. 353 (E.D.N.Y. 1972) ..................................................9

*Hamilton v. State Farm Fir & Cas. Co.,*
  270 F.3d 778 (9th Cir. 2001) ...........................................................3

*Hilao v. Estate of Marcos,*
  103 F.3d 767 (9th Cir. 1996) .........................................................21

*Holland v. Islamic Republic of Iran,*
  496 F. Supp. 2d 1 (D.D.C. 2005) ...................................................23

*\*Ibrahim v. Titan Corp.,*
  391 F. Supp. 2d 10 (D.D.C. 2005) ..............................................9, 11

*In re North,*
  12 F.3d 252 (D.C. Cir. 1994) .........................................................17

*In re Yamashita,*
  327 U.S. 1 (1946) ...........................................................................21

*Jackson v. Metro. Edison Co.,*
  419 U.S. 345 (1974) ..................................................................12, 13

*Kadic v. Karadzic,*
  70 F.3d 232 (2d Cir. 1995) .......................................................14, 21

*Khulumani v. Barclay Nat'l Bank, Ltd.,*
  504 F.3d 254 (2d Cir. 2007) ..........................................................15

*Libby v. L.J. Corp.,*
  247 F.2d 78 (D.C. Cir. 1957) ...........................................................6

*Martens v. U.S.,*
  No. 05–1805, 2007 WL 2007580 (D.D.C. July 6, 2007) ................5

*Moose Lodge No. 107 v. Irvis,*
    407 U.S. 163 (1972)............................................................................12

*Mwani v. Bin Ladin,*
    No. 99–125, 2006 WL 3422208 (D.D.C. Sept. 28, 2006) .......................................16

*Mwani v. Bin Ladin,*
    417 F.3d 1 (D.C. Cir. 2005) ...................................................................16

*Pako Corp. v. Citytrust,*
    109 B.R. 368 (D. Minn. 1989) ...................................................................3

*Paul v. Avril,*
    901 F. Supp. 330 (S.D. Fla. 1994) .............................................................21

*Rendell–Baker v. Kohn,*
    457 U.S. 830 (1982)............................................................................11

*Ryan Operations G.P. v Santiam-Midwest Lumber Co.,*
    81 F.3d 355 (3d Cir. 1996)......................................................................3

*Saleh v. Titan Corp.,*
    436 F. Supp. 2d 55 (D.D.C. 2006) ......................................................9, 11, 17

*Sanchez–Espinoza v. Reagan,*
    770 F.2d 202 (D.C. Cir. 1985) .........................................................9, 10, 11

*Sinaltrainal v. Coca–Cola Co.,*
    256 F. Supp. 2d 1345 (S.D. Fla. 2003) .........................................................18

*Sosa v. Alvarez–Machain,*
    542 U.S. 692 (2004)......................................................................15, 16

*Spahr v. United States,*
    501 F. Supp. 2d 92 (D.D.C. 2007) ...............................................................5

*Tel–Oren v. Libyan Arab Republic,*
    726 F.2d 774 (D.C. Cir. 1984) .........................................................9, 10, 11

*United States v. Inslaw, Inc.,*
    932 F.2d 1467 (D.C. Cir. 1991) .................................................................3

*United States v. Ron Pair Enterpr., Inc.,*
    489 U.S. 235 (1989)............................................................................19

*Wolverine Power Co. v. F.E.R.C.,*
    963 F.2d 446 (D.C. Cir. 1992) .................................................................18

*Xuncax v. Gramajo*,
    886 F. Supp. 162 (D. Mass. 1995) ........................................................................21

**STATE CASES**

*Boyce v. Boyce*,
    541 A.2d 614 (D.C. 1988) ...................................................................................3

*Griva v. Davison*,
    637 A.2d 830 (D.C. 1994) ...................................................................................6

*In re Burt*,
    494 N.E.2d 868 (Ill. App. Ct. 1986) ...................................................................6

*In re Estate of Monge,*
    841 A.2d 769 (D.C. 2004) ...................................................................................2

**FEDERAL STATUTES**

Military Commissions Act,
    10 U.S.C. § 948a. .........................................................................................14, 15

War Crimes Act of 1996,
    18 U.S.C. § 2441 ...............................................................................................14

*Alien Tort Statute,
    28 U.S.C. § 1350...............................................................................................17

*Torture Victim Protection Act,
    28 U.S.C. § 1350 note..................................................................................20, 22

**STATE STATUTES**

D.C. Code § 20–302(b)...................................................................................................3

D.C. Code § 20–303(a) ..................................................................................................3

D.C. Code § 20–303(b)(7)..............................................................................................3

D.C. Code § 20–341(a) ..................................................................................................2

D.C. Code § 20–341(b)..................................................................................................2

**OTHER AUTHORITIES**

48 C.F.R. § 252.225-7040(b)(1) .........................................................................................15

48 C.F.R. § 252.225-7040(b)(3) .........................................................................................15

48 C.F.R. § 252.225–7040(e)(2)(ii) ............................................................................... 14-15

31 Am. Jur. 2d Executors and Administrators (2008) .......................................................4

Black's Law Dictionary 426–27 (6th ed. 1990)...............................................................21

Elizabeth K. Ainslie, *Indicting Corporations Revisited: Lessons of the Arthur Andersen Prosecution*, 43 AM. CRIM. L. REV. 107 (2006) ......................................................20

RESTATEMENT (THIRD) OF FOREIGN RELATIONS § 207, cmt. d................................ 13-14

137 Cong. Rec. S1369–01, 1991 WL 9635 (1991).........................................................19

Defendant Research Triangle Institute ("RTI") respectfully submits this Reply Memorandum in Support of Its Motion (1) To Dismiss Plaintiff's Complaint, (2) To Strike Plaintiff's Requests For Declaratory and Injunctive Relief, and (3) To Transfer the Remaining Claims, if any, to the United States District Court for the Eastern District of North Carolina.

## INTRODUCTION

Plaintiff implicitly acknowledges that his allegations may be formulaic and therefore insufficient, but nonetheless pleads that the "proper remedy" for his "conclusionary" allegations is "an order for a more definite statement, not dismissal of the case." Pl. Br. at 2–3.[1] He makes this plea notwithstanding that dismissal is the ordinary remedy – and the remedy in each of the cases cited by RTI. *See* RTI Br. at 5–6. Fearing further that he may have run afoul of District of Columbia law governing foreign estates, Plaintiff also asks this Court "to retain jurisdiction while an estate is opened" in this jurisdiction if the Court finds it necessary, even though the Plaintiff, in the interim, would lack standing. Pl. Br. at 4. Plaintiff asks this Court for leniency yet again when he argues that the Court should not strike his prayers for injunctive and declaratory relief, even though he makes no argument that either is permitted by law. *Id*. at 2.

Plaintiff's accusations are much too serious to survive on the basis of this Court's grace. Plaintiff has over–alleged this case, and has resorted to (as he did with his complaint) rehearsed, transparent, formulaic allegations peppered with political rhetoric, rather than legal principles.

