IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

JALAL ASKANDER ANTRANICK,

                              Plaintiff,

-against-

RESEARCH TRIANGLE GROUP
INTERNATIONAL and UNITY RESOURCES
GROUP, L.L.C.,

                              Defendants.

Civil Case No. 1:08-cv-00595 (PLF)

Hon. Paul L. Friedman

ORAL ARGUMENT REQUESTED

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THE MOTION OF DEFENDANT UNITY
RESOURCES GROUP PTE. LTD. TO DISMISS THE COMPLAINT**

CHADBOURNE & PARKE LLP
Attorneys for Defendant
  Unity Resources Group Pte. Ltd.
30 Rockefeller Plaza
New York, New York 10112
Tel. (212) 408-5100
Fax (212) 541-5369

Robert A. Schwinger (Bar No. NY0092)
Thomas E. Butler
Jonathan C. Cross
Daniel J. Greenwald III (Dubai)
William S. D'Amico (Bar No. 2694) (D.C.)

Of Counsel

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................ii

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT ........................................................................................................2

    I.     UNITY IS NOT SUBJECT TO GENERAL JURISDICTION IN
           THIS DISTRICT ...............................................................................3

           A.    Unity was Not Properly Served With Process Within the
                 District of Columbia ....................................................3

           B.    Unity is Not "Doing Business" in the District of Columbia ...........5

    II.    THERE IS NO BASIS FOR EXERCISING SPECIFIC
           JURISDICTION OVER UNITY ...............................................................9

           A.    Plaintiff's Claims Do Not Arise from a Contract in This
                 District ....................................................................10

           B.    Plaintiff Has Not Properly Alleged "Conspiracy"
                 Jurisdiction ................................................................15

           C.    Rule 4(k)(2) Provides No Basis for Jurisdiction Here ................18

    III.    UNITY HAS NOT WAIVED ITS RIGHT TO RAISE FORUM
           *NON CONVENIENS* ISSUES OR SEEK JUDGMENT ON THE
           PLEADINGS ...................................................................20

CONCLUSION ....................................................................................................23

**TABLE OF AUTHORITIES**

**CASES**

Pages

\*<u>AGS Int'l Servs. S.A</u>. v. <u>Newmont USA Ltd</u>., 346 F. Supp. 2d 64
(D.D.C. 2004) .................................................................................. 7, 9, 15

\*<u>Alatishe</u> v. <u>Irwin</u>, Civ. A. No. 86-479, 1987 WL 17666 (D.D.C. Sept. 18, 1987).... 17, 18

\*<u>Bayles</u> v. <u>K-Mart Corp</u>., 636 F. Supp. 852 (D.D.C. 1986) ............................................. 10

<u>Bell Atl. Corp</u>. v. <u>Twombly</u>, 127 S. Ct. 1955 (2007) ...................................................... 15

<u>Blumenthal</u> v. <u>Drudge</u>, 992 F. Supp. at 44 (D.D.C. 1998) ............................................. 2, 3

<u>Central States, Southeast and Southwest Areas Pension Fund</u> v. <u>Reimer Express
World Corp</u>., No. 99 C 2524, 2000 WL 1015937 (N.D. Ill. Jan. 31, 2000) ............... 19

\*<u>City of  Moundridge, KS</u> v. <u>Exxon Mobil Corp</u>., 471 F. Supp. 2d 20
(D.D.C. 2007) ........................................................................................... 5, 6

<u>Cresser</u> v. <u>American Tobacco Co</u>., 174 Misc. 2d 1, 662 N.Y.S.2d 374 (1997) ............... 17

<u>Del Monte Corp</u>. v. <u>Everett S.S. Corp., S/A</u>, 402 F. Supp. 237 (N.D. Cal. 1975) .............. 7

<u>First Chicago Int'l</u> v. <u>United Exch. Co., Ltd</u>., 836 F.2d 1375 (D.C. Cir. 1988) ............... 15

<u>Ghanem</u> v. <u>Kay</u>, 624 F. Supp. 23 (D.D.C. 1984) ................................................................ 6

\*<u>Gonzalez</u> v. <u>Internacional De Elevadores, S.A</u>., 891 A.2d 227 (D.C. 2006) .............. 3, 11

\*<u>Gorman</u> v. <u>Ameritrade Holding Corp</u>., 293 F.3d 506 (D.C. Cir. 2002) ........................... 5

\*<u>Gowens</u> v. <u>Dyncorp</u>, 132 F. Supp. 2d 38 (D.D.C. 2001) ............................................... 11

<u>Halberstam</u> v. <u>Welch</u>, 705 F.2d 472 (D.C. Cir. 1983) .................................................... 17

\*<u>Hargrove Displays, Inc</u>. v. <u>Rohe Scientific Corp</u>., 316 A.2d 330 (D.C. 1974) ............. 4, 5

\*<u>Helicopteros Nacionales de Columbia, S.A</u>. v. <u>Hall</u>, 466 U.S. 408 (1984) ........ 5, 8, 9, 12

<u>Hughes</u> v. <u>A.H. Robins Co</u>., 490 A.2d 1140 (D.C. 1985) .................................................. 6

**Pages**

Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984) ..................................................12

Kopff v. Battaglia, 425 F. Supp. 2d 76 (D.D.C. 2006)..................................................2, 3

*L & L Constr. Assocs. Inc. v. Slattery Skanska, Inc., No. Civ. 05-1289,
    2006 WL 1102814 (D.D.C. Mar. 31, 2006)..............................................................21

Landell v. Northern Pac. Ry. Co., 98 F. Supp. at 479 (D.D.C. 1951)...............................6

Lehigh Portland Cement Co. v. Ornstein, 334 F. Supp. 1032 (D.D.C. 1971) ...................5

Lindsey v. U.S., 448 F. Supp. 2d 37 (D.D.C. 2006).......................................................21

Lony v. E.I. Du Pont de Nemours & Co., 935 F.2d 604 (3d Cir. 1991)..........................21

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.,
    175 F. Supp. 2d 593 (S.D.N.Y. 2001) ......................................................................17

Meyers v. Smith, 460 F. Supp. 621 (D.D.C. 1978)......................................................7, 8

Mwani v. Bin Laden, 417 F.3d 1 (D.C. Cir. 2005) ........................................................19

Okusami v. Psychiatric Inst. of Washington, Inc., 959 F.2d 1062 (D.C. Cir. 1992) ........18

In re Orshansky, 804 A.2d 1077 (D.C. 2002)..................................................................7

Overseas Partners, Inc. v. Progen Musavirlik ve Yonetim Hizmetleri,
    Ltd. Sikerti, 15 F. Supp. 2d 47 (D.D.C. 1998) .............................................. 14, 15, 21

Palmer v. Kawaguchi Iron Works, Ltd., 644 F. Supp. 327 (N.D. Ill. 1986)..................7, 9

Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952)......................................8, 9

Richards v. Duke Univ., 480 F. Supp. 2d 222 (D.D.C. 2007) ........................................16

*Roz Trading Ltd v. Zeromax Group, Inc., 517 F. Supp. 2d 377 (D.D.C. 2007)...........7, 9

Shoppers Food Warehouse v. Moreno, 746 A.2d 320 (D.C. 2000) ................................12

*Son v. Kim, Civ. A. No. 05-2318 (JR), 2007 WL 950085
    (D.D.C. Mar. 28, 2007)...........................................................................................20

**Pages**

Sonnenreich v. Phillip Morris, Inc., 929 F. Supp. 416 (S.D. Fla. 1996) ..........................17

State of Maryland v. Eastern Air Lines, 81 F. Supp. 345 (D.D.C. 1948).......................8, 9

Stromberg v. Marriott Int'l, Inc., 474 F. Supp. 2d 547 (D.D.C. 2007) ...........................22

*Triplex Commc'ns, Inc. v. Riley, 900 S.W.2d 716 (Tex. 1995)....................................17

Willis v. Willis, 655 F.2d 1333 (D.C. Cir. 1981)......................................................10, 13

**STATUTES**

28 U.S.C. § 1404(a) ...............................................................................................22

D.C. Code § 13-334...........................................................................................3, 5, 6

D.C. Code § 13-423.........................................................................................10, 12

D.C. Code § 13-423(a).....................................................................................10, 14

D.C. Code § 29-101.99(e)(2) .................................................................................3, 4

D.C. Code § 29-101.108(c)......................................................................................4

**RULES**

Fed. R. Civ. P. 4(k)(2) ..............................................................................18, 19, 20

Fed. R. Civ. P. 8 ....................................................................................................15

Fed. R. Civ. P. 12 ..................................................................................................23

Fed. R. Civ. P. 12(b)..............................................................................................21

Fed. R. Civ. P. 12(b)(1)-(5)....................................................................................21

Fed. R. Civ. P. 12(b)(2) ..................................................................................2, 9, 22

Fed. R. Civ. P. 12(c)........................................................................................21, 23

Fed. R. Civ. P. 12(g)..............................................................................................21

Fed. R. Civ. P. 12(h) ...................................................................................................21

Fed. R. Civ. P. 12(h)(2) ..............................................................................................21

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JALAL ASKANDER ANTRANICK,<br><br>                                        Plaintiff,<br><br>                    -against-<br><br>RESEARCH TRIANGLE INSTITUTE,<br>INTERNATIONAL and UNITY RESOURCES<br>GROUP, L.L.C.,<br><br>                                        Defendants. | Civil Case No. 1:08-cv-00595 (PLF)<br><br>Hon. Paul L. Friedman |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF DEFENDANT UNITY RESOURCES GROUP PTE. LTD. TO DISMISS THE COMPLAINT

Defendant Unity Resources Group Pte. Ltd., sued herein as Unity Resources Group, L.L.C. ("Unity"), respectfully submits this Reply Memorandum of Law in Further Support of its Motion to Dismiss the Complaint (the "Complaint" or "Compl.").

## PRELIMINARY STATEMENT

Plaintiff has failed to show that Unity is subject either to general or specific personal jurisdiction in this District, for at least four reasons. *First*, Unity has never been validly served with process within the District of Columbia, and such service is a prerequisite to the exercise of general personal jurisdiction over Unity. *Second,* Unity is not "doing business" in this District as is required to support the exercise of general personal jurisdiction. Neither Unity's part-time "rent-a-desk" arrangement in this District nor the activities of Unity's part-time independent contractor, David Rolfes, are sufficient

to create general personal jurisdiction under applicable precedent. *Third,* there is no basis for exercising specific jurisdiction over Unity, because Plaintiff's claims do not "arise from" any contact by Unity with this District. Plaintiff's theory that a cause of action "arises from" a contract with the United States Government whenever a stranger to the contract asserts tort claims against an alleged "subcontractor" has been roundly rejected in this District. *Finally*, Plaintiff's "conspiracy" theory of jurisdiction is full of holes: Plaintiff has not pled conspiracy claims with the particularity required by this Court's precedents, but rather only a legally defective (if not inherently illogical) supposed conspiracy to commit negligence, and Plaintiff identifies no acts in furtherance of this alleged "conspiracy" which occurred within this District. This case, involving claims brought on behalf of an Iraqi decedent against a foreign corporation, arising from events which occurred in Baghdad, has no business being adjudicated in a U.S. court.

## <u>ARGUMENT</u>

On a motion such as this, it is the Plaintiff's burden to "establish[] that this Court has personal jurisdiction over defendant[s] . . . and alleg[e] specific facts upon which personal jurisdiction may be based." <u>Blumenthal</u> v. <u>Drudge</u>, 992 F. Supp. 44, 53 (D.D.C. 1998). The Plaintiff may not "rely on conclusory allegations" to establish personal jurisdiction, <u>Kopff</u> v. <u>Battaglia</u>, 425 F. Supp. 2d 76, 80-81 (D.D.C. 2006), but rather must "bear the burden of establishing personal jurisdiction" and "must allege 'specific facts upon which personal jurisdiction may be based.'" <u>Id</u>. Moreover, on a Rule 12(b)(2) motion, "the Court need not treat all of plaintiffs' allegations as true," but rather "may receive and weigh affidavits and any other relevant matter to assist it in determining the

jurisdictional facts." Id. at 81.  Under these basic principles, personal jurisdiction fails as

to Unity and the action as to Unity should therefore be dismissed.[1]

**I**

**UNITY IS NOT SUBJECT TO GENERAL JURISDICTION IN THIS DISTRICT**

**A.    Unity was Not Properly Served With**
**Process Within the District of Columbia**

Unable to dispute that jurisdiction under D.C. Code § 13-334 is unavailable unless

a defendant is physically served within the District of Columbia, see Gonzalez v.

Internacional De Elevadores, S.A., 891 A.2d 227, 233 (D.C. 2006), Plaintiff contends

that service upon Unity within the District was somehow accomplished through the

provision of a copy of the Summons and Complaint to an unnamed employee of the D.C.