Plaintiff's complaint must be dismissed because, first, he lacks standing to assert any claims in this jurisdiction on behalf of the estate, and second, he fails to allege facts sufficient to impute the alleged wrongful acts of Unity's employees to RTI, especially given Plaintiff's

---

[1] As used herein, references to "RTI Br." are to Defendant RTI's Statement of Points and Authorities in Support of Its Motion To Dismiss. References to "Pl. Br." are to Plaintiff's Opposition to Defendant RTI's Motion to Dismiss.

allegations/admissions that RTI is in the business of providing consulting advice to foreign governments whereas Unity performs an entirely different function, the provision of security services. Counts I, II and VII should be dismissed for the additional reason that Plaintiff cannot force–fit the alleged facts into the respective causes of action. Also, Plaintiff's prayer for declaratory and injunctive relief should be stricken because neither relief is permitted by law, and Plaintiff does not contend otherwise. Finally, RTI's motion to transfer any surviving claims should be granted because Plaintiff does not reside in, and has no connection to, this jurisdiction whereas (1) RTI's principal place of business is in North Carolina; (2) 2200 of RTI's 2600 employees work in North Carolina; (3) most all of RTI's communications occurring in the United States regarding the Unity contract are to or from North Carolina; and (4) RTI pays Unity out of its North Carolina office.

## ARGUMENT

I. **THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE CLAIMS ON BEHALF OF AN ESTATE MUST BE — BUT WERE NOT HERE — BROUGHT BY AN AUTHORIZED REPRESENTATIVE.**

Contrary to Plaintiff's assertions, D.C. law *requires* Mr. Antranick, as administrator of his daughter's estate, to register with the court a copy of his appointment as personal representative in Iraq and a copy of Ms. Antranick's will before bringing an action on behalf of the estate. RTI Br. at 7 (citing D.C. Code § 20–341(b)). Although the District of Columbia does not require ancillary letters (the official instrument by which a personal representative is appointed by the court to administer the estate of a decedent), *see In re Estate of Monge,* 841 A.2d 769, 773 (D.C. 2004) (citing D.C. Code § 20–341(a)), a foreign personal representative must still properly register with the Court Register. D.C. Code § 20–341(b). Thus, under the D.C. Code provisions, it simply is not a defendant's obligation to travel to every corner of the

world to verify that the claimed administrator is acting with authority; it is instead the burden of the administrator to establish his authority to bring suit on behalf of the estate.  RTI Br. at 7–8.

Plaintiff alleges that opening an estate in this jurisdiction would serve no purpose, and indeed, would be "wasteful" and "futile."  Pl. Br. at 3, 4.  In support, Plaintiff argues that a claim is not "property" before an action is actually asserted, though he appears to concede that a claim is property once asserted.  *Id*. at 4.  Plaintiff cites no authority in support, while the law is to the contrary.[2]  Even if Plaintiff did not have property in the District of Columbia, he would still need to register the proper documentation with the Court.  Persons can exercise the powers of a personal representative only after registering with and being appointed by the Court.  RTI Br. at 7 (citing D.C. Code § 20–302(b)).  The D.C. Code specifies who may be appointed as "personal representatives," and specifically excludes from this group anyone who "*is a nonresident of the District of Columbia, unless* such person files an irrevocable power of attorney with the Register designating the Register and the Register's successors in office as the person upon whom all notices and process issued by a competent court in the District of Columbia may be served with the same effect as personal service, in relation to all suits or matters pertaining to the estate in which the letters are to be issued."  D.C. Code § 20–303(a); 20–303(b)(7) (emphasis added).

This provision makes sense in light of one of the basic rules of administration:  "Except as a matter of comity or under authority of a statute, an executor or administrator generally

---

[2] *See Ryan Operations G.P. v Santiam-Midwest Lumber Co.*, 81 F.3d 355, 357, 372 n.5 (3d Cir. 1996) (Bankruptcy Code requires full disclosure of all contingent assets, including unasserted claims); *Pako Corp. v. Citytrust,* 109 B.R. 368, 372 (D. Minn. 1989) (failure to list unasserted claim in listing of assets in Bankruptcy Court precluded later filing of unasserted claim); *see also American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 63 (1990) (Stevens, J., concurring in part and dissenting in part) (stating that a cause of action is "unquestionably a species of property protected by the Due Process Clause of the Fourteenth Amendment"); *United States v. Inslaw, Inc*., 932 F.2d 1467, 1471 (D.C. Cir. 1991) (stating that property of an estate encompasses causes of action belonging to debtor); *Boyce v. Boyce,* 541 A.2d 614, 616-17 (D.C. 1988) (citing *In re Burt*, 494 N.E.2d 868, 871 (Ill. App. Ct. 1986) (holding that a personal injury claim was marital property even though it was contingent and non-assignable)); *Hamilton v. State Farm Fir & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001).

cannot sue in his official capacity in the courts of any country or state other than that from which he derives his authority to act. . . . A foreign representative has no extraterritorial authority; he can only administer such assets as are within the jurisdiction of the court which appointed him." 31 Am. Jur. 2d Executors & Administrators § 1157 (and cases cited therein).

Because Plaintiff has made no attempt to meet the statutory requirements, and consequently lacks capacity or standing to bring this suit, this Court has no choice but to dismiss the complaint in its entirety.  Pl. Br. at 8.

## II. EVEN ASSUMING THAT PLAINTIFF MAY IMPUTE THE ALLEGED WRONGFUL ACTS OF UNITY'S EMPLOYEES TO UNITY, PLAINTIFF CANNOT IMPUTE THOSE SAME ACTS TO RTI.

Plaintiff seeks to hold RTI liable for the alleged acts of Unity's employees notwithstanding that (1) Unity performs no services under the RTI–USAID contract; (2) Unity's services (security) are not performed by RTI; and (3) Unity's personnel were not acting to protect any of RTI's employees.  Plaintiff nonetheless offers in his complaint five theories pursuant to which he hopes to impute the acts of Unity employees to RTI.  Compl. ¶¶ 49–56. Plaintiff even attempts to expand his argument by adding new theories of secondary liability.  Pl. Br. at 7–8.  Discounting that Plaintiff cannot introduce new theories of liability in his opposition, Plaintiff's theories, old and new, fail.

### A. Plaintiff's Allegations of "Agency and Vicarious Liability" Are Insufficient To Impute Unity's Alleged Culpability To RTI.

Plaintiff admits that it is possible that RTI hired Unity as an independent contractor.  Pl. Br. at 7.  Plaintiff nonetheless asserts that Unity's actions can be imputed to RTI, regardless of how the RTI–Unity relationship is "labeled," *id.*, concluding that liability can be imputed to RTI by showing that (a) RTI exerted sufficient control over Unity or (b) RTI's work in Iraq was inherently dangerous.  *Id.* at 5–9.  Both theories collapse upon analysis.

4

First, Plaintiff alleges no facts to support his theory that RTI had the right to control Unity's performance. Plaintiff himself admits that he has no basis on which to support his allegation, instead arguing only that the "RTI–Unity relationship is one to be proven by facts ascertained in discovery and at trial." Pl. Br. at 5; *see also id.* at 6–7 (listing discovery issues allegedly relevant to the RTI–Unity relationship). Of course, it is improper to sue a party on the mere hope that discovery might provide some grounds for liability, and the "court [certainly] need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations." *Spahr v. United States*, 501 F. Supp. 2d 92, 95 (D.D.C. 2007) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007)); *Martens v. U.S.,* No. 05–1805, 2007 WL 2007580, at *1 (D.D.C. July 6, 2007).