Department of Consumer and Regulatory Affairs ("DCRA"), who allegedly accepted a

$15 fee from Plaintiff.  (Opp. Mem. at 6.)  Plaintiff contends that service was therefore

proper under D.C. Code § 29-101.99(e)(2), which provides that service may be made

upon an unregistered nonresident corporation "transacting business" in this District via

---

[1]    Plaintiff tries to suggest that Unity is attempting something mysterious on this motion
by its reference to "Unity Resources Group Pte. Ltd., sued herein as Unity Resources
Group, L.L.C."  (See Opp. Mem. at 1 n.1.)  All this means is that Plaintiff's caption
refers to a "Unity Resources Group, L.L.C." even though the entity which contracted
with defendant RTI (which plainly is the entity Plaintiff intends to sue, see Compl.
¶ 21) is called "Unity Resources Group Pte. Ltd." (see, e.g., Gaul Decl. ¶ 3).  Rather
than waste the Court's time with childish pettifoggery over Plaintiff's minor error —
which would inevitably be rectified in due course anyway — the relevant entity
simply stepped forward to address the issues on this motion under its proper name.

3

service upon "the Mayor" or "a person having charge of the Mayor's office." See also D.C. Code § 29-101.108(c).  Plaintiff's purported service upon an employee of the DCRA is a nullity because (i) Plaintiff has made no showing that this unnamed DCRA employee is "the Mayor" of the District of Columbia or a "person having charge of the Mayor's Office," and (ii) Plaintiff offers no credible response to the line of authority holding that § 29-101.99(e)(2) is available only where a nonresident corporation is "doing business" in the District such that it is subject to a District of Columbia registration requirement.

First, Plaintiff does not and cannot dispute that under § 29-101.99(e)(2), service may be made only upon "the Mayor" or a "person having charge of the Mayor's office." Rather than make any showing that any DCRA employees are "the Mayor," or "in charge of the Mayor's office," or have ever been given the power to accept nonresident corporation service of process by operation of positive law, Plaintiff simply notes that DCRA "accepted the Summons and Complaint and charged . . . a $15.00 fee."  (Opp. Mem. at 6.)  Plaintiff might just as well have served the Department of Motor Vehicles or the Parks Department, where he might also have found a District employee willing to accept papers and take $15.  Plaintiff has made no showing of service upon "the Mayor" or his "office" as required by law.

Second, even if Plaintiff had served the Mayor or the Mayor's office, such service is available only when a foreign corporation regularly "transacts business" in the District of Columbia and is therefore subject to a registration obligation.  See Hargrove Displays, Inc. v. Rohe Scientific Corp., 316 A.2d 330, 330 (D.C. 1974) (defendant "was not

4

transacting business in the District of Columbia within the meaning of the statute and it was therefore inapplicable"); Lehigh Portland Cement Co. v. Ornstein, 334 F. Supp. 1032, 1034 (D.D.C. 1971) ("such statutes have no application to the acts of a foreign corporation in making sales or contracts for the sale of products in interstate commerce, or the consummation of such transactions by the delivery or shipping of the goods from outside the states").

Plaintiff's argument that service on the Mayor is permissible even where a corporation has no registration obligation would represent a novel (and constitutionally suspect) extension of the District's law, for which Plaintiff offers no authority whatsoever. As explained more fully in Point I.B., infra, Unity is not "doing business" or "transacting business" in the District of Columbia. Thus, Unity was not subject to a registration requirement in the District and therefore cannot be served via the Mayor of the District. Plaintiff therefore has failed to effect any valid service upon Unity within this District. Accordingly, general jurisdiction over Unity cannot be grounded upon D.C. Code § 13-334.

**B.    Unity is Not "Doing Business" in the District of Columbia**

Plaintiff's effort to show that Unity is "doing business" in this District fares no better than his effort to justify the lack of valid service in this District. The "doing business" standard under D.C. Code § 13-334 is demanding, requiring a "continuous and systematic" and "substantial" set of contacts with the District. Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 510 (D.C. Cir. 2002) (quoting Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 415 (1984)). This Court's decision in City of

Moundridge, KS v. Exxon Mobil Corp., 471 F. Supp. 2d 20, 33-34 (D.D.C. 2007), is instructive regarding the showing needed. City of Moundridge held that, notwithstanding a party's permanent office in the District and the presence of a high-level manager assigned to that office, general jurisdiction would still be lacking absent sufficient "specific facts regarding the nature of [defendant's] business activity in its District of Columbia office."

Where, as here, the plaintiff's claims are unrelated to the forum, Plaintiff's jurisdictional burden under § 13-334 is "extensive" in nature. Hughes v. A.H. Robins Co., 490 A.2d 1140, 1149-51 (D.C. 1985). The undisputed "specific facts" presented by Unity on this motion show that Mr. Rolfes' activities fall far short of providing an adequate basis for personal jurisdiction over Unity:

- Mr. Rolfes's primary responsibilities involve soliciting business for Unity (Rolfes Decl. ¶ 5), activities that are generally insufficient to provide a basis for general jurisdiction over a defendant. See Landell v. Northern Pac. Ry. Co., 98 F. Supp. 479, 482 (D.D.C. 1951); see also Ghanem v. Kay, 624 F. Supp. 23, 24-25 (D.D.C. 1984).

- Even these limited solicitation activities are performed only partially within this District. (Rolfes Decl. ¶ 5.)

- Whatever new business Mr. Rolfes may have solicited for Unity accounts for only a tiny percentage of Unity's revenues. (Gaul Decl. ¶ 11.)

- Mr. Rolfes performs his work — on the rare occasions when he is even within this District — from a part-time "rent-a-desk," not a genuine "office." (Rolfes Decl. ¶ 6.)

- Mr. Rolfes spends only a small portion of his already part-time schedule supporting Unity's existing clients in the United States. (Rolfes Decl. ¶ 5.)

6

Contrary to Plaintiff's contentions, these limited activities, carried out by a part-time, independent "sales agent" (Opp. Mem. at 4), are far less substantial than the sorts of contacts that courts have held insufficient to constitute "doing business" for general jurisdiction purposes. See AGS Int'l Servs. S.A. v. Newmont USA Ltd., 346 F. Supp. 2d 64, 75 (D.D.C. 2004) (presence of sales representative within forum not sufficient to ground personal jurisdiction); Roz Trading Ltd v. Zeromax Group, Inc., 517 F. Supp. 2d 377, 386 (D.D.C. 2007) (same); Del Monte Corp. v. Everett S.S. Corp., S/A, 402 F. Supp. 237, 241-42 (N.D. Cal. 1975) (office in the forum staffed by a high-ranking corporate officer not sufficient to ground jurisdiction). Nor do Mr. Rolfes' occasional and incidental client support activities, some undertaken outside of this District (see Rolfes Decl. ¶ 5), support personal jurisdiction. See Palmer v. Kawaguchi Iron Works, Ltd., 644 F. Supp. 327, 329, 331 (N.D. Ill. 1986) (resident "service representative" within forum not sufficient to support personal jurisdiction).

Faced with these difficulties. Plaintiff resorts to various far-fetched analogies (see Opp. Mem. at 3 n.3), to argue that this Court should depart from the settled rule that general jurisdiction is determined at the time an action is commenced, but there is simply no judicial support for such a proposition and ample precedent against it. See Roz Trading Ltd, 517 F. Supp. 2d at 384; see also In re Orshansky, 804 A.2d 1077, 1091-92 (D.C. 2002). Plaintiff's attempted reliance upon Meyers v. Smith, 460 F. Supp. 621 (D.D.C. 1978), is misplaced because that case held only that specific — not general — personal jurisdiction could be predicated on pre-lawsuit actions taken by the defendant in the District even when some of those actions dated to slightly before the limitations

7

period applicable to the complaint's substantive claims.  Id.  Meyers did not hold or suggest that general personal jurisdiction can be evaluated at some time other than the commencement of an action.

Moreover, Plaintiff cites no authority at all in support of his theory that personal jurisdiction in this action should be evaluated as of the time of the commencement of a different action against the defendant, let alone any authority holding that personal jurisdiction should be decided as of when "a letter is sent notifying the party that litigation is being contemplated."  (See Opp. Mem. at 3 n.3.)  The fact remains that Unity was not subject to general jurisdiction in this district either when the Manook action was filed, or when this action was filed.[2]

Plaintiff's attempt to seek refuge in the sixty-year-old precedent in State of Maryland v. Eastern Air Lines, 81 F. Supp. 345 (D.D.C. 1948) — a case which predates such leading modern U.S. Supreme Court precedents in this area as Helicopteros, 466 U.S. 408 (1984), and indeed Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952) — is misplaced.  Eastern Air Lines does not hold, as Plaintiff suggests, that the mere maintenance of an "office" in this District suffices to establish personal jurisdiction over a nonresident corporation.  To the contrary, while that case does not describe the basis of personal jurisdiction in detail, it makes clear that it involved a corporation that

_____

[2]   See generally Unity's motion to dismiss in Civil Case No. 1:08-cv-00096 (PLF), docket items nos. 15, 26.

8

"meets with the public" in this District and "holds itself out to the public generally as being present within the District of Columbia for doing business," and held that facts such as these could supply a basis of personal jurisdiction.  Id. at 346-47.  Plaintiff has made no allegation in this action, much less come forward with any evidence on this motion, that Unity presents itself as open to do business with the general public in the District, and counsel's mere ipse dixit statements to that effect in Plaintiffs' opposition memorandum are not a valid substitute for this requirement on a Rule 12(b)(2) motion.  The telephone directory listing of Unity's "rent-a-desk" and the forwarding of telephone calls to Mr. Rolfes' cell phone are dramatically different from the "office in the District of Columbia, in charge of an Assistant Secretary of the Company" that was at issue in Eastern Air Lines.  Id. at 346.  Whatever vitality (if any) Eastern Air Lines might still possess in the post-Perkins, post-Helicopteros world of cases like AGS Int'l Services, Roz Trading and Palmer, Mr. Rolfes' contacts with this District are indisputably still substantially less extensive than the contacts that were at issue in Eastern Air Lines.

## II

### THERE IS NO BASIS FOR EXERCISING<br>SPECIFIC JURISDICTION OVER UNITY

Plaintiff is equally unsuccessful in his attempt to argue alternatively that this Court could properly exercise specific jurisdiction over Unity.  Plaintiff's effort to conjure a viable causal nexus between actions in this District and the Baghdad incident on which Plaintiff bases his tort claims far exceed the limits of what might be acceptable under this District's "long-arm" statute.

Under the District of Columbia "long arm" statute, jurisdiction is available over claims "arising from the person's — (1) transacting any business in the District of Columbia. . . ."  D.C. Code § 13-423(a).  "[O]nly a claim for relief arising from acts enumerated in [§ 13-423] may be asserted" based on the jurisdictional authority of the D.C. long-arm statute.  Willis v. Willis, 655 F.2d 1333, 1336 (D.C. Cir. 1981).  The "'arising from' requirement serves to ensure that states do not exceed their powers under the due process clause" and as such "has been strictly enforced by courts in this jurisdiction."  Bayles v. K-Mart Corp., 636 F. Supp. 852, 854 (D.D.C. 1986).  It is not construed, as Plaintiff urges, to extend District of Columbia jurisdiction almost without limit wherever a contact of someone (not even necessarily the defendant challenging jurisdiction) with the United States Government may be lurking somewhere far back in a chain of alleged but-for causation.

**A.**     **Plaintiff's Claims Do Not Arise from a Contract in This District**

Plaintiff theorizes that jurisdiction is proper here because the death in Iraq of Ms. Antranick was allegedly caused by employees of Unity, a foreign company that contracted outside of this District to provide services to RTI, a company headquartered outside of this District, which in turn was providing services to Iraqis pursuant to a contract with the United States Agency for International Development ("USAID"), a U.S. Government agency that fortuitously is headquartered in this District.  Plaintiff's "house that Jack built" theory of "long-arm" jurisdiction is apparently that if a contract with some organ of the U.S. Government could be construed as a but-for link in a chain of causation of a tortious act that might occur anywhere in the world, personal jurisdiction is

proper here in the District of Columbia over any party who might be sued on a cause of action that "relates to" such an act.  The flaws in Plaintiff's reasoning are obvious and many-faceted.

First, Plaintiff's "but-for" theory of the "arising from" test under the D.C. long-arm statute has consistently been rejected by the courts of this District.  These courts have held that tort claims arising elsewhere and bearing only a but-for causal link to a contract with the United States Government are <u>not</u> within the jurisdiction of the courts of the District of Columbia.  <u>See</u> <u>Gowens</u> v. <u>Dyncorp</u>, 132 F. Supp. 2d 38, 42 (D.D.C. 2001) (long-arm jurisdiction inappropriate because wrongful discharge, fraud and other claims asserted against government contractor by one of its employees were not sufficiently connected to contractor's agreement with United States Government); <u>Gonzalez</u>, 891 A.2d at 231 n.6 (personal jurisdiction lacking because "[t]he present dispute . . . cannot be said to arise under the 1996 maintenance contract [containing a District of Columbia choice-of-forum clause], since it is a tort claim rather than a breach of contract claim").  Such holdings are hardly surprising, because the nature and breadth of the United States Government's activities in the post-New Deal world would otherwise create personal jurisdiction in the District of Columbia over a nearly infinite number of claims arising from actions taken elsewhere, but which arguably would not have occurred if someone had not, at some stage, contracted with the United States Government.