Plaintiff is left arguing that he satisfied his pleading obligations and that he adequately alleged RTI "control" of Unity merely by labeling the Defendants, "in every count of Plaintiff's Complaint," as "agents and/or employees" or "agents or employees." Pl. Br. at 5. But Plaintiff's repeated, naked characterization of the parties' relationship is devoid of any actual factual allegations in support. Such conclusory and formulaic allegations need not be accepted as true. *See* RTI Br. at 5–6.

Plaintiff alternatively asserts that RTI is strictly liable because inherently dangerous tasks cannot be delegated. Pl. Br. at 7. This argument (raised for the first time in Plaintiff's opposition papers) fails because neither RTI's nor Unity's contractual obligations *create* the dangers to which Plaintiff refers. Plaintiff cites cases referring to such activities as "blasting" and keeping dangerous animals. *Id.* These cases are easily distinguishable, however, because the defendants there created the danger.[3] According to Plaintiff's logic, strict liability should be

---

[3] Although Iraq is a dangerous place to work, neither Defendant was engaged in an inherently dangerous activity (as that phrase is used by the courts) at the time of Ms. Antranick's death. RTI personnel were

imposed on all activities that occur in a dangerous place. This logic undermines the public policy of the doctrine by imposing strict liability on activities depending on their geographic location instead of on the defendant's responsibility for the dangerous activity.

**B.    Plaintiff's Allegations of "Joint Venture" Liability Are Insufficient To Impute Unity's Conduct To RTI.**

Plaintiff's allegation that RTI and Unity formed a joint venture is belied by Plaintiff's own allegations. As RTI previously noted, a joint venture requires (1) some joint interest in property; (2) an agreement, express or implied, to share in the profits and losses of the venture; and (3) actions or conduct evidencing cooperation on behalf of the parties. RTI Br. at 12–13 (citing *Libby v. L.J. Corp.*, 247 F.2d 78 (D.C. Cir. 1957)). Plaintiff fails to satisfy the first, and most basic, element because he was required but failed to identify the alleged joint venture or "property." *See* RTI Br. at 13 nn.9, 10. Plaintiff also fails to satisfy the second element because, as he implicitly concedes, RTI and Unity do not share profits from a single joint venture. RTI is paid under a USAID contract, Compl. ¶¶ 16, 17, whereas Unity is paid under a separate contract with RTI. *Id.* ¶ 2.

**C.    Plaintiff's Allegations of "Civil Conspiracy" Liability Are Insufficient To Impute Unity's Conduct To RTI.**

To allege a civil conspiracy, Plaintiff must allege that RTI and Unity perpetrated an unlawful act pursuant to and in furtherance of an agreement between them. RTI Br. at 13 (citing *Griva v. Davison*, 637 A.2d 830, 848 (D.C. 1994)). As already demonstrated, Plaintiff's claim fails as a matter of law because his own allegations, taken as true, demonstrate that RTI did not enter into any agreement to kill Ms. Antranick. RTI Br. at 13–14. If the alleged agreement is something other than a plan to kill Ms. Antranick, Plaintiff fails to identify the substance of the

---

not even present at the scene of the incident, and the Unity personnel present were merely driving down the street on their way back to their base of operations. Compl. ¶ 2.

alleged agreement or plan. Simply, what did the Defendants agree to do? *See* RTI Br. at 14–15

nn.12, 13 (citing conspiracy claims dismissed for failing to identify the alleged agreement and

specific factual allegations in support of such agreement).

Given the complaint's paucity of factual allegations in support of any such agreement,

Plaintiff argues only that Defendants engaged in "parallel behavior" that somehow evidences a

"tacit agreement." Pl. Br. at 8. But the belated "parallel behavior" argument – regarding hiring

and supervising decisions and the alleged failure to take effective remedial action – is

insufficient to show that there was an "agreement" between the Defendants to commit an

unlawful act. RTI Br. at 14 (quoting *Twombly,* 127 S. Ct. at 1965–66 (holding, albeit in the

antitrust context, that properly alleging a claim for conspiracy "requires a complaint with enough

factual matter (taken as true) to suggest that an agreement was made….[A]*n allegation of

parallel conduct and a bare assertion of conspiracy will not suffice*." (emphasis added))).

### D.    Plaintiff's Allegations of "Joint and Several Liability" Are Insufficient To Impute Unity's Conduct To RTI.

Plaintiff claims that Defendants are jointly and severally liable for damages. Joint and

several liability is not a theory that can be used to impute liability. RTI Br. at 12. By his silence

(in his Memorandum in Opposition), Plaintiff concedes the point.

### E.    Plaintiff's Allegations of "Aiding and Abetting" Are Insufficient to Impute Unity's Conduct to RTI.

To hold RTI liable for aiding and abetting Unity in the commission of war crimes,[4]

Plaintiff must allege and prove that RTI was generally aware of its role as part of an overall

illegal activity at the time it provided assistance to Unity. RTI Br. at 10 (citing *Halberstam v.

Welsh*, 705 F.2d 472, 478 (D.C. Cir. 1983)). He has utterly failed to do so. *See* RTI Br. at 9, 10.

---

[4] Plaintiff limits his aiding and abetting allegations to the ATS and TVPA claims and admits that civil concepts of agency shall not be applied in assessing liability under either theory. Pl. Br. at 9.

Plaintiff does not allege that RTI had any knowledge that Unity personnel would kill, or intended to kill, Ms. Antranick, and his attempt to liken the present situation to a case in which people were convicted of aiding and abetting for supplying gas to concentration camps with the knowledge that it would be used to commit mass murder, is not only irrelevant but irresponsible. Pl. Br. at 10. Plaintiff resorts to his all–purpose allegation that RTI was "on notice" of prior bad acts allegedly committed by Unity personnel, as well as previous incidents committed by non–parties to this action. Pl. Br. at 11–12. But Plaintiff himself alleges only one incident involving Unity that resulted in a death (of Mr. Kays Juma), and the shooting there occurred after the victim "failed to stop at a security checkpoint." Compl. ¶ 8. Put another way, there is no allegation that the alleged shooting of Mr. Juma was without justification or that it constituted a war crime. Ultimately, Plaintiff tries to make his case by relying on alleged acts by military contractors who are **not** parties to this action, who do **not** act in concert with Defendants, and who have **nothing** to do with this case. *Id*. ¶¶ 35–42. There is no precedent to support Defendant's proposition that the alleged bad acts of strangers to the litigation could ever constitute "notice" that a *different* party (here, Unity) will engage in misconduct. Given the lack of prior bad acts by *Unity*, Plaintiff's claim of "prior notice" is insufficient as a matter of law.

Moreover, Plaintiff cannot allege that RTI "actively participat[ed]" in the death of Ms. Antranick, Pl. Br. at 11 (citing *Cabello v. Fernández–Larios*, 402 F.3d 1148 (11th Cir. 2005)), as RTI was not at the scene of the incident, Compl. ¶ 2, and it is irrelevant that RTI allegedly provided Unity with money, weapons or general direction under its contract absent knowledge that Unity would employ such assets in an illicit manner. RTI Br. at 10 (stating that aiding and abetting does not capture conduct that is benignly attendant to legitimate business proceedings).