Next, Plaintiff argues that "[a]lthough the [D.C.] long arm statute only uses the term 'arising,' the court should interpret this to mean 'arising out of or relates to,'" a substitute phrase which Plaintiff contends would be broad enough to encompass remote

11

and attenuated connections between acts taken in the forum and Plaintiff's claims.  (Opp. Mem. at 8.)  But nothing in the cases Plaintiff cites — Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984); Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984); and Shoppers Food Warehouse v. Moreno, 746 A.2d 320, 332 (D.C. 2000) — or indeed any other case — suggests that the occasional judicial use of this modest rhetorical variation does anything to broaden the meaning or loosen the requirements of the "arising from" language set forth in the D.C. Code.

Furthermore, Plaintiff's argument that personal jurisdiction is proper because of his speculation that undisclosed provisions of the RTI-USAID contract might have "flowed down" into the RTI-Unity contract (Opp. Mem. at 9-10) is a non sequitur. Plaintiff offers no connection between any such hypothesized "flow down provision[s]" and the events in Iraq that provide the basis for this action, and there plainly could be none.

Plaintiff also seeks refuge in a series of unwarranted and unsupported inferences offered by his counsel — which can best be described as a chain of abject speculation — in an effort to somehow connect David Rolfes' U.S. activities to the decedent Antranick's shooting death in Iraq.[3]  In fact, there is plainly no connection between Mr. Rolfes' U.S.

---

[3]    Plaintiff is simply flat-out wrong in his assertion, made without any supporting authority, that for specific jurisdiction purposes Mr. Rolfes' activities should "count as contacts whether they are related to this case or not."  (Opp. Mem. at 10.)  To the contrary, D.C. Code § 13-423 makes clear that only Unity-related contacts by Mr.

(Cont'd on following page)

activities and the underlying incident, and Plaintiff neither alleges such a connection in the Complaint, nor provides any evidence that any such connection exists.

Plaintiff suggests that "[i]t is a fair inference that RTI is Unity's only major client in the U.S., since Mr. Rolfes has only generated $200,000 of new business thus far." (Opp. Mem. at 10.) This not only isn't a "fair" inference, it is not even a logical one. There is neither allegation nor evidence that Mr. Rolfes is the sole generator of business for Unity from U.S. clients, and thus no basis to extrapolate from the amount of new business Mr. Rolfes generated what portion of Unity's business with U.S. clients is represented by Unity's contract with RTI.

Plaintiff next summarily asserts — again without any allegation in the complaint nor evidence submitted on this motion — that Mr. Rolfes "functions as RTI's domestic contact with Unity." (Opp. Mem. at 10.) This is flatly refuted by a sworn declaration previously submitted by RTI in this action. (See, e.g., Declaration of Moddassir Mohammad Ali, executed July 7, 2008 ("Ali Decl.") (docket item no. 11 in this action, copy annexed hereto as Exhibit A), ¶¶ 7-9 (indicating that the Unity representatives RTI deals with relating to the Unity-RTI contract are in Dubai).) Then, despite the fact that Mr. Rolfes' role as independent contractor for Unity only began in July 2007 (Rolfes Decl. ¶ 2), more than two years after Unity entered into its contract with RTI (see, e.g.,

_____

(Cont'd from preceding page)

Rolfes could possibly "count," and even then only to the extent that Plaintiff's claims in this action "arise from" such contacts. Willis, 655 F.2d at 1336.

Ali Decl. ¶ 3) — and despite Plaintiff's own admission that there is no apparent connection between Ms. Antranick's death and "some particular act of Mr. Rolfes" (Opp. Mem. at 11) — Plaintiff offers the stunning non sequitur that "the incident was . . . 'related' and has a 'substantial connection' to [Mr. Rolfes'] activities in supporting RTI, to his solicitation of new business in and from the District generally, and to USAID." (Opp. Mem. at 11.)[4]

Finally, Plaintiff's assertion that support for his position can be found in Overseas Partners, Inc. v. Progen Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti, 15 F. Supp. 2d 47, 51 (D.D.C. 1998) is sorely misplaced.  Progen upheld jurisdiction over a contract dispute arising from a contract negotiated in the District, which contemplated that significant portions of the work thereunder would be performed in the District.  But here, Plaintiff asserts no contract claims; Plaintiff is not a party to any contract with any of the defendants; the Unity-RTI contract was negotiated and executed outside this District (Ali Decl. ¶ 4; Gaul Decl. ¶ 3); and the Unity-RTI contract concerned Unity's performance of security services in Iraq, not this District (see Compl. ¶¶ 16, 21).  Progen simply

---

[4]    Plaintiff also suggests that it is enough to provide jurisdiction in this District over Unity if Plaintiff's claim has a connection of some kind "to USAID," presumably because USAID is headquartered in this District.  (See Opp. Mem. at 11.)  This is of course completely contrary to the requirements of D.C. Code § 13-423(a), which only authorizes specific jurisdiction when a cause of action arises from the acts in this District of the person over whom jurisdiction is sought — not when the cause of action is merely claimed to have arisen from the acts of separate nondefendant like USAID which happens to reside or be based in this District.

provides no support for exercising long-arm jurisdiction over Unity for Plaintiff's tort claims in this action.

**B.     Plaintiff Has Not Properly Alleged "Conspiracy" Jurisdiction**

Plaitiff next tries to save his deficient jurisdictional allegations by pointing to vague allegations of a "conspiracy." These allegations are utterly insufficient, because no plausible or legally viable "conspiracy" has been alleged.

> "A plaintiff seeking to meet its burden of demonstrating that a court may exercise jurisdiction over foreign defendants under a conspiracy theory must present a <u>particularized pleading</u> of the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy."

<u>AGS Int'l Servs. S.A.</u>, 346 F. Supp. 2d at 88 (emphasis added). A "bare allegation of conspiracy or agency is insufficient," and theories of conspiracy jurisdiction should be rejected where there is "no concrete evidence in the record indicating that there was a common plan." <u>First Chicago Int'l</u> v. <u>United Exch. Co., Ltd.</u>, 836 F.2d 1375, 1378-79 (D.C. Cir. 1988). Indeed, heeding these strictures has become even more critical since the U.S. Supreme Court's decision in <u>Bell Atl. Corp</u>. v. <u>Twombly</u>, which held that even in situations (unlike here) where non-particularized pleading under Fed. R. Civ. P. 8 would suffice, a conspiracy allegation still must meet the requirement of being "plausible" — a standard which "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made," and under which "a bare assertion of conspiracy will not suffice." 127 S. Ct. 1955, 1964-66 (2007).

Plaintiff's Complaint fails these tests miserably. The Complaint alleges a "civil conspiracy" in only the most perfunctory of terms, contending that "Defendants agreed

and conspired to commit the wrongful acts alleged herein, as evidenced by their acts and omissions in response to" unspecified "previous incidents of death, injury and the use of excessive force . . . ." (Compl. ¶ 55.)  As supposed "overt acts" in furtherance of this supposed "conspiracy," the Complaint alleges no specific acts but only broad, vague, and conclusory assertions, such as "hiring and employing individuals with questionable backgrounds, failure to investigate incidents . . . failure to punish the individuals involved in this and other incidents, and failure to enforce its [sic] own rules regarding warnings to be given before deadly force is used." (Compl. ¶ 56.)  But the Complaint nowhere alleges when any such acts might have occurred; any persons who allegedly were involved; what might have been "questionable" about the "backgrounds" of persons who were "hir[ed]" and employ[ed]"; any identification of supposed "incidents" that allegedly were not properly investigated; what might have been deficient about any investigations of these unspecified incidents; when "Defendants . . . failed to enforce its [sic] own rules"; or what rules Unity (or perhaps RTI?) failed to enforce or how.  These vague allegations are the polar opposite of pleading with particularity.

Most significantly, though, Plaintiff does not even allege that a single "overt act" occurred in this District — despite the fact that Plaintiff himself concedes that "conspiracy" jurisdiction "require[s] a <u>prima facie</u> showing of . . . a co-conspirator's overt act <u>within the forum</u>, subject to the long-arm statute and in furtherance of the conspiracy." (<u>See</u> Opp. Mem. at 13 (emphasis added) (citing <u>Richards</u> v. <u>Duke Univ.</u>, 480 F. Supp. 2d 222 (D.D.C. 2007).)

16

Furthermore, Plaintiff has not even alleged the basic elements of civil conspiracy, which under D.C. law has four elements:

> "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme."

Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983).

Apart from the implausible conclusory boilerplate allegation that "Defendants conspired to commit the wrongful acts alleged herein," Plaintiff has not alleged that Defendants conspired to injure Ms. Antranick, or anyone for that matter, but rather only that Defendants conspired to "fail to investigate incidents," to "hire . . . individuals with questionable backgrounds," to "fail[] to punish . . . individuals," and to "fail to enforce its [sic] own rules." (Compl. ¶¶ 55-56.) At most, this suggests negligence, not a set of intentional "unlawful acts" that can form a predicate for a viable civil conspiracy claim.

A viable civil conspiracy claim, however, requires "an underlying intentional tort," because "[l]ogic dictates that parties cannot conspire or agree to commit negligence." In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig., 175 F. Supp. 2d 593, 633 (S.D.N.Y. 2001); see also Sonnenreich v. Phillip Morris, Inc., 929 F. Supp. 416, 419 (S.D. Fla. 1996) ("a conspiracy to commit negligence is a non sequitur"); Cresser v. American Tobacco Co., 174 Misc. 2d 1, 662 N.Y.S.2d 374, 378 (1997) (rejecting claim of conspiracy to commit negligence); Triplex Commc'ns, Inc. v. Riley, 900 S.W.2d 716, 720 n. 2 (Tex. 1995) ("[g]iven the requirement of specific intent, parties cannot [agree to] engage in a civil conspiracy to be negligent"); Alatishe v. Irwin,

17

Civ. A. No. 86-479, 1987 WL 17666, at *3 (D.D.C. Sept. 18, 1987) ("It is highly questionable whether a group of defendants can conspire to be negligent.")[5]

Because Plaintiff's civil conspiracy claim is not pled with particularity and is infirm as a matter of law, Plaintiff cannot ground personal jurisdiction on any "conspiracy theory." And even if Plaintiff's "conspiracy theory" were viable or properly pled, it would provide no basis for jurisdiction here, because none of the vague categories of overt acts alleged by Plaintiff are alleged to have taken place in this District.

**C.    Rule 4(k)(2) Provides No Basis for Jurisdiction Here**

Apparently cognizant of the jurisdictional deficiencies of his case, Plaintiff attempts to rely on Fed. R. Civ. P. 4(k)(2). Rule 4(k)(2) permits personal jurisdiction to be exercised with regard to claims arising under federal law in a district of the plaintiff's choice where a defendant has sufficient minimum contacts with the United States as a

---

[5]    The remark in Okusami v. Psychiatric Inst. of Washington, Inc., 959 F.2d 1062 (D.C. Cir. 1992) that a conspiracy claim could possibly be based on an alleged "agreement to take part in the negligent conduct," see id. at 1066, arises in the context that what the pleading in that case curiously had denominated as "negligence" was in fact conduct that was plainly conscious and deliberate, not accidental, which the plaintiff there had challenged as being "discriminatory," "arbitrary" and "capricious." See id. at 1075-79 (reproducing actual complaint). The Court's comments were dicta in any event because the Court found that "the complaint alleges no agreement of any kind" and concluded as a matter of law that, whatever the defendants' conduct, the defendants were too related to one another to be legally capable of conspiring with one another. Id. at 1066-67.

whole but not with any individual state.  See, e.g., Mwani v. Bin Laden, 417 F.3d 1, 10 (D.C. Cir. 2005).

Rule 4(k)(2) provides no help to Plaintiff here because Plaintiff has alleged no meaningful contacts with "the United States as a whole" that are distinct from the (insufficient) contacts which Plaintiff has alleged with the District of Columbia.  See Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp., No. 99 C 2524, 2000 WL 1015937, at *5 (N.D. Ill. Jan. 31, 2000) (dismissing under Rule 4(k)(2) where "Defendants' own national contacts, as alleged in the complaint, are no more than the Illinois contacts discussed and found lacking above."). To the extent Plaintiff has alleged contacts that might be with districts in the United States other than or in addition to the District of Columbia — such as Unity's passive website listings, a listing on a U.S. Government contractor registry, membership in trade associations, the execution in Dubai of a contract with Defendant RTI, and the designation of a contact person for the two-continent region of "the Americas" — these are not jurisdictionally significant contacts with this district, any state of the United States, or even with the United States as a whole, for the reasons Unity previously set forth in depth in Unity's Memorandum in Support of its Motion to Dismiss dated July 10, 2008, at pp. 9-15.