Because Plaintiff's conclusory allegations are not supported by any specific factual allegations that RTI *knew* that its proffered "assistance" would be used in the commission of illegal acts, this Court should dismiss or strike Plaintiff's aiding and abetting allegations.[5]

## III.    PLAINTIFF'S FIRST CAUSE OF ACTION MUST BE DISMISSED.

### A.    This Circuit Has Consistently Held That ATS Jurisdiction Generally Does Not Reach Private Actors.

#### 1.    Plaintiff Misconstrues Circuit Precedent Regarding The Liability Of Private Actors Under The Law Of Nations.

As RTI previously explained, this Circuit has consistently held that only states and state actors can violate the law of nations, except in very narrow circumstances not present here.  RTI Br. at 16–23;  *see Sanchez–Espinoza v. Reagan*, 770 F.2d 202 (D.C. Cir. 1985); *Tel–Oren v. Libyan Arab Republic*, 726 F.2d 774 (D.C. Cir. 1984).   This Court continues to follow that untouched precedent.   *See Saleh v. Titan Corp.*, 436 F. Supp. 2d 55 (D.D.C. 2006); *Doe I v. Exxon Mobil Corp.*, 393 F. Supp. 2d 20 (D.D.C. 2005); *Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10 (D.D.C. 2005).   Plaintiff in fact concedes that *Sanchez–Espinoza* and *Tel–Oren* are the "precedent ATS cases" in this Circuit, Pl. Br. at 12, and invokes *Tel–Oren* as "precisely the analysis Plaintiff asks this Court to use."  *Id*. at 14.   Nonetheless, Plaintiff simultaneously and inexplicably asks this Court to *reject* the holdings in *Saleh* and *Ibrahim* because they "are also torture cases, and were analyzed *the same way* as *Tel–Oren*."  *Id*. at 14 n.10 (emphasis added).

_____

[5] Knowing that he cannot succeed on any of his original theories of secondary liability, Plaintiff argues for the first time that RTI is subject to "enterprise liability," a theory of liability used to apportion liability among companies servicing the same industry.  *Hall v. E.I. DuPont De Nemours & Co. Inc.*, 345 F. Supp. 353, 378 (E.D.N.Y. 1972) (enterprise liability employed to improve industry-wide safety standards).  Enterprise liability is ordinarily reserved for product liability cases where companies engaged in the same line of business are presumed to know the risks associated with a particular product. *Id.* (imposing joint liability on the most strategically placed participants in a risk-creating process).  Here, Defendants are not in the same line of business, as Plaintiff himself admits.  RTI Br. at 2, 12.  Because Defendants are not part of a single enterprise, nor even in the same line of business, RTI cannot, as a matter of law, be liable under Plaintiff's newly-invoked theory of enterprise liability.

Rather than simply accept Judge Edwards' conclusion in his "22 page analysis in *Tel–Oren*," *id*. at 13–14, that the law of nations does not impose the same liability on private actors as it does on states and state actors, *Tel–Oren*, 725 F.2d at 775, a conclusion that has been frequently cited by this and other courts, Plaintiff chooses to rely on obvious *dicta* in Judge Edwards' concurring opinion regarding the *possibility* of private liability under international law, thereby treating such *dicta* as though it were the binding law of this Circuit.  *See* Pl. Br. at 13–14. But Plaintiff ignores Judge Edwards' conclusion that there is no international consensus with respect to private liability under international law.  *See* RTI Br. at 16–17.  In fact, Judge Edwards found that an extension of private liability under international law "would require this court to venture out of the comfortable realm of established international law . . . in which states are the actors."  *Tel–Oren*, 726 F.2d at 792.  Judge Edwards concluded that such an extension would be too tenuous, *id*., and this Court has consistently agreed.

Plaintiff similarly disregards *Sanchez–Espinoza*, 770 F.2d 202.  While acknowledging its holding that the ATS "'does not reach private, non–state conduct of this sort for the reasons stated by Judge Edwards in *Tel–Oren*," Pl. Br. at 13, Plaintiff dismisses *Sanchez–Espinoza* as not "leav[ing] the Court much to work with."  *Id*.  According to Plaintiff, *Sanchez–Espinoza* is "not really about private conduct" but instead about "sovereign immunity . . . hence the cursory dismissal of [the ATS] claim by Judge Scalia."  *Id*. at 13 n.8.  Plaintiff's observation is telling, as is his failure to make any reasoned argument as to why *Sanchez–Espinoza* would not foreclose the instant ATS claim, particularly because the alleged conduct in *Sanchez–Espinoza* included the exact conduct Plaintiff alleges herein to violate the law of nations, namely "summary execution, murder."  *Sanchez–Espinoza*, 770 F.2d at 204–07 (quoting the underlying complaint); *see also* RTI Br. at 17–18.

2.    **Plaintiff's Allegations That RTI Acted Under "Color Of Law" Fail To Support His ATS Claim.**

Plaintiff's naked allegation that RTI "was acting under color of state law in its work to reorganize the Iraqi government," Pl. Br. at 2; *see also id.* at 14–18, is legally insufficient to support ATS jurisdiction because, as previously explained, this Court has rejected color of law and conspiracy theories as substitutes for state action.  RTI Br. at 21–24; *see Saleh*, 436 F. Supp. 2d at 57–58; *Ibrahim*, 391 F. Supp. 2d at 14–15.  This Court has explicitly rejected both color of law and aiding and abetting theories as an "overreach" of ATS jurisdiction and "an end–run around the accepted principle that most violations of international law can be committed only by states."  *Doe I v. Exxon Mobil Corp.*, 393 F. Supp. 2d at 26 (citing *Sanchez–Espinoza*, 770 F.2d at 206–07).  These recent decisions alone demonstrate the continued vitality of *Tel–Oren* and *Sanchez–Espinoza*.

Even if this Court could disregard Circuit precedent, as Plaintiff advocates by citing to a litany of § 1983 and out–of–Circuit ATS cases, Plaintiff's allegations would nevertheless be insufficient.  *See* RTI Br. at 23–24.  First, principles of sovereign immunity would foreclose Plaintiff's ATS claim predicated on allegations that RTI acted under color of *U.S.* law.  Plaintiff himself acknowledges that the ATS claims in *Sanchez–Espinoza* failed in part due to sovereign immunity.  Pl. Br. at 13; *see Sanchez–Espinoza*, 770 F.2d at 207; *Ibrahim*, 391 F. Supp. 2d at 14 n.3 (citing *Sanchez–Espinoza*); RTI Br. at 14–18.  Second, merely contracting with the government does not convert a contractor into an instrumentality of the government.  *See Rendell–Baker v. Kohn*, 457 U.S. 830, 842 (1982).

Further, Plaintiff misapplies the four predominating tests employed in domestic color of law analysis, in large measure, because he confuses U.S. and Iraqi authority.  Pl. Br. at 15.  First,

under the "nexus" test,[6] Plaintiff's allegations of RTI "redesigning the government of Iraq and funding political organizations to support the new government structure" do not equate to a manifestation of state sovereignty such that RTI's conduct may in any way be treated as that of Iraq itself. Pl. Br. at 16. Plaintiff cites *D'Amario v. Providence Civic Center Auth.*, 783 F.2d 1 (1st Cir. 1986),[7] for the proposition that "enforcement of government policies is sufficient to show state action." Pl. Br. at 16. Plaintiff, however, has not alleged (and cannot allege) that RTI, in performing its contractual obligations, acted as an Iraqi decision–maker, enforced any Iraqi policies, or otherwise exerted the authority of the Iraqi state to impose its will on private citizens. The provision of advice, absent any power to make or enforce policy, surely does not constitute, as Plaintiff suggests, "a much stronger government nexus than helping the Providence Civic Center *enforce* its rules." *Id.* (emphasis added). And, to be clear, Plaintiff makes no allegation that RTI interacted with the Iraqi public, held itself out to the public as part of the Iraqi government, or took any action against any member of the Iraqi public in the name of the State.