These deficient allegations do not magically become viable merely because Rule 4(k)(2) is mentioned.  See id. at 5.  While Plaintiff tries to argue, without any judicial support, that "the Due Process Clause itself, applied through Rule 4(k)(2) of the Federal Rules of Civil Procedure," provides that if neither this nor any U.S. court may exercise

personal jurisdiction over Unity, "then the D.C. District Court can exercise personal jurisdiction" (Opp. Mem. at 14), in fact "[t]he due process analysis is no different under Rule 4(k)(2) than under the D.C. long-arm statute," and personal jurisdiction will be held lacking even under Rule 4(k)(2) where "defendant's contacts with the District are not such that he should reasonably anticipate being haled into court here." Son v. Kim, Civ. A. No. 05-2318, 2007 WL 950085, at *2 (D.D.C. Mar. 28, 2007).

Because Unity is not "doing business" in the United States and the claims asserted here do not "arise from" any Unity contact with the United States, then the answer to the "question [of] where in the U.S. can [Unity] be sued" (see Opp. Mem. at 16) is simply that Unity is not subject to suit in the United States on Plaintiff's claims. This is nothing more and nothing less than the straightforward application of the provisions of the D.C. Code and the Due Process Clause to Unity's paltry contacts with the United States — contacts that simply have nothing to do with Plaintiff's claims arising from events in Baghdad involving foreign nationals and a non-U.S. corporation, and that should never be expected to result in U.S. jurisdiction.

### III

### UNITY HAS NOT WAIVED ITS RIGHT TO RAISE FORUM *NON CONVENIENS* ISSUES OR SEEK JUDGMENT ON THE PLEADINGS

Plaintiff's makes a final argument that Unity, by filing a personal jurisdiction motion, has now somehow waived its right to move for dismissal based upon grounds of forum non conveniens. (Opp. Mem. at 16-17.) This argument has nothing to do with whether Unity's personal jurisdiction motion should be granted, and it is simply

premature for the Court to address this argument unless and until such time as Unity makes any such motion for forum <u>non</u> <u>conveniens</u> or motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

Nevertheless, it should be said that Plaintiff's argument is utterly baseless. The waiver rules of Fed. R. Civ. P. 12(g)-(h) concern only possible waivers of the categories of motions specified in Fed. R. Civ. P. 12(b)(1)-(5), not to motions based upon forum <u>non</u> <u>conveniens</u> or for judgment on the pleadings under Rule 12(c). <u>See</u> <u>L & L Constr.</u> <u>Assocs., Inc</u>. v. <u>Slattery Skanska, Inc</u>., No. Civ. 05-1289, 2006 WL 1102814, at *3 (D.D.C. Mar. 31, 2006) ("Rules 12(g) and 12(h) do not apply to the doctrine of forum non conveniens"); <u>Lindsey</u> v. <u>U.S.</u>, 448 F. Supp. 2d 37, 55 (D.D.C. 2006) ("Rules 12(g) and 12(h)(2) plainly indicate that a defense of failure to state a sustainable claim is not waived simply by the defendant's failure to include it in an initial 12(b) motion submitted to the Court").

In fact, a motion to dismiss based upon forum <u>non</u> <u>conveniens</u> may be made at any time. <u>L & L Constr. Assocs</u>., 2006 WL 11102814, at *3. While issues of forum <u>non</u> <u>conveniens</u> should preferably be heard and resolved before discovery has begun or issues of substance have been decided by the current forum court, <u>see</u>, <u>e.g</u>., <u>Lony</u> v. <u>E.I. Du Pont</u> <u>de Nemours & Co</u>., 935 F.2d 604, 614 (3d Cir. 1991), it is also the case that a court should generally not consider issues of forum <u>non</u> <u>conveniens</u> unless it has personal jurisdiction over the parties. <u>Progen</u>, 15 F. Supp. 2d at 50.

Given that this case concerns an incident which occurred in Baghdad, was witnessed in Baghdad, which involved Iraqi nationals and a non-U.S. corporation, which

may well involve substantial Iraqi legal issues and non-English speaking witnesses, the potential forum non conveniens in this case are certainly substantial.[6]  Moreover, because forum non conveniens questions involve not just the private interest of the parties but also numerous public interest factors, including many relating to this Court, see, e.g., Stromberg v. Marriott Int'l, Inc., 474 F. Supp. 2d 57, 63 (D.D.C. 2007) (noting the public-interest "desirability of clearing foreign controversies from congested dockets"), the Court should not strain to deem forum non conveniens questions waived when there is no showing of prejudice being suffered or unfair advantage being obtained.

        Unity has proceeded in the most efficient and appropriate manner by moving first to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the granting of which motion would obviate the need to address the various issues that would be presented by an international forum non conveniens motion.  Unity has not yet made any motion addressed to the substantive merits of Plaintiff's claims, attempted to take or initiate any discovery, or done anything else to take advantage of any law or rules that might be available to Unity solely because this action is currently pending in a U.S. forum.  Were Unity to move to dismiss on grounds of forum non conveniens if this personal

---

[6]    It is for this reason that Unity suggests that the Court defer ruling on defendant RTI's motion under 28 U.S.C. § 1404(a) for a permissive transfer of venue to North Carolina until such time as the international forum non conveniens issues have been addressed.  There is no point attempting to fine-tune which U.S. district should hear this case until it resolved whether this case should proceed in the United States at all.

jurisdiction motion were denied, or to move for judgment on the pleadings under Rule 12(c) if forum <u>non conveniens</u> dismissal were denied, neither Plaintiff nor any other party would be prejudiced thereby, and Unity would not have gained any unfair advantage.

In sum, there is no basis under Rule 12, caselaw or any principle of fairness that would call for Unity to be deemed to have waived its right to move for forum <u>non conveniens</u> dismissal or judgment on the pleadings under Rule 12(c). Plaintiff's attempt to argue waiver is meritless.

## **CONCLUSION**

For the foregoing reasons, Unity respectfully requests that its motion to dismiss be granted in all respects.

Dated:  August 21, 2008

Respectfully submitted,

CHADBOURNE & PARKE LLP

By_____/s/ Robert A. Schwinger_____
    Robert A. Schwinger (Bar No. NY0092)
   Attorneys for Defendant
    Unity Resources Group Pte. Ltd.
   30 Rockefeller Plaza
   New York, New York  10112
   Tel. (212) 408-5100
   Fax (212) 541-5369

Of Counsel:

Thomas E. Butler
Jonathan C. Cross

Daniel J. Greenwald III
CHADBOURNE & PARKE LLC
City Tower I
Sheikh Zayed Road
P.O. Box 23927
Dubai, United Arab Emirates
Tel:  +971 (4) 331-6123
Fax  +971 (4) 331-0844

William S. D'Amico (Bar No. 2694)
CHADBOURNE & PARKE LLP
1200 New Hampshire Avenue, N.W.
Washington, D.C.  20036
Tel. (202) 974-5600
Fax (202) 974-5602

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Jalal Askander Antranick,           ) | |
|                 ) | |
| Plaintiff,        ) | |
|                 ) | |
| v.            ) | Civil Case No. 1:08-cv-00595 |
|                 ) | |
| Research Triangle Institute, International and  ) | |
| Unity Resources Group, L.L.C.,        ) | Honorable Paul L. Friedman |
|                 ) | |
| Defendants.        ) | |
|                 ) | |

## DECLARATION OF MODDASSIR MOHAMMAD ALI

I, Moddassir Mohammad Ali, hereby declare under 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that, based upon personal knowledge and information provided to me during my employment at RTI, the following is true and correct:

1. I am currently an employee of Research Triangle Institute ("RTI"). I was the Director of International Contracts and Procurement of RTI from April 2007 to April 2008, and starting in April 2008, I have assumed responsibilities as the Chief Procurement Officer of RTI.

2. RTI has its principal place of business and its headquarters in North Carolina. North Carolina is also RTI's state of incorporation. While RTI has 8 domestic offices and 8 additional international offices, more than 2200 of RTI's 2600 employees work at its North Carolina headquarters.

3.   On June 27, 2005, RTI contracted with Unity Resources Group ("Unity") for the provision of security services (the "RTI/Unity Contract").

4.   The RTI/Unity Contract was negotiated between personnel in RTI's North Carolina office and personnel in Unity's Dubai office.  RTI's Washington D.C. office did not participate in the negotiation of the RTI/Unity Contract.

5.   The RTI procurement office, which administers the RTI/Unity Contract, is located in RTI's North Carolina office.

6.   Payments to Unity for work in connection with the RTI/Unity Contract are made through RTI's North Carolina office, not through RTI's Washington, D.C. office.

7.   Formal contractually binding communication between RTI and Unity regarding the RTI/Unity Contract is conducted between RTI's North Carolina office and Unity's Dubai office.

8.   While a number of RTI employees in North Carolina are responsible for administering the RTI/Unity Contract and for approval for payment on the RTI/Unity Contract, there is but a single RTI employee in Washington, D.C. who shares any responsibility in connection with the RTI/Unity Contract.

9.   Article 12 of the RTI/Unity Contract provides that the contractual representatives for RTI and Unity are located in North Carolina and Dubai, United Arab Emirates, respectively.

10. Article 34 of the RTI/Unity Contract provides that North Carolina law governs.

Executed on this 7th day of July, 2008

Moddassir Mohammad Ali

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

JALAL ASKANDER ANTRANICK,

                         Plaintiff,

           -against-

RESEARCH TRIANGLE GROUP
INTERNATIONAL and UNITY RESOURCES
GROUP, L.L.C.,

                     Defendants.

Civil Case No. 1:08-cv-00595 (PLF)

Hon. Paul L. Friedman

**APPENDIX OF UNREPORTED CASES CITED IN THE
MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION
OF DEFENDANT UNITY RESOURCES GROUP PTE. LTD.
TO DISMISS THE COMPLAINT**

        Defendant Unity Resources Group Pte. Ltd. ("Unity") respectfully submits the attached copies of the following unreported cases cited in its Memorandum of Law in further support of its motion to dismiss the Complaint.

| Case | Exhibit |
|---|---|
| Alatishe v. Irwin, Civ. A. No. 86-479, 1987 WL 17666, (D.D.C. Sept. 18, 1987) | A |
| Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp., No. 99 C 2524, 2000 WL 1015937, (N.D. Ill. Jan. 31, 2000) | B |
| L & L Constr. Assocs., Inc. v. Slattery Skanska, Inc., No. Civ. 05-1289, 2006 WL 1102814, (D.D.C. Mar. 31, 2006) | C |

<u>Son</u> v. <u>Kim</u>, Civ. A. No. 05-2318, 2007 WL 950085,
    (D.D.C. Mar. 28, 2007). ......................................................................... D

Dated:     August 21, 2008

                        CHADBOURNE & PARKE LLP


                        By_____/s/ Robert A. Schwinger_____
                          Robert A. Schwinger (Bar No. NY0092)
                        Attorneys for Defendant
                          Unity Resources Group Pte. Ltd.
                        30 Rockefeller Plaza
                        New York, New York  10112
                        Tel. (212) 408-5100
                        Fax (212) 541-5369

Of Counsel:

Thomas E. Butler
Jonathan C. Cross

Daniel J. Greenwald III
CHADBOURNE & PARKE LLC
City Tower I
Sheikh Zayed Road
P.O. Box 23927
Dubai, United Arab Emirates
Tel.  +971 (4) 331-6123
Fax  +971 (4) 331-0844

William S. D'Amico (Bar No. 2694)
CHADBOURNE & PARKE LLP
1200 New Hampshire Avenue, N.W.
Washington, D.C.  20036
Tel. (202) 974-5600
Fax (202) 974-5602

Exhibit A

Westlaw.

Not Reported in F.Supp.                                                                                     Page 1
Not Reported in F.Supp., 1987 WL 17666 (D.D.C.)

C Alatishe v. Irwin
D.D.C., 1987.
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.
Moshood ALATISHE, Plaintiff,
v.
Hugh C. IRWIN, et al. Defendants.
**Civ. A. No. 86-479.**

September 18, 1987.

MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.
**\*1** Plaintiff, Moshood Alatishe, brings this suit under
42 U.S. Code § 1983. He asserts a claim for
negligence in Count I, conspiracy in Count II, false
imprisonment in Count III, and violations of his
constitutional rights under the fourth, sixth, and
fourteenth Amendments in Count IV. Plaintiff's
claims arise from a search of his premises and the
subsequent seizure of what appeared to be a large
amount of a controlled substance. The search was
executed pursuant to a duly authorized warrant.See
United States v. Alatishe, 616 F. Supp. 1406 (D.D.C.
1985). The defendants, Hugh Irwin, Ronald Schmidt,
Richard White, and Peter Markland, all officers of
the United States Park Police, are sued in their
individual capacities. Presently before the Court is
the motion of defendants to dismiss the complaint or,
in the alternative, for summary judgment. For the
reasons discussed below, the motion of defendants
will be granted.