Second, under the "symbiotic relationship" test, this Court must determine whether Iraq has so far "insinuated itself into a position of interdependence with" RTI that there is a symbiotic relationship between them. *See Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972). In *Burton*, the cumulative "[a]ddition of…activities, obligations and responsibilities…[and] the benefits mutually conferred" established the mutual interdependence between the private entity and the State necessary to find state action. 365 U.S. at 724. Plaintiff makes no such claim of interdependence between RTI

---

[6] *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974) (holding that the State of Pennsylvania was not sufficiently connected with the conduct of a utility company even though the company was heavily regulated by the State and was allowed to exist as a partial monopoly).

[7] Another case cited by Plaintiff, *Gallagher v. "Neil Young Freedom Concert*," 49 F.3d 1442, 1450-51 (10th Cir. 1995), found state action lacking and expressly declined to extend *D'Amario*, noting the lack of physical enforcement of government policy.

and the Iraqi government. He surely has not alleged that RTI is in contractual privity with the government of Iraq, or that RTI receives payment from Iraq. Nor is there any allegation that RTI has ever held itself out as an extension of the Iraqi State.

Third, under the authority of *Dennis v. Sparks,* 449 U.S. 24, 27 (1980), Plaintiff invokes the "joint action" test. In *Dennis*, the Supreme Court held that private parties who bribed a judge were state actors because the act of bribery constituted a joint action aimed at accomplishing a task wholly unique to the state's authority: granting an injunction. *Id.* But the defendants in *Dennis* (through illicit action) actually *secured* the state action. They did more – much more – than give advice; they personally ensured that the state action was effected. That is not the case here. To be sure, RTI is aware of no ATS case or § 1983 case, and Plaintiff cites to none, where application of the joint action test (or *any* of the narrowly–applied "tests" for state action) has transformed a private party's conduct into a "state act" in the absence of the private party controlling, enforcing or effecting a state function.

Finally, under the "public function" test, this Court must analyze whether RTI exercised powers traditionally reserved exclusively to Iraq. *See Jackson*, 419 U.S. at 352. But Plaintiff does not allege that RTI exercised or possessed any state powers at all. By Plaintiff's own allegations, RTI simply provided consulting advice to Iraq, and, in doing so, exerted no managerial control, engaged in no decision–making, and did not interact with the public. Even if Plaintiff had alleged that Iraq acquiesced to RTI's work, such an allegation would be insufficient because a state merely granting "approval of or acquiescence in the initiatives of a private party is not sufficient" to show state action. *Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982).[8]

---

[8] Significantly, Plaintiff does not allege that RTI (or even Unity) personnel wore uniforms of the Iraqi armed services or used official Iraqi equipment, or that any of the affected parties reasonably considered RTI or Unity to be components of the Iraqi government. *See* RESTATEMENT (THIRD) OF FOREIGN RELATIONS § 207, cmt. d (noting that consideration should be given to "whether the affected parties

In sum, even assuming *arguendo* that the color of law theory were applicable in this Circuit to support a violation of the law of nations, Plaintiff fails to establish that RTI acted under color of Iraqi law. His ATS claim must therefore be dismissed.

### 3. Decisions By Other Circuits Do Not Diminish This Circuit's ATS Jurisprudence.

Plaintiff urges this Court to adopt the reasoning of the Second Circuit in *Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995), as well as a number of other out–of–Circuit cases, to allow for private liability under the ATS, *see* Pl. Br. at 18–28, rather than acknowledging this Circuit's firmly–established rule – repeatedly followed by decisions of this Court – that the law of nations does not apply to private actors. RTI does not dispute the general proposition that private individuals may be held liable for war crimes under certain narrow circumstances not present here and in various other fora, but Plaintiff's extended discussion of out–of–Circuit law is a transparent effort to shift the focus from the undisputed law of this Circuit. *See* Pl. Br. at 19–26. Even if Plaintiff believes that this Circuit should reconsider its position, that argument must be addressed to the Circuit, not this Court.

### 4. The ATS Jurisdictional Inquiry Is Made By Reference To The Law Of Nations, Not To U.S. Statutory Law Nor The Practices Of War Crimes Tribunals.

RTI does not dispute that certain federal statutes create criminal penalties, *under U.S. law*, for war crimes, as defined with reference to the Geneva Conventions. Plaintiff discusses this issue at length, *see id.* 20, 25–26, citing the War Crimes Act of 1996, 18 U.S.C. § 2441; the Military Commissions Act, 10 U.S.C. § 948a *et seq.*; and Department of Defense Regulations, 48

---

reasonably considered the action to be official" and "whether the persons acting wore official uniforms or used official equipment."); *see also* Compl. ¶ 16, Pl. Br. at 17-18 ("[T]he individuals who killed [allegedly Unity, not RTI] Ms. Antranick wore khaki uniforms").

C.F.R. § 252.225–7040(e)(2)(ii).[9]   But this is not a criminal prosecution of war crimes under

Federal law.   Plaintiff instead asserts a civil tort claim purporting to base federal jurisdiction

under the ATS.   The question of ATS jurisdiction is made by reference to the law of nations, not

to the law of any one nation, including that of the United States.   *See Sosa v. Alvarez–Machain*,

542 U.S. 692, 733–34 (2004).   Plaintiff's assertion that "U.S. law also attributes individual

liability for these acts," Pl. Br. at 25–26, is thus inapposite to the instant inquiry of whether the

*law of nations* recognizes private liability, wholly separate from any state action, for war crimes

such that ATS jurisdiction may lie.   This Circuit has consistently answered in the negative.

### 5.    Plaintiff Fails To Allege Facts Necessary To Constitute A War Crime Upon Which ATS Jurisdiction Can Be Predicated.

Through extended discussion of the International Criminal Tribunal for the Former

Yugoslavia ("ICTY"), the International Criminal Tribunal for Rwanda ("ICTR"),[10] as well as the

International Criminal Court's ("ICC") Rome Statute, Plaintiff, in typical (unsupported)

overstatement, claims to establish that "RTI's work is a component of a broader

counterinsurgency effort" and that the alleged "incident itself falls into a widespread pattern of

human rights violations by private military contractors operating in Iraq," thus constituting a war

---

[9] Plaintiff's reference to the Military Commissions Act, 10 U.S.C. § 948a *et seq.*, which "establishes procedures governing the use of military commissions to try alien unlawful enemy combatants engaged in hostilities against the United States for violations of the law of war and other offenses triable by military commission," is misplaced.   *See* Pl. Br. at 25-26.   This is not a military commission trial, and RTI is not comprised of "alien unlawful enemy combatants."   The Department of Defense Regulations, 48 C.F.R. § 252.225-7040(e)(2)(ii), are likewise irrelevant and would not apply to RTI, in any event, because RTI is not a Department of Defense contractor and does not have "personnel . . . authorized to accompany U.S. Armed Forces deployed outside the United States."   *See* 48 C.F.R. § 252.225-7040(b)(1), (b)(3).