Background

On May 23, 1985, members of the Park Police
executed a search warrant at plaintiff's residence,
located at 221 R Street, N.W., in Washington, D.C.
The warrant was issued by a D.C. Superior Court
judge based upon the affidavit of a member of the
Park Police that an informant alleged that Alatishe
was selling brown heroin in violation of 33 D.C.
Code § 541, the District of Columbia Uniform
Controlled Substances Act of 1981. According to the
defendants, the officers knocked on the inner and
outer doors of Alatishe's house, announced

themselves and, after waiting for approximately one
minute, broke the door down. Defendant Irwin asserts
that he yelled 'Police, we have a search warrant'
before entering the premises. Irwin Affidavit at 1.
The officers then searched the residence and seized,
among other items, over eight ounces of a brown
powder they suspected to be heroin.FN1 According to
his affidavit, Irwin then conducted a field test to
determine if any controlled substances were present
in the brown powder. Irwin states that he believed the
field test resulted in a dark purple color, which
indicates a high concentration of opiates. Irwin
Affidavit at 2. On this basis, Alatishe was arrested
and charged with conspiracy to distribute heroin,
possession with intent to distribute heroin, and
possession of unregistered firearms. Defendant's
Statement of Material Facts at 3.

Alatishe contests the defendants' version of the events
of May 23, and alleges that the officers failed to
knock or use the intercom system before they 'ripped
the grill off the front door, popped the front door,'
and entered his home. Alatishe Affidavit at 2.
Alatishe also claims that he was forced to lie face-
down with a gun at his head and that an officer said
'we are only here to kill you and you will be lucky if
we don't.'Id.

Following the search and seizure and after
conducting a field test of the suspected controlled
substance, the officers spoke with a Washington Post
reporter who accompanied them on the raid.
According to the resulting Washington Post article
(Plaintiff's Exhibit A), defendant Irwin described the
raid as follows: 'We got in there so fast that no one
had a chance to do anything. . . . We ripped that off
the barred door, popped the second door and ran in.'Id.

**\*2** At the police station, defendant schmidt conducted
another field test on the brown powder. According to
his affidavit, Schmidt believed that the result of the
second field test was a deep purple color, indicating
the presence of opiates. Schmidt Affidavit at 4.
Before the grand jury and in the criminal court
proceeding brought against Alatishe, Schmidt
testified that the brown powder seized from Alatishe's
home was probably heroin with a high degree of
purity.Id., at 5. Defendant Irwin testified in like

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                                          Page 2
Not Reported in F.Supp., 1987 WL 17666 (D.D.C.)

fashion in the criminal proceeding before Judge Harold Greene.

On the basis of the two field tests and the large quantity of alleged contraband seized, plaintiff was held without bond from May 24, 1985, to August 22, 1985.See Alatishe, at 1408. On June 20, 1985, a grand jury indicted Alatishe for conspiracy to distribute a controlled substance, possession with intent to distribute, distribution of a controlled substance, and possession of a firearm after a felony conviction. A superseding indictment was filed on July 13, 1985.

The Drug Enforcement Administration ('DEA') analyzed the brown powder that had been seized and determined on July 13 that the brown powder contained no controlled substances.See Alatishe, at 1408. On August 22, Judge Greene was informed that the brown powder did not contain contraband and Alatishe was released on his own recognizance.Id. On August 28, Judge Greene granted a motion to suppress made by Alatishe '[b]ased upon the evidence contradicting the Park Police testimony and this Court's judgment as to credibility . . . . [T]he Park Police did not comply with [the knock and announce statute] . . . .'Alatishe, at 1413. The government's oral motion to dismiss the indictment was granted on August 29, 1985.

Analysis

I. The Negligence Claim

Plaintiff claims that the defendants negligently conducted the field tests of the brown powder, negligently reported the results of the tests to prosecuting authorities, and negligently testified as to the results of the tests before the grand jury and in the criminal proceeding brought against Alatishe. Defendants Irwin and Schmidt do not dispute that their conclusions based on the field tests were mistaken.

It is well settled that federal officials enjoy absolute immunity from common law tort liability for acts within the outer perimeter of their line of duty.Barr v. Matteo, 360 U.S. 564 (1959); McKinney v. Whitfield, 736 F.2d 766 (D.C. Cir. 1981); Sami v. United States, 617 F.2d 755, 768-69 (D.C. Cir. 1979). Defendants assert that even if they were negligent,

they are immune from liability for common law torts under these circumstances. Plaintiff responds that in this case defendants' actions were beyond the outer perimeter of their authority.

For purposes of determining immunity, the outer perimeter standard is to be broadly construed.See Simons v. Bellinger, 643 F.2d 774 (D.C. Cir. 1980) (jurisdiction defined broadly to include acts having more or less connection with the general matters committed by law to the official's supervision). Here, the Park Police performed a field test for opiates on a substance seized during the course of a search, conducted pursuant to a search warrant to seize illegal drugs.FN2 Members of the Park Police are law enforcement officials who have been granted all the powers and authority of the Metropolitan Police. Their primary function is to enforce the law. Defendants' performance of the field tests and subsequent reports and testimony as to the test results was undoubtedly within the perimeter of the officials' authority.FN3 As the Court finds that plaintiff's position that defendants acted beyond the perimeter of their authority to be without merit, the only issue before the Court with regard to plaintiff's negligence claim is that of defendants' immunity.

**3 'Federal courts have used a 'functional' approach to determine the reach of Barr; absolute immunity is not extended 'without some inquiry into the need of the immunity to forward legitimate purposes of the office.''McKinney, at 770 (citations omitted). The Court concludes that to confer absolute immunity on the defendants in this context will further the legitimate purposes of the Park Police. It will encourage law enforcement officials to conduct tests on substances they believe may be controlled substances and to testify to the results thereto. The acts in question here are part of the legitimate and necessary functions of law enforcement officials and ought not to be hindered by the potential threat of liability for common law negligence.

Alatishe's negligence claim also must be dismissed as to White and Markland, since these officers did not test the brown powder or testify as to the results thereof. In a footnote, plaintiff argues that 'all defendants acted in concert and, therefore, under the theory of aiding and abetting and conspiracy each can be charged with the wrongs of the others.Lamont v. Haig, 590 F.2d 1124 (D.C. Cir. 1978).' Plaintiff's

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                                    Page 3
Not Reported in F.Supp., 1987 WL 17666 (D.D.C.)

Brief at 5. Plaintiff misreads the meaning of the Lamont court's statement. In Lamont, the court stated 'the liability of a particular defendant might be proven by evidence of his participation in a civil conspiracy that was actually executed by co-conspirators.Id., at 1136 n.73. The Court declines to extend this theory of vicarious liability for a claim of civil conspiracy to a cause of action based on negligence. It is highly questionable whether a group of defendants can conspire to be negligent. Additionally, as will be discussed below, plaintiff has failed to present any evidence-direct or circumstantial-that there was an agreement among defendants to participate in an unlawful act, one of the prima facie elements of civil conspiracy.Halberstam v. Welch, 705 F.2d 472 (D.C. Cir. 1983).

II. False Imprisonment

To successfully state a claim for false imprisonment, '[u]nder District of Columbia law, plaintiff must show that he was imprisoned and that the imprisonment was unlawful.'Kroll v. United States Capitol Police, 590 F. Supp. 1282, 1294 (D.D.C. 1983). Once these allegations are made, the burden shifts to the defendant, who must justify the arrest by showing either probable cause or the lesser requirement of good faith.Id.'To establish good faith, the officers must show 'reasonable grounds to believe a crime had been committed and that plaintiff's arrest was made for the purpose of securing the administration of the law. . . .'Id. Good faith must appear under both an objective and subjective test.

In this case, Alatishe was arrested based on the results of the field tests performed by defendants, which defendants state they subjectively believe indicated that Alatishe was in the possession of a large amount of heroin, as well as the officer's seizure of a white powder believed to be a controlled substance, firearms, and a sum of money. Defendant has offered the testimony of Drug Enforcement Administration chemist, Mr. Drumgold, who explained that under the lighting conditions present when the field tests were conducted, the results of the Marquis test (which is used in the field) could have been mistaken for deep purple, which means positive for opiates, rather than black, which means negative. Irwin Affidavit at 2-3. It is reasonable, in light of the explanation of Drumgold, for the officers to have

mistaken the color of the test results; thus, both the subjective and objective prongs of the good faith test have been satisfied.

*4 Alatishe has presented no evidence whatsoever, beyond the bare allegations in his complaint and his own conclusory statements made in his affidavit, to refute defendants' assertions that probable cause to arrest Alatishe existed and that the officers involved acted both objectively and subjectively in good faith. Nor has plaintiff come forward with any evidence to refute the factual basis on which defendants' allegations of probable cause to arrest rest. Defendant does not deny that the brown powder substance was found in his home or that any of the other seized items were also found in his home.

Summary judgment is proper if there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law.Fed. Rules Civ. Pro. 56(c). Under the standards which govern a motion for summary judgment, see Celotex v. Catrett, 104 S. Ct. 2548 (1986), Alatishe's own self-serving statements do not suffice to controvert the assertions of defendants. Without more, a reasonable fact finder could not find that defendants lacked probable cause to arrest or that defendants acted in bad faith when they arrested Alatishe. Thus, defendants' claim for summary judgment on the false arrest claim must be granted.

III. Conspiracy

Liability for civil conspiracy necessarily involves an underlying tortious act, and, as such, is not independently actionable.Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983). Civil conspiracy may be found where the defendants agreed to perform an unlawful act and where one of the conspirators performed some overt act harmful to the plaintiff pursuant to the common scheme.Id. at 477. Alatishe alleges that the defendants conspired to deprive him of his civil rights 'for the purpose of causing [him] to be incarcerated without bond and . . . indicted . . . .' Complaint at 7. However, plaintiff has failed to support his conspiracy claim with any evidence whatsoever of the existence of an agreement between the defendants to perform an act that they knew to be unlawful. Nor did plaintiff make any specific factual allegations regarding formation or operation of the alleged conspiracy. Such general and unsupported

Not Reported in F.Supp.                                                                                     Page 4
Not Reported in F.Supp., 1987 WL 17666 (D.D.C.)

assertions of wrongs cannot survive a motion to dismiss and defendants' motion is hereby granted as to plaintiff's conspiracy claim.

IV. Constitutional Claims

Plaintiff claims his rights protected by the fourth, sixth, and fourteenth amendment have been violated. No specific factual allegations have been made, however, to support the sixth or fourteenth amendment claims and it is not clear to the Court what the precise basis of these claims are. Accordingly, plaintiff's sixth and fourteenth amendment claims must be dismissed for failure to state a claim.

Plaintiff's fourth amendment claim is premised upon defendants' failure to comply with the District of Columbia 'knock and announce' statute when they executed the search warrant. To support this claim, plaintiff cites Judge Greene's decision in Alatishe and the statements of defendant made to the Washington Post reporter after the raid and report in that newspaper. See Plaintiff's Exhibit A. Judge Greene ruled that the Park Police violated Alatishe's fourth amendment rights when they executed the search warrant in the manner in which they did and he found that accounts of the search given by the Park Police lacked credibility.Alatishe, at 1413. While the Alatishe case has no collateral estoppel effect on the defendants in this case, since these defendants were not parties in that suit, the findings made in Alatishe and Judge Greene's ultimate ruling that there was a violation of Alatishe's fourth amendment rights, together with the statements made to the Washington Post, do suffice to controvert defendants' affidavits at this stage of the proceedings which would preclude the grant of summary judgment.

*5 Even so, plaintiff has made no allegation that as a result of the actions of defendant at issue, plaintiff suffered any damage. The violation of a constitutional right standing alone will not support an award of compensatory damages.Memphis Community School District v. Stachura, 196 S. Ct. 2537 (1986). Damage is an essential element of plaintiff's fourth amendment claim. Failure to allege damages requires this Court to grant the motion of defendant to dismiss the complaint with respect to this count.[FN4]

An appropriate Order will be issued consistent with this Memorandum Opinion.

ORDER

Upon consideration of the motion of defendants to dismiss the above-captioned action or, in the alternative, for summary judgment, it is this 17th day of September, 1987,

ORDERED that the motion of defendant to dismiss be, and hereby is, granted as to defendants White and Markland with respect to Count I; it is further

ORDERED that the motion of defendants to dismiss be, and hereby is, granted with respect to Counts III and IV; it is further

ORDERED that the motion of defendants for summary judgment be, and hereby is, granted as to defendants Irwin and Schmidt with respect to Count I; and it is further

ORDERED that the motion of defendants for summary judgment be, and hereby is, granted as to all defendants with respect to Count II.

> FN1 In the course of the search of 221 R Street the officers seized several unregistered guns and a sum of money.See Alatishe, at 1407.