[10] The Court should not consider the "unorthodox practices" of the ICTY and ICTR for the independent reason that they do not reflect customary international law since the statutes creating them "are not limited by international law.   Instead, these custom-made statutes, which address particular international crises are *sometimes contrary to evolving norms of customary international law*."   *See Khulumani v. Barclay Nat'l Bank, Ltd.*, 504 F.3d 254, 331 (2d Cir. 2007) (Korman, J., concurring in part, dissenting in part) (internal quotation marks omitted).

crime for purposes of establishing federal court jurisdiction under the ATS.  Pl. Br. at 9–10, 20–23.  Despite his best efforts to convert RTI's consulting work in Iraq into a paramilitary counterinsurgency movement exercising governmental authority, Plaintiff fails to allege facts sufficient to convert this tragic incident into a "war crime."  The nexus between the alleged incident and the conflict in Iraq is simply too tenuous.  *See* RTI Br. at 24–28.  For this independently sufficient reason, the Court must dismiss Plaintiff's ATS claim.

*    *    *    *

According to Plaintiff, RTI has misconstrued this Court's role in exercising ATS jurisdiction, as articulated by the Supreme Court in *Sosa*, asserting that RTI "cites 18th century standards as if they were the law today."  Pl. Br. at 23–24, 27–28.  But this Court has heeded the Supreme Court's admonition to exercise ATS jurisdiction cautiously and with restraint, repeatedly declining to expand private liability under the law of nations beyond the 18th–century paradigmatic claims articulated by the Supreme Court in *Sosa*, *see* RTI Br. at 20–23, which Plaintiff characterizes as "hav[ing] little to do with contemporary international law or any contemporary ATS cases."  Pl. Br. at 27.  In so arguing, Plaintiff ignores the 2005 case of *Mwani v. Bin Ladin*, in which this Circuit held that the plaintiffs had stated an ATS claim for infringements of the rights of ambassadors against Osama Bin Ladin based on al Qaeda's attack on the U.S. Embassy in Nairobi.  417 F.3d 1 (D.C. Cir. 2005); *see also Mwani v. Bin Ladin*, No. 99–125, 2006 WL 3422208, *4 (D.D.C. Sept. 28, 2006).  Plaintiff urges this Court to "evaluate status [sic] of international law at the time the lawsuit is brought to determine whether it alleges a violation of norms of international law."  Pl. Br. at 27.  Plaintiff's unprecedented claim that the law of nations creates private liability for any and all deaths occurring in a conflict zone does not meet *any* standard of international law, either today or in 1789 when the ATS was drafted.  *See*

16

*Saleh*, 436 F. Supp. 2d at 57–58 n.3.  Accordingly, this Court must dismiss Plaintiff's ATS claim

for lack of subject matter jurisdiction.

## IV.    PLAINTIFF'S TORTURE VICTIM PROTECTION ACT CLAIM MUST BE DISMISSED AS A MATTER OF LAW.

### A.    Corporations Are Not "Individuals" Under The TVPA.

Although Plaintiff acknowledges the TVPA's explicitly–limited application to

"*individuals* who, under actual or apparent authority of any foreign nation, subject an individual

to torture or extrajudicial killing," 28 U.S.C. § 1350 (emphasis added), Plaintiff nonetheless

attempts to apply the TVPA to RTI, a corporation, even while conceding that his is the minority

approach.  And while Plaintiff correctly notes that "in *this Circuit*, the question whether the

[TVPA] applies to corporations has not been decided," Pl. Br. at 28 (emphasis added), he

conspicuously fails to address this *District's* admonition against extending TVPA liability in

*Doe I,* wherein this Court noted that "the plain reading of the statute strongly suggests that it

covers only human beings, and not corporations."  393 F. Supp. 2d at 28.

This Circuit has unequivocally recognized that "[i]n common usage, 'individual'

describes a *natural person*."  *In re North*, 12 F.3d 252, 254–55 (D.C. Cir. 1994) (emphasis

added) (citing Webster's Third New International Dictionary 1152 (1981) (defining "individual"

as "a single human being as contrasted with a social group or institution")).[11]  Further, case law

analyzing the definition of the word "person" is instructive, as many statutes define "person" as

including *both* individuals and corporations. *See, e.g., Dinco v. Dylex Ltd.*, 111 F.3d 964,

974 (1st Cir. 1997) (emphasis added) (noting the definition of "person" includes "an *individual*,

---

[11]  Citing to out-of-Circuit cases, Plaintiff obliquely avows that "[t]here is no distinction in *ATS jurisprudence* between corporations and natural person."  Pl. Br. at 28 (emphasis added).  But Plaintiff improperly conflates jurisprudence applying the ATS with those cases analyzing the TVPA.  Only the latter refers to "individuals," thereby rendering ATS jurisprudence on this point irrelevant.

*corporation*, partnership, association, joint stock company" under the New Hampshire Uniform Securities Act); *Wolverine Power Co. v. F.E.R.C.*, 963 F.2d 446, 450 (D.C. Cir. 1992) (emphasis added) (noting the definition of "person" includes "an *individual* or a *corporation*" in the Federal Power Act); *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 668 n.5 (5th Cir. 1989) (emphasis added) (recognizing that the definition of "person" includes "an *individual*, firm, *corporation*, association, partnership" under the CERCLA). If the plain and common meaning of "individual" also includes "corporations," each of these statute's definitions would be redundant. This Court should not interpret "individual" to produce such an incongruous result.

Plaintiff attempts to rely on the only two district court decisions adopting Plaintiff's position – *Estate of Rodriguez v. Drummond Co.*, 256 F. Supp. 2d 1250, 1266–67 (N.D. Ala. 2003) and *Sinaltrainal v. Coca–Cola Co.*, 256 F. Supp. 2d 1345, 1358–59 (S.D. Fla. 2003) – but fails to respond to the three deficiencies in those decisions highlighted in RTI's Motion to Dismiss. *See* RTI Br. at 30 n.23.[12] Perhaps most surprising is Plaintiff's total failure to address all the cases cited by RTI that articulate the *majority* rule, endorsed by this Court, that the TVPA's application to "individuals" precludes its application to corporations. *See id.* at 30–31.[13] Rather,

---

[12] RTI noted that both *Drummond* and *Sinaltrainal*: (l) cite to and rely on the Supreme Court's holding in *Clinton v. City of New York*, 524 U.S. 417, 428-29 nn.13-14 (1998), for the proposition that the term "individual" may be synonymous with the term "person" for purposes of the Line Item Veto Act, though they both ignore the high Court's affirmation that in *"ordinary* usage ... 'person' often has a broader meaning in the law... ('person' includes corporations, companies... )"; (2) fail to address the need to define uniformly the same term repeated in a statute; (3) ignore the well-settled standard of statutory interpretation that the plain meaning of legislation controls by finding instead that Congress implicitly intended to extend the reach of the statute to include corporations. *See Sinaltrainal*, 256 F. Supp. 2d at 1358-59; *Estate of Rodriguez*, 256 F. Supp. 2d at 1266-67.

[13] Plaintiff notes that the Fifth Circuit, in reviewing the district court's decision in *Beanal v. Freeport-McMoRan, Inc*., 969 F. Supp. 362, 382 (E.D. La. 1997), "pointedly did not affirm the lower court's holding that the term 'individual' as used in the TVPA does not include corporations." Pl. Br. at 29 (citing *Beanal v. Freeport-McMoran, Inc*., 197 F.3d 161 (5th Cir. 1999)). But the court of appeals did not find that the district court's decision was in error, and the district court decision stands as good precedent.

18

Plaintiff simply rebukes these decisions as being handed down "with no definitive authority" and "reluctance," but fails to elaborate further. Pl. Br. at 30.