> FN2 Plaintiff suggests that defendants acted beyond the perimeter of their employment when they executed a search warrant obtained on the basis of alleged violations of the D.C. Code. Plaintiff also suggests that the Park Police are only explicitly authorized to enforce provisions of federal law and they are given no specific authority to execute a warrant issued pursuant to D.C. statute. In Alatishe, Judge Greene rejected these very same arguments. This Court must concur with the reasoning of Judge Greene as it is thoroughly explained in Alatishe. Furthermore, D.C. Code § 4-201 expressly grants to the Park Police all the powers and duties of the Metropolitan Police.

> FN3 Plaintiff does not argue that the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                    Page 5
Not Reported in F.Supp., 1987 WL 17666 (D.D.C.)

testimony of defendants was beyond the perimeter of their authority; thus, the Court need not address this issue.

FN4 The Court further notes that there is some question as to whether a § 1983 claim will properly lie against the Park Police, who are federal officials. Even if such a claim may be asserted in this instance, defendants may enjoy qualified immunity for their actions, although the Court need not, and does not, reach these issues.

D.D.C., 1987.
Alatishe v. Irwin
Not Reported in F.Supp., 1987 WL 17666 (D.D.C.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Exhibit B

Westlaw.

Not Reported in F.Supp.2d                                                                                                  Page 1
Not Reported in F.Supp.2d, 2000 WL 1015937 (N.D.Ill.)

**H**Central States Southeast and Southwest Areas
Pension Fund v. Reimer Express World Corp.
N.D.Ill.,2000.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
CENTRAL STATES SOUTHEAST AND
SOUTHWEST AREAS PENSION FUND, and
Howard McDougall, Trustee, Plaintiffs,
v.
REIMER EXPRESS WORLD CORP., a Canadian
corporation, and Reimer Express Enterprises, Ltd., a
Canadian corporation, Defendants.
**No. 99 C 2524.**

Jan. 31, 2000.

### MEMORANDUM AND ORDER

MORAN, Senior J.
**\*1** Plaintiffs bring this action under the Employee
Retirement Income Security Act of 1974 (ERISA)
claiming that defendants are responsible for money
owed to a pension fund by defendants' corporate
affiliate. Defendants have moved to dismiss the
complaint on a variety of grounds. For the reasons
stated below, we grant defendants' motion to dismiss.

### BACKGROUND

In April 1988, Inter-City Truck Lines, Inc. (Inter-City
or ICTL) began contributing to the Central States,
Southeast and Southwest Areas Pension Fund (the
Fund) on behalf of Inter-City employees. The Fund is
a trust organized under Illinois law with its principal
place of business in Illinois. We shall refer to the
Fund and its trustee Howard McDougall collectively
as plaintiffs. Before it went out of business in 1993,
Inter-City was a Canadian trucking company which
operated in Detroit, Michigan, but had its principal
place of business in Canada. Inter-City was owned by
defendant Reimer Express Enterprises, Ltd. (REE),
also a Canadian corporation, with its principal place
of business in Canada. REE also owns defendant
Reimer Express World Corp. (REWCOR), a
Canadian corporation formed on November 29, 1993.
We shall refer to REE and REWCOR collectively as

defendants.

In May 1993, Inter-City went out of business and
ceased to have an obligation to contribute to the
Fund. This effected a "withdrawal" under ERISA, as
amended by the Multiemployer Pension Plan
Amendment Acts of 1980, 29 U.S.C. § 1383. In order
to protect pension plan participants, ERISA requires
employers withdrawing from a pension plan to pay
their share of the plan's unfunded vested benefits, *i.e.,*
the shortfall between the present value of the fund's
assets and the present value of the vested pension
benefits the plan will be obligated to pay out in the
future. The statute refers to this amount as the
employer's "withdrawal liability." 29 U.S.C. §§
1381, 1391. The Fund assessed Inter-City's
withdrawal liability to be $310,922.12. Relying on
the "control group" provisions of ERISA, 29 U.S.C.
§ 1301(b)(1), which make businesses under common
control jointly and severally liable for any affiliate's
withdrawal liability, the Fund also determined that
defendants were responsible for Inter-City's
withdrawal liability. On June 23, 1994, defendants
received notice from the Fund demanding payment in
the amount of Inter-City's withdrawal liability plus
interest. Defendants requested a review of the Fund's
determination, which the Fund rejected on November
1, 1994.

Plaintiffs thereafter filed this action claiming that
defendants are responsible for the withdrawal
liability owed by Inter-City. Defendants have moved
to dismiss the complaint for lack of personal
jurisdiction, lack of subject matter jurisdiction, and
failure to state a claim. Because we dismiss the
complaint for lack of personal jurisdiction, we do not
address defendants' other grounds for dismissal.

### DISCUSSION

On a motion to dismiss plaintiffs bear the burden of
demonstrating the existence of personal jurisdiction.
*RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276
(7 th Cir.1997). In order to do so, plaintiffs must show
either that defendants' contacts with Illinois were
sufficient to confer jurisdiction under Illinois' long
arm statute, or, alternatively, that defendants' contacts
with the United States as a whole are sufficient to

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                         Page 2
Not Reported in F.Supp.2d, 2000 WL 1015937 (N.D.Ill.)

establish personal jurisdiction as a matter of federal law.[FN1] Plaintiffs fail on both accounts.

> FN1. As discussed in part II below, this second alternative is available in this case because defendants are foreign corporations. See Fed.R.Civ.P. 4(k)(2). Defendants' status as foreign corporations also makes Rule 4(k)(1)(d) inapplicable in this case. That rule states that service of summons is effective to establish jurisdiction when authorized by federal statute. Fed.R.Civ.P. 4(k)(1)(d). However, ERISA-the federal statute at issue here-limits "extraterritorial service to a nationwide, not worldwide, scope." United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corp., 960 F.2d 1080, 1086 (1st Cir.1992).

I. *Illinois Contacts*

**\*2** A federal court has personal jurisdiction if a court in the state in which it sits would have such jurisdiction. See Fed.R.Civ.P. 4(k)(1)(A). In this case, we look to Illinois' long arm statute to determine whether we have personal jurisdiction over defendants. See 735 ILCS 5/209. The Illinois statute, in turn, provides that a court may exercise personal jurisdiction on any basis permitted by the Illinois constitution and the Constitution of the United States. 735 ILCS 5/209(c); RAR, 107 F.3d at 1276. Under the Illinois constitution's due process clause, personal jurisdiction "is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." Rollins v. Ellwood, 565 N.E.2d 1302, 1316 (Ill.1990). Unfortunately, the Illinois courts have provided little guidance as to how Illinois due process differs from federal due process. See RAR, 107 F.3d at 1276; Jamik, Inc. v. Days Inn of Mount Laurel, 1999 WL 1092008, at \*2 (N.D.Ill. Nov. 30, 1999). Therefore, we will focus our inquiry on the federal constitutional requirements for personal jurisdiction.

Plaintiffs argue that personal jurisdiction over defendants is constitutionally permissible because the claims underlying this lawsuit arise out of defendants' specific contacts with Illinois. See 735 ILCS 5/209(f); NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V., 28 F.3d 572, 580 (7th Cir.1994). Plaintiffs' argument invokes the concept of specific jurisdiction. The Seventh Circuit recently elucidated the constitutional standards governing such cases:

In specific jurisdiction cases, we must decide whether a defendant has "purposefully established minimum contacts within the forum State" and consider whether, by traditional standards, those contacts would make personal jurisdiction reasonable and fair under the circumstances. Crucial to the minimum contacts analysis is showing that the defendant "should reasonably anticipate being haled into court [in the forum State]," because the defendant has "purposefully avail[ed] itself of the privilege of conducting activities" there.

RAR, 107 F.3d 1277 (citations omitted). The Seventh Circuit also admonished that specific jurisdiction requires that the lawsuit "arise out of" or "be related to" a defendant's minimum contacts with the forum state. Id. "We cannot simply aggregate all of a defendant's contacts with a state-no matter how dissimilar in terms of geography, time or substance-as evidence of the constitutionally-required minimum contacts." Id.

With these standards in mind we examine defendants' specific contacts in Illinois to determine whether this lawsuit arises out of those contacts in a manner sufficient to warrant exercising personal jurisdiction over defendants in this case. Plaintiffs point to a handful of contacts between REE and Illinois in support of their position. For example, plaintiffs argue that REE's acquisition of Inter-City, a company that conducted business in Illinois and participated in the Fund, is a contact sufficient to confer personal jurisdiction. Plaintiffs over-reach when they assert that the harm alleged in their complaint, failure to pay withdrawal liability, arose out of REE's acquisition of Inter-City. Under plaintiffs' theory, any alleged misconduct by Inter-City would subject REE to personal jurisdiction wherever Inter-City conducted business simply by virtue of REE's status as Inter-City's acquirer. Such a broad and unprecedented application of specific jurisdiction would be antithetical to the nature of the rule.[FN2] Furthermore, although plaintiffs state that the locus of the acquisition was in Illinois, the acquisition of Inter-City by REE has its more logical locus in

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                  Page 3
Not Reported in F.Supp.2d, 2000 WL 1015937 (N.D.Ill.)

Canada. Both REE and Inter-City are Canadian corporations and the acquisition of the latter by the former does not subject REE to specific jurisdiction in Illinois.

> FN2. As discussed more fully below, a parent-subsidiary relationship generally is insufficient to establish personal jurisdiction over the parent. *See* *Androphy v. Smith & Nephew, Inc.,* 31 F.Supp.2d 620, 622 (N.D.Ill.1998).

**\*3** Plaintiffs also argue that certain communications between REE personnel and the Fund supply the necessary Illinois contacts. Chiefly, plaintiffs rely on a Fringe Benefit Agreement between Inter-City and the Fund which was executed by J.D. Cockburn, an REE official. Plaintiffs argue that Cockburn was an agent of REE and his execution of the Fringe Benefit Agreement gave rise to plaintiffs' claim, justifying specific jurisdiction over REE. It is apparent from the face of the Fringe Benefit Agreement, however, that Cockburn signed the contract on behalf of Inter-City and that the contract bound only Inter-City, not REE.[FN3] The agreement identifies Inter-City and the Fund as the two contracting parties and REE is neither mentioned or referred to in the document. Moreover, plaintiffs are not suing to enforce the Fringe Benefit Agreement in this lawsuit. Rather, plaintiffs' complaint seeks withdrawal liability based on the cessation of Inter-City's contributions to the Fund. This claim does not arise out of the Fringe Benefit Agreement, and therefore that contact cannot form the basis for specific jurisdiction over REE in this case.

> FN3. According to Cockburn's affidavit, Inter-City president Hugh Richardson authorized Cockburn to sign the Fringe Benefit Agreement on behalf of Inter-City.

Secondarily, plaintiffs point out that on two occasions Inter-City documents were forwarded to the Fund with fax cover pages bearing REE letterhead. Plaintiffs argue that these communications were sufficient to confer personal jurisdiction over REE in Illinois. We are unpersuaded. As a preliminary matter we observe that plaintiffs base their argument on the thin reed of two fax cover sheets bearing REE letterhead. The documents faxed along with these cover sheets were the Fringe Benefit

Agreement and payroll documents. Both of these sets of documents related only to Inter-City, and the persons sending these documents to the Fund were acting on behalf of Inter-City. Indeed, the cover sheet sent along with the payroll documents plainly states that the person faxing the materials is from "ICTL (Payroll)." That the fax cover sheets were preprinted with REE letterhead holds little relevance. Even if the persons sending the faxes were acting on behalf of REE and not Inter-City, personal jurisdiction over REE would not be warranted. A corporate parent, especially one that is a holding company like REE, may provide administrative services for its subsidiary without undermining corporate separateness and triggering personal jurisdiction over the parent. See *RAE Prod. and Chem Corp. v. Elf Aquitaine, Inc.,* 1994 WL 282279, at \*3 (N.D. Ill. June 22, 1994); *Integrated Bus. Info. Serv. v. Dun & Bradstreet,* 714 F.Supp. 296, 299-300 (N.D.Ill.1989); *see also* *Calvert v. Huckins,* 875 F.Supp. 674, 679 (E.D.Cal.1995). In any event, this lawsuit does not arise out of the fax cover sheets, and those two pages are an insufficient basis upon which to exercise personal jurisdiction over REE.

The Illinois contacts plaintiffs rely on are sparse and tenuous. Even if the contacts may be ascribed to REE and not Inter-City, they did not give rise to the allegations in plaintiffs' complaint. Therefore, specific jurisdiction over REE does not exist.