Finding no support for his suggested expansive reading of the TVPA in the Act itself, Plaintiff resorts to the statement of a single Senator to support his conclusion that this Court should reverse the position it assumed in *Doe I*, urging instead that this Court adopt the minority rule. According to Plaintiff, the TVPA should "be construed as broadly as possible" based on a statement by Senator Specter, a cosponsor of the TVPA, in the Congressional Record. Pl. Br. at 30. But Plaintiff's reliance on Senator Spector's statement is selective, as Plaintiff chooses to delete altogether the Senator's express caution regarding the breadth of the Act: "Let me emphasize that the bill is a *limited* measure. It is estimated that *only a few of these lawsuits will ever be brought*." 137 Cong. Rec. S1369–01, 1991 WL 9635 at *S1378–79 (Statements on Introduced Bills and Joint Resolutions) (January 31, 1991) (emphasis added). If examination of legislative intent were warranted at all (and given the plain, common meaning of "individual" within the statute, it is not), Plaintiff bears a heavy burden in establishing that this is "the rare case[ ] in which literal application of [a] statute will produce a result demonstrably at odds with the intention of its drafters." *United States v. Ron Pair Enterpr.*, *Inc.*, 489 U.S. 235, 242 (1989).

In fact, the TVPA's legislative history is rife with Congressional fear of an overly–expansive reading of the TVPA, and Congress's desire to ensure that "the courthouse door would not be opened wide to suits based upon any type of violent international crime." 137 Cong. Rec. S1369–01, 1991 WL 9635 at *S1378; *see also id.* at 1378–79 ("[T]he bill would *exclude lawsuits* against higher officials having no connection to the torture. The bill as revised also includes a *limitation* on the definition of what constitutes mental pain and suffering") (emphasis

added).  That Plaintiff persists in asserting Congress intended an expansive application of the TVPA demonstrates his fundamental misapprehension of the Act's purpose.

Ultimately, it is Plaintiff's silence that speaks the loudest.  Plaintiff says nothing (except for an unavailing footnote accusing Congress of "sloppy drafting") of the rule of statutory construction that "identical words used in different parts of the same act" are presumed to have an identical meaning.  *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003).  Plaintiff offers no plausible explanation as to why this Court should read "individual" to include corporations when referencing those who may be held liable under the TVPA, but then apply a different definition of "individual" when reading the portion of the TVPA identifying the victims of actionable conduct.  Simply, there is a reason why Plaintiff's proffered reading of the TVPA represents a minority view, yet he has failed to address those reasons, or otherwise explain why this Court should reverse its position as set forth in *Doe I*.  393 F. Supp. 2d at 28.[14]

**B.    The Alleged Incident Does Not Constitute An "Extrajudicial" Killing Under The TVPA.**

Plaintiff acknowledges that, to make a TVPA claim, he must also establish that RTI subjected Ms. Antranick to an "extrajudicial killing," which is defined, in pertinent part, as a "*deliberated* killing not authorized by previous judgment pronounced by a regularly constituted court." 28 U.S.C. § 1350 note (emphasis added).  But the complaint fails to include any allegation that Defendants "deliberated" or preplanned the alleged shooting of Ms. Antranick.

---

[14] Of course, given Senator Specter's observation that "the bill would *exclude lawsuits* against higher officials having no connection to the torture," it is hardly surprising that the Act would likewise decline to impute actionable conduct under the TVPA to a corporation.  Rather, Congress made a determination that the liability under the TVPA is personal to the "individual" wrongdoers, not to the officers that supervise them, or to the companies who pay them.  The unintended collateral damage to a corporation by allowing certain actions to go forward should be carefully contemplated and weighed against the minimal public benefits generated by such actions.  *Cf.* Elizabeth K. Ainslie, *Indicting Corporations Revisited: Lessons of the Arthur Andersen Prosecution*, 43 AM. CRIM. L. REV. 107, 109, 110 (2006).

Indeed, in illustrating the narrow circumstances in which the TVPA has been applied, RTI pointedly observed that courts have applied the TVPA only in those instances in which the deliberation was most obvious, *e.g.*, assassinations, airplane bombings, and executions of political prisoners. *See* RTI Br. at 34.[15]  Plaintiff has chosen to ignore these cases, content instead to read the "deliberation" requirement out of the Act.

Plaintiff cites to this Court's decision in *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 17 (D.D.C. 1998).  But *Flatow*, reinforcing RTI's central position that "deliberated" acts require a degree of planning and targeting, looked to Black's Law Dictionary's definition of "deliberate," noting that the actionable conduct must be "[c]arried on coolly and steadily, especially according to a preconceived design; given to weighing facts and arguments with a view to a choice or decision; careful in considering the consequences of a step." *Id.* (citing Black's Law Dictionary 426–27 (6th ed. 1990)).  If this case were to go to trial, the parties could present evidence demonstrating that the reaction of Unity's personnel to an approaching vehicle was appropriate or not appropriate, but, for purposes of the instant motion to dismiss, it is enough to note that Plaintiff did not allege the existence of a preconceived plan to kill Ms. Antranick.  A car approached the Unity vehicle and the Unity personnel allegedly reacted.  Even accepting Plaintiff's allegations as true, the conduct here does not give rise to a TVPA claim.

---

[15] *See*, *e.g.*, *In re Yamashita*, 327 U.S. 1, 29 (1946) (addressing claims of a former Japanese General who was imprisoned for violations of the law of war for "[s]tarvation, execution or massacre without trial, torture, rape, murder and wanton destruction of property" at the hands of the Japanese forces under the petitioner's command during World War II); *Hilao v. Estate of Marcos*, 103 F.3d 767, 776-77 (9th Cir. 1996) (addressing claims arising from thousands of instances of torture, summary execution, and "disappearance" committed by the Philippine military and paramilitary forces under the command of Ferdinand Marcos during his nearly 14-year rule of the Philippines); *Kadic*, 70 F.3d at 237 (claims against Radovan Karadzic, the self-proclaimed president of unrecognized Serbian Republic of Bosnia-Herzegovina, for "genocide, rape, forced prostitution and impregnation, torture and other cruel, inhuman, and degrading treatment, assault and battery, sex and ethnic inequality, summary execution, and wrongful death"); *see also Xuncax v. Gramajo*, 886 F. Supp. 162, 169 (D. Mass. 1995); *Paul v. Avril*, 901 F. Supp. 330, 335 (S.D. Fla. 1994); *Forti v. Suarez-Mason*, 672 F. Supp. 1531, 1537-38 (N.D. Cal. 1987).

Finally, Plaintiff cannot save his TVPA claim by asserting, frivolously, that Unity's alleged conduct was "part of a pattern of indiscriminate brutality by private military contractors operating in Iraq." Pl. Br. at 33. Plaintiff has alleged that Unity, in its five–plus years in Iraq, has been involved in just *one* other incident resulting in a death. *See* Compl. ¶ 8; Pl. Br. at 34. But, as noted above, Plaintiff himself alleges that the death there (of Mr. Kays Juma) occurred after the victim "failed to stop at a security checkpoint." *Id*. ¶ 8. There is no allegation that the alleged shooting death of Mr. Juma was "indiscriminate." Given the lack of prior bad acts by Unity, Plaintiff resorts yet again to alleged prior bad acts of "private military contractors" who have no relationship to RTI and nothing to do with this action. *Id*. ¶¶ 35–42. That Plaintiff relies on the acts of strangers to this litigation is itself an admission that he cannot state a TVPA claim by reference to the conduct of the defendants in *this* case. The TVPA claim should be dismissed.