## II. *National Contacts*

**\*4** The personal jurisdiction inquiry does not end in this case with our finding that defendants' Illinois contacts are insufficient. Under Rule 4(k)(2), service of process may be sufficient to confer personal jurisdiction in this case because defendants are foreign corporations. Fed.R.Civ.P. 4(k)(2). As amended in 1993, Rule 4(k)(2) provides:

If the exercise of jurisdiction is consistent with the Constitution and the laws of the United States, serving a summons .., is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

According to the Advisory Committee Notes, Rule 4(k)(2) was enacted to fill a specific gap in the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                    Page 4
Not Reported in F.Supp.2d, 2000 WL 1015937 (N.D.Ill.)

federal law presented when a foreign defendant may have significant aggregate contacts with the United States, but insufficient contact with any single state to support jurisdiction under state long-arm statutes. The rule first requires a court to determine whether the case arises under federal law and whether the foreign defendant lacks sufficient contact with any single state to subject it to personal jurisdiction there. If so, the court must then "scrutinize plaintiff's allegations to ascertain whether plaintiff has demonstrated that defendant has sufficient aggregate contacts with the United States to comport with constitutional notions of due process."_U.S. v. International Broth. of Teamsters,_ 945 F.Supp. 609, 617 (S.D.N.Y.1996); _seePyrenee, Ltd. v. Wocom Commodities, Ltd.,_ 984 F.Supp. 1148, 1159 (N.D.Ill.1997).

With respect to the preliminary conditions, plaintiffs bring this cause of action under ERISA and therefore it arises under federal law. As discussed above, defendants' contacts with Illinois are insufficient to subject them to specific personal jurisdiction there and, for the purposes of this motion, we will assume that defendants' contacts similarly are insufficient to subject them to jurisdiction in any single state. Therefore, we are left to examine defendants' aggregate national contacts in order to determine whether the due process clause of the Fifth Amendment permits us to exercise personal jurisdiction under Rule 4(k)(2).*SeePyrenee,* 984 F.Supp. at 1159.

Plaintiffs argue that defendants' corporate affiliation with Inter-City, a company which conducted extensive business in the United States, provides the aggregate national contacts necessary for exercising personal jurisdiction. This argument is flawed. The activities of Inter-City cannot be attributed to defendants. As plaintiffs concede, in general "the parent-subsidiary relationship is insufficient to confer personal jurisdiction."_Androphy v. Smith & Nephew, Inc.,_ 31 F.Supp.2d 620, 622 (N.D.Ill.1998). Courts in this circuit repeatedly have emphasized "that '[p]arents of wholly owned subsidiaries necessarily control, direct and supervise the subsidiaries to some extent' but anything less than the degree of control necessary to pierce the parent corporation's veil of liability is insufficient to establish personal jurisdiction over the parent."_Insolia v. Philip Morris, Inc.,_ 31 F.Supp.2d 660, 669 (W.D.Wis.1998)

(quoting_IDS Life Ins. Co. v. SunAmerica Life Ins. Co.,_ 136 F.3d 537, 540 (7 [th] Cir.1998)); _Integrated Bus.,_ 714 F.Supp. at 299-300. Where the parent corporation is a holding company, as defendants are in this case, it is even more difficult to establish the degree of control required to exercise personal jurisdiction over the parent. _SeeRAE,_ 1994 WL 282279, at *3.

**\*5** Plaintiffs have presented no allegations establishing that defendants were the alter ego of Inter-City, or that defendants exercised the degree of control over Inter-City necessary to pierce the corporate veil. Plaintiffs do not allege that defendants exerted substantial control over Inter-City's day-to-day activities. _SeeAndrophy,_ 31 F.Supp.2d at 622;_RAE,_ 1994 WL 282279, at *3. Inter-City's conduct cannot be imputed to REE simply by virtue of the latter's ownership of the former. More is needed to establish personal jurisdiction over a parent for the conduct of its subsidiary. The allegations in the complaint fall short.

Inter-City's national contacts are not attributable to defendants for the purposes of assessing personal jurisdiction. Defendants' own national contacts, as alleged in the complaint, are no more than the Illinois contacts discussed and found lacking above. Having failed to allege sufficient contacts for us to exercise personal jurisdiction over defendants in a manner consistent with the Constitution, plaintiffs' complaint must be dismissed.[FN4]

> FN4. Plaintiffs' request for discovery into the personal jurisdiction issue must also be denied. The contacts asserted by plaintiffs as jurisdiction-conferring are doubly flawed- they are attributable to Inter-City and not to defendants, and they do not give rise to the harms alleged in the complaint. Discovery is inappropriate when a plaintiff has not offered a colorable basis for jurisdiction, particularly when discovery is sought against a foreign corporation for the alleged conduct of its subsidiary. _SeeJazini v. Nissan Motor Co., Ltd.,_ 148 F.3d 181, 185-86 (2d Cir.1998); _Ellis v. Fortune Seas, Ltd.,_ 175 F.R.D. 308, 311-12 (S.D.Ind.1997); We see no reason to subject the foreign defendants to the discovery process in this case.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                    Page 5
Not Reported in F.Supp.2d, 2000 WL 1015937 (N.D.Ill.)

*CONCLUSION*

For the reasons stated above, defendants' motion to dismiss is granted.

[] Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

• Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that the defendants' motion to dismiss is granted.

N.D.Ill.,2000.
Central States Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.
Not Reported in F.Supp.2d, 2000 WL 1015937 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Exhibit C

Westlaw.

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2006 WL 1102814 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

C L & L Constr. Associates, Inc. v. Slattery Skanska, Inc.
D.D.C.,2006.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
L & L CONSTRUCTION ASSOCIATES, INC.,
Plaintiff,
v.
SLATTERY SKANSKA, INC., Defendant.
**No. CIV. 05-1289.**

March 31, 2006.

Bradshaw Rost, Tenenbaum & Saas, P.C., Bethesda, MD, for Plaintiff.
Edmund Michael Amorosi, Smith, Pachter, McWhorter & Allen, Vienna, VA, for Defendant.

### MEMORANDUM OPINION

ROYCE C. LAMBERTH, District Judge.

**\*1** This matter comes before the Court on defendant's Motion [11] to Dismiss the Amended Complaint pursuant to Rules 12(b)(1), (b)(3), and (b)(6) of the Federal Rules of Civil Procedure. Defendant claims that the forum selection clause in the subcontract agreement makes this venue inappropriate. While defendant stylizes the motion to dismiss under Rule 12, the Court finds that the motion is more properly construed under the doctrine of forum non conveniens. Upon consideration of the parties' submissions and the entire record herein, the Court hereby grants defendant's motion to dismiss.

### BACKGROUND

This action arises out of a construction contract to perform work for Washington Metropolitan Transit Authority ("WMATA") at the New York Avenue Metro station. Lane Construction Corp., a Connecticut corporation and defendant, Slattery Skanska, Inc. a New York corporation, formed a joint venture under the laws of New York, to perform work for WMATA. As part of the bidding process, plaintiff, L & L Construction Associates Inc., entered into a preliminary arrangement with defendant via a "Letter of Intent" on October 3, 2001, whereby the parties agreed that plaintiff would perform work for defendant upon award of the prime contract from WMATA. (Compl.¶ 8.) WMATA awarded the prime contract to defendant's joint venture, who then entered into a subcontract with plaintiff for the completion of certain underground utility work (the "Subcontract").(*Id.* ¶¶ 10, 12.)The Subcontract contained a forum selection clause that required all litigation arising out of the Subcontract to be filed in the Supreme Court of the State of New York, County of Queens. (Subcontract, Art. 31, at 25.) The Subcontract also contained a merger clause which states that the Subcontract is the final agreement and all previous negotiations and representations are merged therein. (Subcontract, Art. 32, at 25.)

On June 20, 2005, plaintiff filed suit in this Court alleging breach of the October 3, 2001 Letter of Intent. Plaintiff avers that it was promised four-times more work than it received. On July 17, defendant moved to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief could be granted, arguing that the October 3 Letter of Intent was not an enforceable contract, but merely an agreement to agree. An opposition, reply, and sur-reply followed. Meanwhile, on August 10, 2005, plaintiff moved to amend the complaint, adding an additional count for promissory estoppel, but largely leaving the remaining portions of the complaint unaltered. On August 29, defendant filed a motion to dismiss the amended complaint under Rules 12(b)(1), 12(b)(3), and 12(b)(6). Defendant claims that the forum selection clause in the subcontract requires the parties to litigate in another forum. Plaintiff contends that defendant waived the right to raise the forum selection clause defense because the defense was not asserted in the initial motion to dismiss.

### DISCUSSION

**\*2** The forum selection clause defense has "evaded precise classification." *Marra v. Papandreou,* 216 F.3d 1119, 1123 (D.C .Cir.2000). Indeed, many of the circuits have not resolved the issue. *See New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG,* 121 F.3d 24, 29 (2d Cir.1997); *Haynsworth v. The Corp,* 121 F.2d 956, 963 (5th Cir.1997). On the other hand, some circuits have viewed the forum selection

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1102814 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

clause defense under Rule 12: the Ninth Circuit has determined that the forum selection clause defense should be treated as a motion pursuant to Rule 12(b)(3), _Kukje Hwajae Ins. Co. Ltd., v. M/V Hundai Liberty,_ 294 F.3d 1171, 1174 (9th Cir.2002), while the First Circuit treats the defense as a motion pursuant to Rule 12(b)(6), _Lambert v. Kysar,_ 983 F.2d 1110, 1112 n. 1 (1st Cir.1993). While the District of Columbia Circuit has not ruled on how the forum selection clause defense should be characterized, the _Marra_ Court recognized that this defense is most analogous to a forum non conveniens motion or motion for transfer of venue under 28 U.S.C. § 1404. 216 F.3d at 1123.

The doctrine of forum non conveniens is the most appropriate lens to determine this issue. A Rule 12(b)(3) dismissal for improper forum is an inappropriate mechanism because the question is not whether the chosen venue is proper, but whether there is a more appropriate forum for this suit. Similarly, a Rule 12(b)(1) dismissal for lack of subject matter jurisdiction would be inappropriate because there is no dispute about whether the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 or 1332. Finally, a Rule 12(b)(6) dismissal for failure to state a claim is not available because disposition of this motion requires review of the Subcontract, not allowed under Rule 12(b)(6) since it is not a pleading. The doctrine of forum non conveniens is an appropriate procedural mechanism for determining this issue because this is one of those rare circumstances where the Court has personal and subject matter jurisdiction, and venue is proper, but there is a more appropriate forum for resolving the dispute. _See Gulf Oil Corp. v.. Gilbert,_ 330 U.S. 501, 504 (1947); _see also_ 15 CHARLES ALLEN WRIGHT ARTHUR R. MILLER & EDWARD H. COOPER FEDERAL PRACTICE AND PROCEDURE § 3828, at 387-90 (2d ed.1986).

In granting the motion to dismiss for **forum non conveniens**, the Court must determine that the motion is **timely**, that an adequate forum exists which possesses jurisdiction over the case, that the private and public interests weigh in favor of dismissal and that plaintiff can reinstate its suit in the alternative forum without undue prejudice. _Pain v. United Tech. Corp.,_ 637 F.2d 775, 784-85 (D.C.Cir.1980).

**A. Timeliness**

L & L contends that Slattery waived the right to assert a defense based on the forum selection clause by failing to raise it in its first motion to dismiss. However, Rules 12(g) and 12(h) do not apply to the doctrine of forum non conveniens. Rule 12(g) states in pertinent part:
**\*3** If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except as a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.

Rule 12(h) states: "(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of service of process is waived if omitted from a motion in the circumstances described in subdivision (g)." Rd. R. Civ. P. 12(h)(1). The plain text of the Federal Rules of Civil Procedure clearly state that the waiver provision of Rule 12(g) only applies to the types of motions permitted by Rule 12, namely, motions to dismiss under 12(b).Rule 12(g) does not apply to motions outside of Rule 12, and thus is not applicable to motions to dismiss for forum non conveniens.

Most importantly, a dismissal under forum non conveniens, like a motion for change of venue under 28 U.S.C. § 1404, is at the discretion of the court and may be made at any time. _Cf. Abiola v. Abubakar,_ 267 F.Supp.2d 907, 918 (N.D.Ill.2003) (holding that the objection is not waived by failing to raise the issue in an answer or a motion to dismiss); _accord Spencer v. Alcoa S.S. Co.,_ 221 F.Supp. 343, 346 (E.D.N.Y.1963); _Fifth & Walnut, Inc. v. Loew's, Inc.,_ 76 F.Supp. 64, 67 (S.D.N.Y.1948;. Limitations on the time period for moving to dismiss only bar a defendant from making the objection at an unreasonable time. _See In re Air Crash Disaster Near New Orleans,_ 821 F.2d 1147, 1165 (5th Cir.1987). In addition, courts have denied such motions when granting the motion would unduly prejudice the plaintiff. _See Zelinski v. Columbia 300, Inc.,_ 335 F.3d 633, 643 (7th Cir.2003).

Here, plaintiff filed the complaint on June 30, 2005. The initial motion to dismiss followed on July 17, and the second motion on August 10. Less than two months elapsed between the filing of the complaint

Not Reported in F.Supp.2d                                                                      Page 3
Not Reported in F.Supp.2d, 2006 WL 1102814 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

and the raising of the objection. The Court finds that the delay in bringing this defense was not unreasonable to the plaintiff. *Cf. id.*(commenting that a motion made one month before the scheduled time of trial was unreasonable and prejudicial). Furthermore, there is no indication that the plaintiff would be unduly burdened by granting the objection. The plaintiff has not incurred substantial costs in preparing for trial. The only expenses that plaintiff has incurred thus far have been in the regular course of a motions practice and pre-trial discovery. Therefore, the Court finds that the objection of **forum non conveniens** is **timely**.