## C.    RTI And Unity Were Not Acting Under Actual Or Apparent Authority Or Under The Color Of Law Of Any Foreign Nation.

Plaintiff fails to address any of RTI's arguments regarding the TVPA's color of law requirement. Instead, Plaintiff merely references his prior ATS argument, Pl. Br. at 14–18, generically claiming "the key element of a TVPA claim [has been met]; that the wrongful action was done under color of state law." *Id*. at 29. Plaintiff readily acknowledges that RTI has contracts only with the U.S. government, asserting that RTI shares a "symbiotic relationship with the *U.S. government*." *Id*. at 17. This assertion proves fatal to Plaintiff's TVPA claim (as well as his ATS claim), as the TVPA is explicitly limited to those who act "under actual or apparent authority, or color of law, of any *foreign nation*." 28 U.S.C. § 1350 note (emphasis added).

Plaintiff's claims fall short under any formulation of the color of law analysis. *See* discussion *supra* at Part III.A.2. Nor does Plaintiff make any attempt to explain the factual disparities between the numerous cases cited by RTI in which courts have held that plaintiffs

sufficiently alleged state action under the TVPA and the bare allegations made in his complaint.
RTI Br. at 33.  Finally, Plaintiff fails even to acknowledge RTI's comparison of Plaintiff's
claims to the much more specific and factually–based allegations in *Doe I,* which this Court
nevertheless deemed insufficient to establish "color of law" under the TVPA.  393 F. Supp. 2d at
26.  Plaintiff's attempts to skirt this Court's well–established recognition of the TVPA's limited
application to "officials or agents of *foreign* states" ultimately prove unavailing.  *Holland v.
Islamic Republic of Iran*, 496 F. Supp. 2d 1, 16 (D.D.C. 2005) (emphasis added).  Plaintiff's
TVPA claim thus fails as a matter of law and must be dismissed.

## V.    ANY SURVIVING CLAIMS SHOULD BE TRANSFERRED TO THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA.

This Court must accord Plaintiff's choice of forum only "minimal" deference because the
District of Columbia is not Plaintiff's "home state."  RTI Br. at 43.  Plaintiff entirely ignores the
cases cited by RTI – and the many other cases – that stand for this black–letter law proposition.

That Plaintiff chooses to ignore the reasons given by Defendant in favor of transferring to
North Carolina any surviving claims hardly proves that RTI has "not articulated any compelling
reasons to move the case."  Pl. Br. at 36.   Indeed, Plaintiff has offered *no counter–evidence* to
rebut RTI's showing that there are only minimal ties between this judicial district and the
dispute, nor is there any evidence located in this district that compels the Plaintiff's choice of
forum.  It is in fact admitted that North Carolina is RTI's place of incorporation and the
jurisdiction in which RTI maintains its headquarters and its principal place of business.  It is also
admitted that (1) more than 2200 of RTI's 2600 employees work in its North Carolina
headquarters; (2) the RTI–Unity Contract was negotiated between Unity representatives in
Dubai, the United Arab Emirates, and RTI representatives in its North Carolina office; (3) the
Contract is administered through RTI's International Contracts and Procurement Department,

which is located in RTI's North Carolina office; (4) any communication outside of Iraq under and pertaining to the Contract is overwhelmingly between RTI's North Carolina office and Unity's Dubai office; (5) payments to Unity for work in connection with the RTI–Unity Contract are made through RTI's North Carolina office; and (6) the Contract designates a contractual representative for RTI in RTI's North Carolina office and specifies that North Carolina law governs. Of course, neither Plaintiff nor Unity resides in this district; the injury did not occur in this district, and the operative events giving rise to the claims did not arise here.

Plaintiff's response is transparently thin. First, Plaintiff alleges that this suit should be heard in the District of Columbia because it is "not clear" whether Unity can be sued in North Carolina. Pl. Br. at 34. This is hardly a compelling reason, however, because it is equally unclear that Plaintiff can sue Unity in *this* district. *See generally* Unity's Memorandum of Law in Support of Its Motion to Dismiss the Complaint (arguing that Unity is not subject to personal jurisdiction in Washington D.C.). In fact, as noted above, any communication outside of Iraq relating to the Contract occurred overwhelmingly between RTI's *North Carolina* office and Unity's Dubai office, and the RTI personnel who communicate with Unity are likewise primarily in *North Carolina*. Also, RTI pays Unity through RTI's *North Carolina* office.

Plaintiff's remaining arguments may be quickly dismissed. Rather than supporting this Court's exercise of jurisdiction, that co–defendants argue that the matter be transferred to different venues serves only to demonstrate that this judicial district is convenient to neither. Nor is Plaintiff's conclusion that witnesses abroad will find it easier to fly to Washington than to North Carolina. Most of the witnesses will probably testify by deposition (because this Court does not have personal jurisdiction over them), and RTI's witnesses have not yet been identified and would in any event more likely be found in North Carolina. Finally, the location of USAID

24

is of no moment.  USAID is not a party to this litigation, nor for that matter is the U.S. Army or the U.S. Federal Government.  Pl. Br. at 36.

**VI.    RTI'S MOTION TO DISMISS COUNT VII, AND RTI'S MOTION TO STRIKE PLAINTIFF'S PRAYERS FOR INJUNCTIVE AND DECLARATORY RELIEF, SHOULD BE GRANTED BECAUSE THEY ARE *UNOPPOSED*.**

Not only has Plaintiff failed to state a cause of action for negligent infliction of mental distress (Count VII) under the state laws invoked by Plaintiff (RTI Br. at 36–40), but also Plaintiff has *not opposed* RTI's motion to dismiss this Count.  Count VII should therefore be dismissed.

Additionally, Plaintiff lacks standing to seek injunctive relief on behalf of third parties, and his request for declaratory relief should also be stricken because such relief is appropriate to delineate only ongoing and forward–looking legal rights and obligations, *not* as a substitute for traditional fact–finding of past events.  *Id*. at 40–42.  Plaintiff does not dispute that the requested prayers for relief are foreclosed as a matter of law.  As such, Plaintiff's requests for declaratory and injunctive relief should be stricken.

### CONCLUSION

For the foregoing reasons, RTI respectfully requests that this Court dismiss Plaintiff's complaint in its entirety.  Should this Court dismiss fewer than all of the counts, RTI requests that this Court strike Plaintiff's request for declaratory and injunctive relief and transfer the remainder of the case to the U.S. District Court for the Eastern District of North Carolina.

Respectfully submitted,


   /s/ Eric W. Bloom
Eric W. Bloom (Bar No. 417819)
Karen Sugden Manley (Bar No. 495029)
Nicole Y. Silver (Bar No. 472630)
Sarah E. Saucedo*
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C.  20006
Phone:  (202) 282–5743
Fax:  (202) 282–5100

Mark A. Ash*
Clifton L. Brinson (Bar No. 465178)
SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, LLP
2500 Wachovia Capitol Center (27601)
P.O. Box 2611
Raleigh, NC 27601–2611
Phone:  (919) 821–1220
Fax:  (919) 821–6800

*Counsel for Defendant RTI*

*\*Admitted pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 8, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Nicole Silver

_____

Nicole Silver

27