**B. Presence of Adequate Forum**

When considering a motion to dismiss based on forum non conveniens, the Court must (1) identify whether an adequate forum exists and (2) balance the relative conveniences to the parties against the presumption in favor of plaintiff's choice of forum. *El-Fadl v. Central Bank of Jordan,* 75 F.3d 668, 676-77 (D.C.Cir .1996). However, when there is a valid forum selection clause in place, the Court must defer to the expressed intent of the parties unless plaintiff can demonstrate that enforcement would be unjust or that the contract is invalid due to fraud or overreaching. *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972).

**\*4** Since plaintiff reached out to defendant, a New York corporation, sought to enter into a contractual relationship with defendant, and waived the right to raise to objection to the designated forum by agreeing to the forum selection clause, the Court finds that venue in New York is appropriate. *See Kotan v. Pizza Outlet,* 400 F.Supp.2d 44, 48 (D.D.C.2005) (Lamberth, J.). More, plaintiff has not demonstrated that the forum selection clause is otherwise invalid.

The burden of invalidating a forum selection clause is heavy. *See Carnival Cruise Lines v. Shute,* 499 U.S. 585, 591-92 (1991) (commenting that a court is unlikely to set aside a forum selection clause even when the designated forum is remote). Plaintiff has failed to meet its burden. Plaintiff only makes conclusory allegations that the clause was the result of fraud and misrepresentations, but these allegations are insufficient to overcome the strong presumption in favor of enforcing forum-selection clauses. Since New York state court is a proper forum and plaintiff

has failed to meet its burden to invalidate enforcement of the forum selection clause, the Court gives deference to the expressed intent of the parties and finds that the New York state court is a proper forum.

**C. Scope of the Forum Selection Clause**

Next, the Court must address whether the scope of the Subcontract and its forum selection clause governs the alleged breach. In addressing this question, the Court must "adhere to the objective of the law of contracts whereby the written language embodying the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered the contract unless the written language is not susceptible of clear and definite undertaking, or unless there is fraud, duress or mutual mistake.*Kyriakopoulos v. George Washington Univ.,* 866 F.2d 438, 444 n. 1 (D.C.Cir.1989). Furthermore, in deciding whether the forum selection clause is enforceable, the Court treats the clause as a contract unto itself. *Marra,* 216 F.3d at 1123. The Court only examines the forum selection clause, making no findings concerning the remaining portions of the contract or the merits of the case. *Id.*

The Court finds that the language of Articles 31 and 32 of the Subcontract, the forum selection and merger clauses, are clear, and the Court need not look beyond the text to interpret the contract. The merger clause states, in relevant parts, "except as expressly set forth herein, there have been no representation by either party to other to induce execution of this Subcontract, and all prior negotiations and understanding with respect to the subject matter are merged herein."(Subcontract, Art. 31, at 25.) The merger clause explains that the Subcontract was the complete and final agreement of the parties. (Subcontract, Art. 31, at 25.) All prior agreements, including the October 3 Letter of Intent, were to be merged into the Subcontract. The Court finds that the parties intended that all disputes arising out of the subject matter of the agreement, *i.e.,* underground utilities work, would be governed by the forum selection clause.

**D. Private and Public Interests**

**\*5** Ordinarily, the Court must consider whether the private interests weigh in favor of granting the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1102814 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

motion to dismiss. If the balance is in equilibrium, then the Court looks to the public interest factors. Finally, if the balance favors another forum, the Court must ensure that plaintiff can reinstate the suit in the alternative forum without undue inconvenience or prejudice. *Pain v. United Tech. Corp.,* 637 F.2d at 784-84.

However, the presence of a forum selection clause, once again, changes the analysis. *See Oversees Partners, Inc. v. Progen Musavirlik Ve Yonetim Hismetleri, LTD,* 15 F.Supp.2d 47, 53 (D.D.C.1998). Normally, a court would analyze the private factors keeping in mind the substantial weight of the plaintiff's choice of forum. These private factors include

[T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions to the enforceability [sic ] of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial.

*Ott v. Kaiser-Georgetown Cmty. Health Plan, Inc.,* 689 F.Supp. 9, 10 (D.D.C.1988) (citing *Pain,* 637 F.2d at 784-85). However, the forum selection clause is now the dominant factor in the determination. *See Bremen,* 407 U.S. at 15. In *Bremen,* the Supreme Court stated that "in the light of present-day commercial realities and expanding international trade we conclude that the forum selection clause should control absent a strong showing that it should be set aside."*Id.* Plaintiff may escape enforcement of the forum selection clause only if it can demonstrate that it will be deprived of its day in court by trying the matter in New York state court. Plaintiff has not and cannot make that argument. Finally, dismissal will not unduly prejudice L & L as the statute of limitations has not run on the claim. *See*N.Y. C.P.L.R. § 213 (2004) (setting statute of limitations to six years on actions for breach of contract).

The motion is timely, the designated forum is appropriate, the scope of the forum selection clause covers the instant dispute, and the Court will grant defendant's motion.

## CONCLUSION

For the foregoing reasons, the Court grants defendant's motion [11] and dismisses the action on the basis of forum non conveniens.

A separate Order shall issue this date.

D.D.C.,2006.
L&L Constr. Associates, Inc. v. Slattery Skanska, Inc.
Not Reported in F.Supp.2d, 2006 WL 1102814 (D.D.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit D

Westlaw.

Slip Copy                                                                                          Page 1
Slip Copy, 2007 WL 950085 (D.D.C.)

Son v. Kim
D.D.C.,2007.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
Chung Mu SON, Plaintiff,
v.
Young Sam KIM, Defendant.
**Civil Action No. 05-2318 (JR).**

March 28, 2007.

Robert Arthur Ackerman, Washington, DC, for Plaintiff.
Robert Matthew Disch, Sheppard Mullin Richter & Hampton, Washington, DC, for Defendant.

*MEMORANDUM*

JAMES ROBERTSON, United States District Judge.
*1 Plaintiff is a resident of Virginia. He sues a resident of South Korea, invoking the Alien Torts Claims Act and the Torture Victims Protection Act, and alleging that the defendant made false statements to Korean authorities that led to his arbitrary imprisonment and torture, causing him extreme emotional distress and financial loss. Defendant moves to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim on which relief can be granted. This Court cannot assert personal jurisdiction over the defendant. His motion to dismiss will be granted.

**BACKGROUND**

Plaintiff has been a resident of Virginia since 1980. Pl.'s Opp'n to Def.'s Mot. to Dismiss at 1. In 1988, he began publishing a monthly magazine in Seoul, Korea. In 1992, he was the majority shareholder in the corporation that published the magazine. Compl. ¶ 1. In 1992, the magazine ran an article reporting that defendant, who was then a candidate for president of the Republic of Korea, had a hidden daughter born out of wedlock. Compl. ¶ 4. Defamation is apparently a criminal matter in South Korea: defendant complained of libel by defamatory publication on May 4, 1992, and plaintiff, who was then in South Korea, was arrested. Compl. ¶ 5. He

was interrogated without sleep from 9 p.m. until 5 a.m. the following day. Three interrogators attempted to coerce a confession from him. He was hit and kicked repeatedly on his head, chest, and legs. Compl. ¶ 6, Pl.'s Opp'n to Def.'s Mot. to Dismiss at 1. FN1

> FN1. Plaintiff's factual allegations are taken as true for purposes of a motion to dismiss.

The Seoul District Criminal Court, 4th Division, held a trial that lasted five minutes and then dismissed the case, because it was defendant's wish that charges not be pressed further, Compl. ¶ 9. After 26 days of imprisonment, plaintiff was released. Compl. ¶ 10. Aides of the defendant approached him, offering him a large sum of money if he would retract the article.FN2 Plaintiff refused. Compl. ¶ 11. Officials from the Korean Central Intelligence Agency pressured advertisers to stop purchasing advertisements from the magazine, and the Korean Tax Office threatened an audit. *Id.* These actions resulted in large financial losses to the magazine. Compl. ¶ 12.

> FN2. Plaintiff alleges that the report of a hidden daughter was confirmed when another monthly publication, the *Monthly Chosun,* independently confirmed it in March 2005. Pl.'s Opp'n to Def.'s Mot. to Dismiss at 4.

**ANALYSIS**

In order to determine whether it can assert personal jurisdiction over a non-resident defendant, a court must first examine the reach of the state's long-arm statute and then consider whether the exercise of *in personam* jurisdiction would offend due process. *See GTE New Media Services, Inc. v. Bell South Corp.,* 199 F.3d 1343, 1347 (D.C.Cir.2000) (citing *United States v. Ferrara,* 54 F .3d 825, 828 (D.C.Cir.1995)).

Plaintiff relies upon subsection (a)(4) of the D.C. long-arm statute,FN3 which reaches a person who causes tortious injury in the District by an act or omission outside the District if 1) he regularly does

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

or solicits business, or 2) engages in any other persistent course of conduct, or 3) derives substantial revenue from goods used or consumed, or services rendered, in the District. Because the harm-generating act alleged in this case occurred outside the District, the statute calls for something more-a "plus factor"-which serves to filter out cases in which the in-forum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum. *Id.* at 763; *see Steinberg v. Int'l Criminal Police Org.,* 672 F.2d 927, 931 (D.C.Cir.1981).

FN3.D.C.Code § 13-423(a)(4) (2001).

**\*2** This defendant has only scant affiliations with the District, and they are plainly insufficient to support the exercise of personal jurisdiction. The contacts plaintiff alleges are that he visited the District in September 1985 to meet with political supporters and maintained those contacts for years, that he visited the District "many times to meet with his American friends and political supporters," and that he is now Honorary Chairman of the Committee for Democratization of North Korea, which maintains a branch office in the District. Pl.'s Opp'n to Def.'s Mot. to Dismiss at 7-8. Plaintiff does not allege or show that defendant "regularly does or solicits business" in the District of Columbia (politics is not "business" within the meaning of § 423(a)(4), unless perhaps it is conducted criminally, but plaintiff does not make that allegation about defendant's contacts with his political supporters). Nor does plaintiff allege or show that defendant "derives substantial revenue from goods used or consumed, or services rendered" in the District of Columbia. He is left only with the claim, which he does make, in conclusory fashion, that defendant "engages in any other persistent course of conduct" here.

Maintaining non-commercial contact with old friends and supporters is not a "persistent course of conduct." Even if it were, the inquiry would not stop there.

Even if maintaining contact with friends were persistent conduct (stalking, perhaps?), the exercise of personal jurisdiction in this case would offend due process. The constitutional touchstone for this analysis is whether defendant's conduct and connections with the District are such that he should reasonably anticipate being haled into court here, *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474

(1985), and whether the defendant has purposely availed himself of the benefits and protections of this jurisdiction so that it is not presumptively unreasonable to require him to defend himself in civil litigation here. *See id.* at 475-76 (citing *Keeton v. Hustler Magazine,* 465 U.S. 770, 774 (1984)). Plaintiff's claim that defendant purposely directed his activities to the District, Pl.'s Opp'n to Mot. to Dismiss at 8-9, is purely conclusory argument, and unpersuasive. *See Kulko v. Superior Court of California,* 436 U.S. 84, 93 (1978).[FN4]

> FN4. Defendant's honorary chairmanship adds nothing to plaintiff's argument. Defendant's personal contacts with the District must be assessed independently from that of the corporation. See *Richard v. Bell Atlantic,* 946 F.Supp. 54, 73 (D.D.C.1996) (citing *Calder v. Jones,* 465 U.S. 783, 790 (1984)).

In some circumstances, Federal Rule of Civil Procedure 4(k)(2) eliminates the need to employ the forum state's long-arm statute. *See Mwani v. Osama bin Laden,* 417 F.3d 1, 10 (D.C.Cir.2005). This is not one of them. Under Rule 4(k)(2), a district court can exercise personal jurisdiction (1) for a claim arising under federal law, (2) where a summons has been served, (3) if the defendant is not subject to the jurisdiction of any single state court, and (4) provided that the exercise of federal jurisdiction is consistent with the Constitution and laws of the United States. *Id.*

The first three requirements of the rule appear to be applicable here, but the fourth does not. The due process analysis is no different under Rule 4(k)(2) than under the D.C. long-arm statute. The problem remains that this defendant's contacts with the District are not such that he should reasonably anticipate being haled into court here.

**\*3** An appropriate order will be issued with this memorandum.

D.D.C.,2007.
Son v. Kim
Slip Copy, 2007 WL 950085 (D.D.C.)

END OF DOCUMENT

Slip Copy
Slip Copy, 2007 WL 950085 (D.D.C.)

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.